

PHILIP D. MURPHY
*Governor*

SHEILA Y. OLIVER
*Lt. Governor*

*State of New Jersey*
OFFICE OF THE ATTORNEY GENERAL
DEPARTMENT OF LAW AND PUBLIC SAFETY
DIVISION OF LAW
PO Box 45029
Newark, NJ 07101

GURBIR S. GREWAL
*Attorney General*

MICHELLE L. MILLER
*Director*

July 30, 2018

**<u>VIA HAND DELIVERY</u>**
Deputy Clerk of the Court
Superior Court of New Jersey
Chancery Division, General Equity Part
Wilentz Justice Complex
212 Washington Street – 8th Floor
Newark, New Jersey 07102

      Re:  Grewal v. Defense Distributed, et al.
          Docket No.: ESX-C-  -18 _____

Dear Sir/Madam:

    I am the Deputy Attorney General responsible for the representation of plaintiff Gurbir S. Grewal, Attorney General of the State of New Jersey ("Plaintiff"), in the above-referenced action.

    Enclosed please find an original and two (2) copies of the following documents in support of the filing of this action: (1) Order to Show Cause with Temporary Restraints Pursuant to Rule 4:5-2; (2) Verified Complaint; (2) Certification of New Jersey Office of Homeland Security Director Jared Maples, with accompanying exhibit; (3) Certification of Deputy Chief of Detective Christopher W. Donohue; (4) Certification of Investigator Aziza Salikhova; and (5) Memorandum of Law.

    As reflected in the Order to Show Cause, Plaintiff seeks the Court's <u>ex</u> <u>parte</u> consideration and entry of temporary restraints. Such request is premised upon the need for this Court's immediate intervention to halt the publishing, exporting and/or distributing by defendants Defense Distributed and Cody R. Wilson of printable-gun computer files, which they plan to do

July 30, 2018
Page 2

this Wednesday, August 1, 2018.

I request that one (1) copy of the above-referenced papers be file-stamped and provided to my office.

Respectfully submitted,

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY

By: _____
Lara J. Fogel
Deputy Attorney General

Enclosures

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY
Division of Law
124 Halsey Street
P.O. Box 45029
Newark, New Jersey 07101
Attorney for Plaintiff

JUL 3 0 2018

By:   Lorraine K. Rak (035771985)
      Deputy Attorney General, Section Chief
      Lara J. Fogel (038292006)
      Melissa Mcdoway (028422011)
      Jesse J. Sierant (049342013)
      Deputy Attorneys General
      Affirmative Civil Enforcement
      (973) 877-1280

                           SUPERIOR COURT OF NEW JERSEY
                           CHANCERY DIVISION, ESSEX COUNTY
                           DOCKET NO._____

GURBIR S. GREWAL, Attorney General
of the State of New Jersey,

                    Plaintiff,                        **Civil Action**

            v.

DEFENSE   DISTRIBUTED,   CODY   R.
WILSON, and JANE and JOHN DOES 1-            **VERIFIED COMPLAINT**
20,  individually  and  as  owners,
officers, directors, shareholders,
founders,    members,    managers,
agents,    servants,    employees,
representatives and/or independent
contractors     of      DEFENSE
DISTRIBUTED,  and  XYZ CORPORATIONS
1-20,

                    Defendants.


        Plaintiff Gurbir S. Grewal, Attorney General of the State

of New Jersey ("Attorney General"), with an office located at

124 Halsey Street, Fifth Floor, Newark, New Jersey 07101, by way

of this Verified Complaint states:

## PRELIMINARY STATEMENT

1.     In just two days, Defense Distributed and its founder Cody R. Wilson (collectively, "Defendants") are planning to take an unprecedented and dangerous action – to publish computer files that enable anyone, including terrorists, domestic abusers, criminals, gang members, and juveniles, to print firearms using a three-dimensional ("3D") printer right from the comfort of their own homes.  Worse still, the codes they plan to post enable individuals to print assault weapons that are illegal under the laws of the State of New Jersey ("New Jersey" or "State").   Further, because the printed guns do not have serial numbers, they would not be traceable, which would undermine law enforcement's ongoing efforts to solve and reduce gun crime.  The implications for public safety and homeland security are clear and the risk is imminent; once Defendants open that Pandora's Box, it can never be closed.

2.     For years, the Federal Government and multiple federal courts recognized that Defense Distributed's plans posed a direct threat to public safety and national security across the United States, and so the Government barred the company from publishing the Computer Aided Design ("CAD") files.   In response, Defendants sued the Federal Government, seeking a

2

declaration that the CAD files were not subject to regulation. Despite the Federal Government's proper challenge to Defense Distributed's ability to publish these codes, the Federal Government just recently disclosed that it settled this litigation. Troublingly, the Federal Government abruptly flipped positions (even after multiple courts had agreed about the pending risk to public safety) and decided to allow Defense Distributed to move forward with its plans to share these computer codes on the Internet, available to all.

3.   New Jersey law provides a separate and independent basis for preventing Defense Distributed and Cody Wilson from moving forward.   New Jersey's public nuisance law provides a cause of action to hold firearm manufacturers accountable – and to enjoin imminent violations of the law – when their plans would facilitate the illegal sale of weapons to criminals and other prohibited users, and when the manufacturer has done too little to prevent that illegal market from developing. More than that, Defense Distributed and Wilson's codes will enable individuals to create firearms without serial numbers, again in direct contravention of State law.

4.   In light of the grave and imminent harm posed with the release of printable-gun computer files, which can and will be used to create illegal and untraceable firearms in New Jersey,

3

the Attorney General submits this Verified Complaint in connection with an Order to Show Cause with Temporary Restraints in order to immediately halt Defendants from publishing, exporting and/or distributing the printable-gun computer files, which they plan to do on August 1, 2018.

## PARTIES

5.   Plaintiff, as the Attorney General of New Jersey, brings this action on behalf of the residents of New Jersey. The Attorney General, as the sole legal advisor and attorney for the State, is authorized to bring this suit in the interest and protection of the public in New Jersey. N.J.S.A. 52:17A-4; Mayor & Council of Borough of Alpine v. Brewster, 7 N.J. 42, 52 (1951).

6.   Defendant Defense Distributed is incorporated in the State of Texas with a mailing address of 2320 Donley Drive, Suite C, Austin, Texas 78758.

7.   Defendant Cody R. Wilson ("Wilson") is the director and founder of Defense Distributed and at all times relevant to this action, has controlled, directed and/or participated in the operation of Defense Distributed.  Upon information and belief, Wilson maintains a mailing address of 2510 Tracy Trail, Austin, Texas 78728.

4

8.     John and Jane Does 1 through 20 are fictitious individuals meant to represent the owners, officers, directors, shareholders, founders, members, managers, agents, servants, employees, representatives, and/or independent contractors of Defense Distributed who have been involved in the conduct that gives rise to this Verified Complaint, but who are heretofore unknown to the Plaintiffs.  As these defendants are identified, Plaintiff shall amend the Verified Complaint to include them.

9.     XYZ Corporations 1 through 20 are fictitious corporations meant to represent any additional corporations that have been involved in the conduct that gives rise to this Verified Complaint, but that are heretofore unknown to the Plaintiff.  As these defendants are identified, Plaintiff shall amend the Verified Complaint to include them.

### GENERAL ALLEGATIONS COMMON TO ALL COUNTS

A.   **Background of Defendants and CAD Files**:

10.  At all relevant times, Defense Distributed has maintained a website at https://defdist.org ("DD Website").  The

"About" section of the DD Website provides as follows:



# ABOUT

Defense Distributed is a non-profit, private defense firm principally engaged in the research, design, development, and manufacture of products and services for the benefit of the American rifleman. Since 2012, DD has been headquartered in Austin, Texas.

Media inquiries: crw@defdist.org

11.   The stated objective of Defense Distributed is for everyone to have access to guns and to undermine the efficacy of firearm safety regulations.

12.   Defendant Cody Wilson, who is a self-proclaimed anarchist and believes that "governments should live in fear of their citizenry," founded Defense Distributed.

13.   In 2012, Defense Distributed began exporting technical data related to firearms through the publication of CAD files, without restriction, on the Internet.

14.   Defendants' CAD files are computer files for the creation of guns and gun components through the use of 3D printers.

15.   Through the CAD files, Defense Distributed has enabled anyone anywhere to automatically manufacture firearms on 3D printers.

16.   Defendants posted their CAD files on https://defcad.org ("DefCad Website"), a website they created to serve as an open-source repository for weapons designs.

17.   The DD Website currently states as follows:

Defense Distributed |

(DD) ABOUT CONSULTING LOGIN JOIN

AUGUST 1
2018

Defense Distributed relaunches DEFCAD after reaching a settlement agreement with the US Department of State, concluding a multi-year federal lawsuit. The age of the downloadable gun begins.

18.   The DefCad Website includes data to automatically manufacture the "Liberator" pistol, which is a plastic firearm

7

that contains a six ounce piece of steel that can be easily removed enabling the firearm to be undetected in walk-through metal detectors. The DefCad Website depicts the Liberator pistol as follows:



19. Through the related website of https://ghostgunner.net ("GG Website"), Defense Distributed also manufactures and sells a "computer-controlled milling machine" called the "Ghost Gunner," which is designed to allow its owner to carve gun parts out of aluminum. The GGG Website depicts the Ghost Gunner as follows:




📞 800-880-8257     🛒 Cart

HOME   PRODUCTS   DOWNLOADS   FAQ   DEALERS   ABOUT ▾



GHOST GUNNER 2
An open source hardware project

Ghost Gunner is a general purpose CNC mill, built upon a large body
of open source work, grbl g-code motion control, and popular
microcontrollers.

View specifications ▸
Learn more ▸

SHOP NOW

FOR 80 PERCENT RECEIVERS AND FRAMES
No prior CNC experience required

Ghost Gunner is specially designed to manufacture a growing library of mil-spec 80 percent lowers to
completion. With simple tools and point and click software, the machine automatically finds and aligns
to your 80% lower to get to work. No prior CNC knowledge or experience is required to manufacture
from design files. Legally manufacture unserialized rifles and pistols in the comfort and privacy of home.

**B.  Federal Court Litigation and Settlement:**

20.  In May 2013, the United States Department of State's Directorate of Defense Trade Controls ("DDTC") advised Defense Distributed that its publication of CAD files without authorization from the DDTC potentially violated the International Traffic in Arms Regulations ("ITAR") administered by DDTC.

21.  The violation stemmed from the fact that the CAD files were being made available outside of the United States via the Internet.

22.   DDTC concluded that several of the published CAD files were subject to regulation under ITAR.

23.   To make the CAD files available outside of the United States, ITAR required Defendants to seek preapproval of publication from the DDTC.

24.   On May 6, 2015, Defense Distributed as well as the Second Amendment Foundation, Inc. ("SAF") and Conn Williamson (collectively, "DD/SAF/CW"), commenced an action in the United States District Court for the Western District of Texas, Case No. 1:15-cv-00372-RP ("Texas Litigation").

25.   DD/SAF/CW sought a declaration that the DDTC's preapproval requirement for privately generated unclassified information was unconstitutional and violated the First, Second, and Fifth Amendments.

26.   DD/SAF/CW also sought to enjoin the DDTC from enforcing the prepublication approval requirement against them.

27.   In opposing DD/SAF/CW's request, Lisa V. Aguirre, the Director of the Office of Defense Trade Controls Management testified that:

    (a)   "[t]he 'Liberator' firearm included in Defense Distributed's CAD designs presented a specific and unique risk to the national security and foreign policy interests of the United States";

    (b)   making the CAD files available online would provide terrorist organizations with firearms,

10

which could be used against the United States or its allies; and

(c)   "[a]ccess to weapons technology coupled with the uncontrolled ubiquitous means of productions... could contribute to armed conflict, terrorist or criminal acts, and seriously undermine global export and non-proliferation regimes designed to prevent the dangerous and destabilizing spread and accumulation of weapons and related technologies."

28.   After a hearing, the District Court denied DD/SAF/CW's request for a preliminary injunction and found, among other things, that the public interest in national defense and national security outweighed any countervailing interests. The United States Court of Appeals for the Fifth Circuit affirmed the denial.   Defense Distributed v. United States Dept. of State, 838 F.3d, 451, 461 (5th Cir. 2016), cert. denied, 138 S. Ct. 638 (2018).

29.   The Texas Litigation continued until April 30, 2018, when DD/SAF/CW advised the District Court that the parties reached a tentative settlement.

30.   On June 28, 2018, the parties informed the District Court that DD/SAF/CW and the Federal Government reached an approved settlement.

31.   The settlement agreement was available on the Internet on or around July 12, 2018, and provides:

11

(a) The Federal Government will commit to draft and pursue a notice of proposed rulemaking and final rule that would exclude the data on the CAD files at issue from ITAR regulation;

(b) The Federal Government will announce on or before July 27, 2018, a temporary modification to exclude the data on the CAD files from ITAR regulation;

(c) The Federal Government will issue a letter to DD/SAF/CW on or before July 27, 2018, advising that certain files are approved for public release and are exempt from the ITAR licensing requirements;

(d) The Federal Government will acknowledge that the temporary modification referenced above permits "any United States person" "to access, discuss, use, reproduce, or otherwise benefit from the technical data" that is the subject of the litigation;

(e) The Federal Government's payment of $39,581 to DD/SAF/CW; and

(f) Filing of the stipulation of dismissal no sooner than August 1, 2018, which it ultimately filed on July 27, 2018.

## C. Imminent Publication of Printable-Gun CAD Files:

32. Because of the settlement with the Federal Government, Defendants announced that they will re-launch their CAD file repository on August 1, 2018.

33. Thus, at present, the DefCad Website provides as follows:

7/26/2018                                    DEFCAD



34.   The   DefCad   Website   will   contain   a   repository   of firearm   computer   files   for   "more   exotic   DIY   semi-automatic weapons."

35.   The   DefCad   Website   also   accepts   user   financial contributions   and   has   a   user   comment   feature   where   information can   be   posted   or   shared.

36.  Defendant Wilson intends the DefCad Website to serve as "a searchable, user-generated database of practically any firearm imaginable."

37.  The database "will be available to anyone anywhere in the world with an uncensored internet connection, to download, alter, remix, and fabricate into legal weapons with tools like 3D printers and computer-controlled milling machines."

38.  Defendant Wilson publicly stated, "What's about to happen is a Cambrian explosion of the digital content related to firearms.... [a]ll this Parkland stuff, the students, all these firearms of 'common sense gun reforms'?  No.  The internet will serve guns, the gun is downloadable... No amount of petitions or die-ins or anything else can change that."

**D. Direct and Immediate Threat to the
   Public Health and Safety of New Jersey:**

39.  During the pendency of the Texas Litigation, Defendants "developed a trove" of 3-D-printable weapon computer files, including AR-15s.

40.  Assault weapons like the AR-15 and semiautomatic weapons were designed for military use.

41.  In New Jersey, weapons like the AR-15 and semiautomatic weapons are banned as illegal assault weapons. N.J.S.A. 2C:39-1w(1); N.J.S.A. 2C:39-5(f).

42.   Printable-gun computer files will allow anyone with a 3D printer to download a code and create a fully operational gun.

43.   Because the 3D printed firearms will not have serial numbers or other identifiable marks, they will never be traceable by law enforcement.  The ability to trace a firearm is critical when law enforcement investigates gun-related crimes.

44.   Further, New Jersey law prohibits certain categories of persons from purchasing firearms, including individuals convicted of certain violent crimes and other offenses involving acts of domestic violence and individuals suffering from certain mental illnesses.

45.   If Defendants' actions are allowed, anyone with access to a 3D printer will be able to manufacture a firearm, regardless of the disqualifiers under New Jersey law.

46.   Any person in New Jersey can log onto the DefCad Website and register by merely inputting a username and email address.

47.   The DefCad Website does not require a certain age, a criminal background, or any other eligibility factor.

48.   Through the DD Website and DefCad Websites, Defendants declared that it will start publishing the printable-gun computer files on August 1, 2018.

15

E. <u>Post-Settlement Proceedings</u>:

49. Defendants' actions subvert New Jersey's system of gun regulation and threaten the health, safety, and welfare of our citizens.

50. Responding to this threat, on July 26, 2018, the Attorney General sent a cease-and-desist letter ("New Jersey Cease-And-Desist Letter"), instructing Defense Distributed not to publish the files online.

51. Defense Distributed responded to the New Jersey Cease and Desist Letter the next day.  Although Defense Distributed said that it would "attempt to restrict files made available on the internet to prevent download within New Jersey" by blocking users with New Jersey-based IP Addresses from accessing the files, it made clear its intent to proceed with publication of the codes on August 1, 2018.

52. On July 25, 2018, The Brady Campaign to Prevent Gun Violence, Everytown for Gun Safety Action Fund, Inc., and Giffords (collectively, "Proposed Intervenors") sought to intervene in the Texas Litigation and requested a temporary restraining order and a preliminary injunction to enjoin Defense Distributed from publishing the printable gun-computer files at issue here to prevent immediate and irreparable harm to United States national security.

16

53.   On Friday, July 27, 2018, a hearing was held before the Honorable Robert Pitman wherein both of the Proposed Intervenors' motions were denied.

54.   On July 29, 2018, Defense Distributed and SAF (collectively, "DD/SAF") filed a Complaint in the United States District Court for the Western District of Texas (Case No. 1:18-cv-00637), seeking declaratory and injunctive relief, damages, and attorney's fees against the Attorney General and Michael Feuer, the Los Angeles City Attorney.

55.   DD/SAF initiated this lawsuit against the Attorney General in response to the New Jersey Cease-And-Desist Letter, alleging, among other things, that it constitutes an unconstitutional prior restraint.

56.   Notably, DD/SAF state in their Complaint that "[b]ut for Defendant Grewal's letter, Defense Distributed would freely distribute the files in New Jersey."

57.   In their Complaint, DD/SAF also allege that "[t]he Second Amendment Foundation's members and supporters are among Defense Distributed's audience" and that "SAF has over 650,000 members and supporters nationwide, including members in . . . New Jersey."

58.   On July 30, 2018, the Commonwealth of Pennsylvania, Governor Tom Wolf, Attorney General Josh Shapiro and the

17

Pennsylvania State Police filed a Complaint against Defense Distributed, DEFCAD, Ghost Gunner and Wilson (collectively, "PA Defendants") for declaratory judgment and a preliminary injunction, as well as a motion for a temporary restraining order and preliminary injunction to enjoin the PA Defendants from publishing the printable-gun computer files at issue here.

## COUNT I
## PUBLIC NUISANCE

59.  Plaintiff incorporates the allegations contained in Paragraphs 1 through 58 above, as if more fully set forth herein.

60.  By publishing printable-gun computer files to New Jersey residents, Defendants will intentionally and recklessly flood the illegal firearms market in New Jersey and pose a direct threat to the public health and safety of New Jersey.

61.  Defendants know or should know that the publication of the printable-gun computer files will bring illegal firearms into existence in New Jersey, which will result in increased crime, injury, and death to New Jersey residents.

62.  Defendants' intentional and reckless conduct will create an unreasonable and significant interference with the public health, public safety, and public peace of the residents of New Jersey.

63.  Defendants' conduct, if left unabated, will have long-lasting effects on the health and safety of New Jersey residents.

64.  As demonstrated by their own statements, Defendants know or have reason to know that their actions will have a significant impact on the health and safety of New Jersey residents.

## COUNT II
## NEGLIGENCE

65.  Plaintiff incorporates the allegations contained in Paragraphs 1 through 64 above, as if more fully set forth herein.

66.  New Jersey law prohibits the types of weapons that Defendants seek to create in publishing their printable-gun computer files.

67.  By publishing printable-gun computer files to New Jersey residents so that individuals may create their own illegal firearms, Defendants' conduct is wholly proscribed by New Jersey law.  N.J.S.A. 2C:39-5(f).

68.  Defendants' conduct, if left unabated, will have a long-lasting, direct and proximate impact on the safety and health residents of New Jersey.

69.   Defendants' conduct, if left unabated, will result in increased crime, injury, and death to New Jersey residents.

## PRAYER FOR RELIEF

**WHEREFORE**, based upon the foregoing allegations, Plaintiff respectfully requests that the Court enter judgment:

(a)   Awarding judgment in its favor and against Defendants on each cause of action asserted in the Verified Complaint;

(b)   Permanently enjoining Defendants and their owners, officers, directors, founders, members, managers, agents, servants, employees, representatives, independent contractors, and all other persons or entities directly under their control, from engaging in an activity that is the subject of Plaintiff's request for temporary and preliminary injunctive relief, as set forth in the accompanying Order to Show Cause with Temporary Restraints Pursuant to Rule 4:52;

(c)   Requiring Defendants to abate any public nuisance that their conduct has created;

(d)   Ordering Defendants to pay costs and fees, including attorneys' fees, for the use of the State of New Jersey; and

(e)   Granting such other relief as the interests of justice may require.

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY
Attorney for Plaintiff

By: _Lara J. Fogel_____
    Lara J. Fogel
    Deputy Attorney General

Dated:   July 30, 2018
         Newark, New Jersey

20

## RULE 4:5-1 CERTIFICATION

I certify, to the best of my information and belief, that the matter in controversy in this action is not the subject of any other action pending in any other court of this State, but that an action titled Defense Distributed, et al. v. Gurbir S. Grewal, et al., Case No. 1:18-cv-00637 has been commenced in the United States District Court, Western District of Texas. I further certify, to the best of my information and belief, that the matter in controversy in this action is not the subject of a pending arbitration proceeding in this State, nor is any other action or arbitration proceeding contemplated. I certify that there is no other party who should be joined in this action at this time.

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY
Attorney for Plaintiff


By: _Lara J. Fogel_
      Lara J. Fogel
      Deputy Attorney General

Dated:   July 30, 2018
        Newark, New Jersey

21

## RULE 1:38-7(c) CERTIFICATION OF COMPLIANCE

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with R. 1:38-7(b).

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY
Attorney for Plaintiff

By: _Lara J. Fogel_____
       Lara J. Fogel
       Deputy Attorney General

Dated:  July 30, 2018
       Newark, New Jersey


## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, Lara J. Fogel, Deputy Attorney General, is hereby designated as trial counsel on behalf of Plaintiffs.

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY
Attorney for Plaintiff

By: _Lara J. Fogel_____
       Lara J. Fogel
       Deputy Attorney General

Dated:  July 30, 2018
       Newark, New Jersey

22

## VERIFICATION

I, Aziza Salikhova, of full age, hereby certify as follows:

1.   I am an Investigator with the New Jersey Division of Consumer Affairs ("Division"), Office of Consumer Protection.

2.   I have read the foregoing Verified Complaint and on my own personal knowledge and review of documents in possession of the Division, I know that the facts set forth herein are true and they are incorporated in this certification by reference, except for those alleged upon information and belief.

3.   I certify that the above statements made by me are true.   I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
AZIZA SALIKHOVA

Dated:   July 30, 2018
         Newark, New Jersey

23

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY
Division of Law
124 Halsey Street
P.O. Box 45029
Newark, New Jersey 07101
Attorney for Plaintiff

By:  Lorraine K. Rak (035771985)
     Deputy Attorney General, Section Chief
     Lara J. Fogel (038292006)
     Melissa Medoway (028422011)
     Jesse J. Sierant (049342013)
     Deputy Attorneys General
     Affirmative Civil Enforcement
     (973) 877-1280

                              SUPERIOR COURT OF NEW JERSEY
                              CHANCERY DIVISION, ESSEX COUNTY
                              DOCKET NO._____

GURBIR S. GREWAL, Attorney General
of the State of New Jersey,

                  Plaintiff,                      **Civil Action**

            v.

DEFENSE   DISTRIBUTED,   CODY   R.
WILSON, and JANE and JOHN DOES 1-          **ORDER TO SHOW CAUSE**
20, individually and as owners,          **WITH TEMPORARY RESTRAINTS**
officers, directors, shareholders,        <u>**PURSUANT TO RULE 4:52**</u>
founders,  members,  managers,
agents,  servants,  employees,
representatives and/or independent
contractors   of   DEFENSE
DISTRIBUTED, and XYZ CORPORATIONS
1-20,

                  Defendants.

      THIS MATTER being brought before the Court by Lara F.

Fogel, Deputy Attorney General, for plaintiff Gurbir S. Grewal,

Attorney General of New Jersey ("Plaintiff"), seeking relief by

way of temporary restraints pursuant to R. 4:52, based upon the facts set forth in the Verified Complaint and supporting Certifications and Brief filed herewith; and it appearing that immediate and irreparable harm will likely result before notice can be given and a hearing held, and for good cause shown.

It is on this ___ day of _____ **ORDERED** that defendants Defense Distributed and Cody Wilson (collectively, "Defendants"), appear and show cause before the Superior Court of New Jersey, Chancery Division – General Equity Part, Essex County, at the Wilentz Justice Complex in Newark, New Jersey, at _____ am/pm or as soon thereafter as counsel can be heard, on the _____ day of _____, 2018, why an Order should not be issued preliminarily enjoining and restraining Defendants from:

   A.   Publishing, exporting, and distributing the printable-gun computer files as described in the Verified Complaint whether through the websites located at https://defdist.org, https://defcad.com, and https://ghostgunner.net, or otherwise;

   B.   Destroying, concealing, altering, transferring, disposing or removing in any manner, directly or indirectly, any books or records, information stored in computer-maintained form (such as electronic mail) and any other "document," as that term is defined in Rule 4:18-1(a), in their possession, subject to their control or available to them, that directly or indirectly relate to Defense Distributed, including memberships, donations, web content, advertisements and sales records;

   C.   Failing to make and/or keep any books or records, information stored in computer-maintained form (such as electronic mail) and any other "document," as that term is defined in Rule 4:18-1(a) that directly or

indirectly relate to Defense Distributed, including memberships, donations, web content, advertisements and sales records;

D.   Continuing the temporary injunctive and ancillary relief already ordered by the Court; and

E.   Granting such other relief as the Court deems equitable and just.

And it is further **ORDERED** that pending the return date herein, Defendants are temporarily enjoined and restrained from:

A.   Publishing, exporting, and distributing the printable-gun computer files as described in the Verified Complaint whether through the websites located at https://defdist.org, https://defcad.com, and https://ghostgunner.net, or otherwise;

B.   Destroying, concealing, altering, transferring, disposing or removing in any manner, directly or indirectly, any books or records, information stored in computer-maintained form (such as electronic mail) and any other "document," as that term is defined in Rule 4:18-1(a), in their possession, subject to their control or available to them, that directly or indirectly relate to Defense Distributed, including memberships, donations, web content, advertisements and sales records; and

C.   Failing to make and/or keep any books or records, information stored in computer-maintained form (such as electronic mail) and any other "document," as that term is defined in Rule 4:18-1(a) that directly or indirectly relate to Defense Distributed, including memberships, donations, web content, advertisements and sales records.

And it is further **ORDERED** that:

1.   Defendants may move to dissolve or modify the temporary restraints herein contained upon two (2) days' notice to the Plaintiff's attorney.

2.   A   copy   of   this   Order   to   Show   Cause,   Verified Complaint, Brief and Certifications submitted in support of this application shall be served upon the Defendants personally (or by  other  means)  within  _____  days  of  the  date  hereof,  in accordance  with  R.  4:4-3  and  R.  4:4-4,  this  being  original process.

3.   Plaintiff   must   file   with   the   Court   its   proof   of service of the pleadings on the Defendants no later than three (3) days before the return date.

4.   Defendants  shall  file  and  serve  a  written  response  to this Order to Show Cause and the request for entry of injunctive relief  and  proof  of  service  by  _____,  2018. The  original  documents  must  be  filed  with  the  Clerk  of  the Superior  Court  in  the  county  listed  above.   A  directory  of  these offices  is  available  in  the  Civil  Division  Management  Office  in the     county     listed     above     and     online     at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.     You must  send  a  copy  of  your  opposition  papers  directly  to  Judge _____,  whose  address  is  Superior  Court  of  New Jersey,  Chancery  Division,  General  Equity  Part,  Essex  County, Wilentz  Justice  Complex,  212  Washington  Street  -  8th  Floor, Newark,  New  Jersey  07102.   You  must  also  send  a  copy  of  your opposition  papers  to  the  Plaintiff's  attorney,  whose  name  and address  appears  above.   A  telephone  call  will  not  protect  your

rights; you must file your opposition and pay the required fee of $_____ and serve your opposition on your adversary, if you want the Court to hear your opposition to the injunctive relief the Plaintiff is seeking.

5.   Plaintiff must file and serve any written reply to the Defendants' Order to Show Cause opposition by _____, 2018.   The reply papers must be filed with the Clerk of the Superior Court in the county listed above and a copy of the reply papers must be sent directly to the Chambers of Judge _____.

6.   If the Defendants do not file and serve opposition to this Order to Show Cause, Plaintiff's application will be decided on the papers on the return date and relief may be granted by default, provided that the Plaintiff files a proof of service and a proposed form of Order at least three (3) days prior to the return date.

7.   If the Plaintiff has not already done so, a proposed form of Order addressing the relief sought on the return date (along with a self-addressed return envelope with return address and postage) must be submitted to the Court no later than three (3) days before the return date.

8.   Defendants, take notice that the Plaintiff has filed a lawsuit against you in the Superior Court of New Jersey.   The Verified Complaint attached to this Order to Show Cause states

the basis of the lawsuit. If you dispute this Verified Complaint, you, or your attorney, must file a written Answer to the Verified Complaint and proof of service within thirty-five (35) days from the date of service of this Order to Show Cause; not counting the day you received it.

These documents must be filed with the Clerk of the Superior Court in the county listed above. A directory of these offices is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf. Include a $_____ filing fee payable to the "Treasurer, State of New Jersey." You must also send a copy of your Answer to the Plaintiff's attorney whose name and address appear above. A telephone call will not protect your rights; you must file and serve your Answer (with the fee) or judgment may be entered against you by default. Please note: Opposition to the Order to Show Cause is not an Answer and you must file both. Please note further: if you do not file and serve an Answer within thirty-five (35) days of this Order to Show Cause, the Court may enter a default against you for the relief Plaintiff demands.

9. If you cannot afford an attorney, you may call the Legal Services office in the county in which you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not

eligible for free legal assistance you may obtain a referral to an attorney by calling one of the Lawyer Referral Services.  A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153_depty clerklawref.pdf.

10.  The Court will entertain argument, but not testimony, on the return date of the Order to Show Cause, unless the Court and parties are advised to the contrary no later than _____ days before the return date.

_____
Hon.

SUPERIOR COURT OF NEW JERSEY
CHANCERY DIVISION, ESSEX COUNTY
DOCKET NO. ESX-C-

GURBIR S. GREWAL, Attorney
General of the State of New
Jersey,

        Plaintiff,

    v.

DEFENSE DISTRIBUTED, CODY R.
WILSON, and JANE and JOHN DOES
1-20, individually and as
owners, officers, directors,
shareholders, founders, members,
managers, agents, servants,
employees, representatives
and/or independent contractors
of DEFENSE DISTRIBUTED, and XYZ
CORPORATIONS 1-20,

        Defendants.

Civil Action

JUL 3 0 2018

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ORDER TO SHOW CAUSE WITH TEMPORARY RESTRAINTS

GURBIR S. GREWAL
ATTORNEY GENERAL OF
THE STATE OF NEW JERSEY
Division of Law
124 Halsey Street
P.O. Box 45029
Newark, New Jersey 07101
(973) 877-1280
Attorney for Plaintiff

Of Counsel and On the Brief
Lorraine K. Rak (035771985)
Deputy Attorney General, Section Chief
Lara J. Fogel (038292006)
Melissa Medoway (028422011)
Jesse J. Sierant (049342013)
Deputy Attorneys General
Affirmative Civil Enforcement

## PRELIMINARY STATEMENT

In just two days, Defense Distributed and its founder Cody Wilson are planning to take an unprecedented and dangerous action – to publish Computer Aided Design ("CAD") files that enable anyone, including terrorists, domestic abusers, criminals, gang members and juveniles, to print firearms using a three-dimensional ("3D") printer directly from the comfort of their own homes. Worse still, the codes they plan to post enable individuals to print extremely dangerous assault weapons' that are illegal under New Jersey law. And that is not all – because the printed guns would not have serial numbers, they would not be traceable by law enforcement, which would undermine law enforcement's ongoing efforts to solve and reduce gun crime. The implications for public safety and homeland security are clear and the risk is imminent; once Defendants open that Pandora's Box, it can never be closed. This lawsuit seeks to enjoin Defendants from heading down this path.

For years, the Federal Government and multiple federal courts recognized that Defense Distributed's plans posed a direct threat to public safety and national security across the United States, and so the Government barred the company from publishing the CAD files. Indeed, the Federal Government stated in litigation that Defense Distributed's plans to publish these

firearm codes posed a specific and unique risk to the national security and foreign policy interests of the United States. That was, unfortunately, unsurprising; founder Cody Wilson had made clear that the company's objective is for everyone to have access to guns and to make any firearm regulations impossible, even stating that "common sense gun reforms" would no longer be possible. And although the Federal Government had properly challenged Defense Distributed's ability to publish codes that will enable terrorists and criminals to print firearms, just recently the Federal Government disclosed that it had earlier settled this litigation. Troublingly, the Federal Government has now abruptly flipped positions (even after multiple courts had agreed about the pending risk to public safety) and decided to allow Defense Distributed to proceed with its plans to share these computer codes on the Internet, available to all.

But New Jersey law provides a separate and independent basis to prevent Defense Distributed and Cody Wilson from engaging in this dangerous, irreversible conduct. New Jersey's public nuisance law provides a cause of action to hold firearm manufacturers accountable – and to enjoin imminent violations of the law – when their plans would facilitate the illegal sale of weapons to criminals and other prohibited users, and when the manufacturer has done too little to prevent that illegal market

from developing.  And that is what will happen here – Defendants will make accessible codes that will allow terrorists, domestic violence abusers, criminals, gang members and juveniles to print guns at home, even though they cannot lawfully possess them. More than that, Defendants' codes will enable individuals to create firearms without serial numbers, again in direct contravention of state law.  But Defendants have done nothing to prevent the flood of illegal, 3D-printed weapons that is sure to result, and as noted above, have instead wholeheartedly embraced and encouraged these troubling results.

In light of the grave and imminent harm posed with the release of printable-gun computer files, which can, and will, be used to create illegal and untraceable firearms in New Jersey, the Attorney General requests that the Court immediately enter an order enjoining and restraining Defendants from publishing and distributing these dangerous printable-gun computer files, which Defendants plan to publish this Wednesday, on August 1, 2018.

## FACTUAL BACKGROUND

In 2012, Defense Distributed, founded by Cody Wilson, began exporting technical data related to firearms through the publication of CAD files, without restriction, on the Internet. (Defense Distributed v. U.S. Dept. of State, Civil Action No.

4

1:15-CV-00372-RP, W.D. Tex. ("DD v. U.S."), Dkt. 32, p.1; Dkt. 8, pp. 5-6; Defense Distributed v. U.S. Dept. of State, 838 F.3d 451, 460-61 (5th Cir. 2016).) These files are computer files with instructions for how to create guns and gun components through the use of three-dimensional printers. (DD v. U.S., Dkt. 32, p.5.) Defense Distributed posted these CAD files on DefCad.org ("Website"), a website it created to serve as an open-source repository for weapons designs. (DD v. U.S., Dkt. 32; Dkt. 8.) The site accepts user financial contributions and has a users' comments feature where information can be posted or shared. (See https://defdist.org/; https://defcad.com.) The files Defense Distributed put online included data to automatically manufacture its first model—what it termed the "Liberator" pistol. (DD v. U.S., Dkt. 32, 8.) The Liberator is a plastic firearm that contains a six ounce piece of steel that can be easily removed enabling the firearm to be undetected in walk-through metal detectors. (DD v. U.S., Dkt. 32; Dkt. 8.)

In May 2013, the State Department's Directorate of Defense Trade Controls ("DDTC") advised Defense Distributed that its publication of CAD files without authorization from the DDTC potentially violated the International Traffic in Arms Regulations ("ITAR") administered by DDTC. (Executive Order 13637(n)(iii); 22 C.F.R. §§ 120-130.) The violation stemmed

from the fact that the CAD files were being made available outside the United States via the Internet. (<u>DD v. U.S.</u>, Dkt. 32, pp. 5-7.) After a review, DDTC concluded that several of the CAD files were subject to regulation under ITAR. (<u>DD v. U.S.</u>, Dkt. 32, pp. 5-7.) To make the CAD files available outside the United States, ITAR required Defendants to seek preapproval of publication. (<u>DD v. U.S.</u>, Dkt. 32.)

On May 6, 2015, Defense Distributed, the Second Amendment Foundation ("SAF") and Conn Williamson (collectively, "DD/SAF/CW") brought suit in the United States District Court for the Western District of Texas, seeking a declaration that the DDTC's preapproval requirement for privately generated unclassified information was an unconstitutional government action and violated the First, Second, and Fifth Amendments. (<u>DD v. U.S.</u>, Dkt. 1.) When the Federal Government opposed the suit, Lisa V. Aguirre, the Director of the Office of Defense Trade Controls Management, testified that: (a) "[t]he 'Liberator' firearm included in DD/SAF/CW's CAD designs presented a specific and unique risk to the national security and foreign policy interests of the United States"; (b) making the CAD files available online would provide terrorist organizations with firearms, which could be used against the United States or its allies; and (c) "[a]ccess to weapons

technology coupled with the uncontrolled ubiquitous means of productions . . . could contribute to armed conflict, terrorist or criminal acts, and seriously undermine global export and non-proliferation regimes designed to prevent the dangerous and destabilizing spread and accumulation of weapons and related technologies." (<u>DD v. U.S.</u>, Dkt. 32-1, ¶ 35.)

After a hearing, the District Court denied DD/SAF/CW's request for a preliminary injunction, finding among other things that the public interest in national defense and national security outweighed any countervailing interests. (<u>DD v. U.S.</u>, Dkt. 43.) The Fifth Circuit affirmed the denial, relying on the same national security concerns. (<u>Defense Distributed v. U.S. Dept. of State</u>, 838 F.3d, 451, 461 (5th Cir. 2016), <u>cert. denied</u> 138 S. Ct. 638 (2018).)

Litigation continued until April 30, 2018, when DD/SAF/CW notified the court that the parties had reached a tentative settlement. The parties approved the settlement on June 28, 2018. The settlement agreement, which was only recently made publicly available, provided:

a.) The Federal Government will commit to draft and pursue a notice of proposed rulemaking and final rule that would exclude the data on the CAD files at issue from ITAR regulation;

7

b.)  The Federal Government will announce on or before July 27, 2018, a temporary modification to exclude the data on the CAD files from ITAR regulation;

c.)  The Federal Government will issue a letter to DD/SAF/CW on or before July 27, 2018, advising that certain files are approved for public release and are exempt from the ITAR licensing requirements;

d.)  The Federal Government will acknowledge that the temporary modification referenced above permits "any United States person . . . to access, discuss, use, reproduce, or otherwise benefit from the technical data" that is the subject of the litigation;

e.)  The Federal Government's payment of $39,581 to DD/SAF/CW; and

f.)  The Federal Government will file a stipulation of dismissal no sooner than August 1, 2018, which it ultimately filed on July 27, 2018.  (DD v. U.S., Dkt. 112.)

Relying on that settlement, Defendants announced their plans to re-launch the CAD file repository on August 1, 2018. (See https://defdist.org/; https://defcad.com.)  In addition to older models, the Website will contain a repository of firearm computer files for "more exotic DIY semi-automatic weapons." (Andy Greenberg, "A Landmark Legal Shift Opens Pandora's Box for

DIY Guns, Wired (July 10, 2018), available at https://www.wired.com/story/a-landmark-legal-shift-opens-pandoras-box-for-diy-guns/.) The new database "will be available to anyone anywhere in the world with an uncensored internet connection to download, alter, remix, and fabricate into legal weapons with tools like 3D printers and computer-controlled milling machines." (Ibid.) According to Wilson, "What's about to happen is a Cambrian explosion of the digital content related to firearms . . . [a]ll this Parkland stuff, the students, all these firearms of 'common sense gun reforms'? No. The internet will serve guns, the gun is downloadable... No amount of petitions or die-ins or anything else can change that." (Ibid.)

Throughout the litigation with the Federal Government, Defendants "developed a trove of other 3-D-printable weapon blueprints, including Assembly AR-15s and AR-10s." (Deanna Paul, "Meet the man who might have brought on the age of 'downloadable guns,'" Washington Post (July 18, 2018), available at https://www.washingtonpost.com/news/post-nation/wp/2018/07/18/meet-the-man-who-wants-to-bring-on-the-age-of-downloadable-guns-and-may-have-already-succeeded/?utm_term=.725b8a04f11a.) Members of the United States armed forces routinely use firearms in semiautomatic mode

in combat conditions, and the designs of many semiautomatic firearms are inherently military. (Giffords Law Center Comment Letter to the Director of Defense Trade Controls, July 9, 2018, at 4.) Assault rifles like the AR-15 were originally designed for military use. (Giffords Law Center Comment Letter to the Director of Defense Trade Controls, July 9, 2018, at 4.) The military included the option to fire in semiautomatic mode because military combat sometimes requires use of a firearm in semiautomatic mode. (Giffords Law Center Comment Letter to the Director of Defense Trade Controls, July 9, 2018, at 4.) Shooting in semiautomatic mode is more accurate and hence more lethal. (With AR-15s, Mass Shooters Attack with the Rifle Firepower Typically Used by Infantry Troops, NY Times, Feb. 28, 2018, https://www.nytimes.com/interactive/2018/02/28/ar-15-rifle-mass-shootings.html.) In fact, military-style semiautomatic firearms were used to perpetrate the tragedies that occurred in an elementary school in Newtown, Connecticut, at a music festival in Las Vegas, Nevada, at a workplace in San Bernardino, California, in a movie theatre in Aurora, Colorado, and at a high school in Parkland, Florida, among others. (Giffords Law Center Comment Letter to the Director of Defense Trade Controls, July 9, 2018, at 5.)

Because of the dangerous nature of these weapons, New

Jersey and seven (7) other states, including New York and California, have banned them. (See Giffords Law Center to Prevent Gun Violence, Assault Weapons at http://lawcenter.giffords.org/gun-laws/policy-areas/hardware-ammunicition/assault-weapons/.)   In New Jersey, certain AR-15 semiautomatic models are banned as assault weapons and ownership is highly restrictive.   N.J.S.A. 2C:39-1w(1); N.J.S.A. 2C:39-5(f).   But printable-gun computer files will allow them to be printed anyway.

Defendants' printable-gun computer files will allow individuals across New Jersey to generate lethal firearms that are untraceable.   This means that if a printed gun was used in an act of violence or other crime, law enforcement would be unable to determine who manufactured, purchased, or transferred the gun – taking away a critical tool that New Jersey law enforcement consistently uses in seeking to combat and reduce gun crime.   In addition, at least some of the printed plastic guns can be modified to be virtually undetectable in metal detectors, which poses a public safety problem for venues such as airports, arenas, schools, and courthouses.

Responding to this threat, on July 26, 2018, Attorney General Grewal sent a cease-and-desist letter (the "New Jersey Cease-And-Desist Letter"), instructing Defense Distributed not

11

to publish the files online.  Defense Distributed responded the next day.  Although Defense Distributed said that it would "attempt to restrict files made available on the internet to prevent download within New Jersey" by blocking users with New Jersey-based IP addresses from accessing the files, it made clear its intent to proceed with publication of the codes on August 1.

On July 25, 2018, The Brady Campaign to Prevent Gun Violence, Everytown for Gun Safety Action Fund, Inc. and Giffords (collectively, "Proposed Intervenors") sought to intervene in the Texas litigation and requested a temporary restraining order and a preliminary injunction to enjoin Defense Distributed from publishing the printable gun-computer files at issue here to prevent immediate and irreparable harm to United States national security.  On Friday, July 27, 2018, a hearing was held before the Honorable Robert Pitman wherein both of the proposed Intervenors' motions were denied.

On July 29, 2018, Defense Distributed filed a Complaint in the United States District Court for the Western District of Texas seeking declaratory and injunctive relief, damages, and attorney's fees against Attorney General Grewal and Michael Feuer, the Los Angeles City Attorney ("Feuer").  Defense Distributed and SAF initiated this lawsuit against Grewal in

response to the New Jersey Cease-And-Desist Letter, alleging, among other things, that it constitutes an unconstitutional prior restraint.

On July 30, 2018, the Commonwealth of Pennsylvania, Governor Tom Wolf, Attorney General Josh Shapiro and the Pennsylvania State Police (together, the "Plaintiffs") filed a complaint against Defense Distributed, DEFCAD, Ghost Gunner and Cody Wilson (collectively, "PA Defendants") for declaratory judgment and a preliminary injunction, as well as a motion for a temporary restraining order and preliminary injunction to enjoin the PA Defendants from publishing the printable-gun computer files that are at issue in the instant litigation.

This lawsuit followed.

<u>LEGAL ARGUMENT</u>

**BECAUSE AN IMMEDIATE AND DIRECT THREAT TO PUBLIC SAFETY IN NEW JERSEY EXISTS, <u>INJUNCTIVE RELIEF IS WARRANTED</u>**

The Court should grant the State's application for injunctive relief to safeguard the health and safety of New Jersey's residents. Defendants' planned dissemination of computer codes directing the manufacture and assembly of untraceable and unlicensed firearms endangers the citizens of this State and violates New Jersey's public nuisance and negligence laws. The codes allow anyone with a 3D printer to

13

create a fully operational gun with a few clicks. Defendants seek to make the codes available to everyone, including criminals, juveniles, and domestic abusers, which undermines New Jersey's comprehensive scheme for keeping guns out of criminals' hands and jeopardizes the safety of New Jersey residents.

All the preliminary relief factors point in favor of enjoining Defendants from publishing their codes. To obtain relief, the moving party must demonstrate by clear and convincing evidence that: (1) relief is needed to prevent irreparable harm; (2) the applicant's claim rests on settled law and has a reasonable probability of succeeding on the merits; and (3) a balancing of hardships reveals that greater harm would occur if a stay is not granted than if it were. See Crowe v. DeGioia, 90 N.J. 126, 132-34 (1982); Brown v. City of Paterson, 424 N.J. Super. 176, 183 (App. Div. 2012). When a case presents an issue of "significant public importance," as here, courts must also consider a fourth factor: harm to the public interest. See Garden State Equality v. Dow, 216 N.J. 314, 320-21 (2013). Notably, "[i]n acting only to preserve the status quo, the court may 'place less emphasis on a particular Crowe factor if another greatly requires the issuance of a remedy.'" Brown, 424 N.J. Super. at 183. As this brief explains, each factor points in favor of granting the State's application for injunctive relief.

14

A.    **Plaintiff will suffer immediate and irreparable injury if a preliminary injunction is not issued.**

First, injunctive relief is needed to prevent irreparable harm. "Harm is generally considered irreparable in equity if it cannot be redressed adequately by monetary damages." Crowe, 90 N.J. at 132. Threats to public safety are the quintessential irreparable harm; indeed, "danger of increased mortality" is "as irreparable a harm as any that can be imagined." Somerset Air Service, Inc. v. Township of Bedminster, 2006 WL 861498, at *4 (Sup. Ct. Law Div., Somerset Cnty., Apr. 4, 2006).

The irreparable harm here is clear: the moment that Defendants post their codes on the Internet, it can be downloaded, saved, and forever used to print guns with a few clicks. And that poses a grave and permanent threat to public safety. First, the availability of these codes means that individuals who are otherwise banned for purchasing and possessing firearms will be able to print them; law enforcement cannot stop individuals from owning 3D printers. That means the "codes will be available to everyone in New Jersey—regardless of age, criminal status, history of mental illness, or other disqualifying characteristic. There will thus be no way for law enforcement to prevent guns from winding up in the hands of those who are prohibited from purchasing firearms under New Jersey law, including" individuals on the FBI Terroristic Watch

15

List, persons with criminal convictions (even for violent offenses), domestic abusers (even if subject to ongoing restraining orders), and juveniles. (Certification of Deputy Chief of Detective Christopher W. Donohue ("Donohue Cert."), ¶ 14.) This "will severely hamper law enforcement's ongoing efforts to keep dangerous guns out of the hands of dangerous criminals." (Id. ¶16.) And not only does this give criminals access to weapons, but to illegal ones - Defendants' codes will also "enable individuals to print assault weapons, which are illegal in New Jersey." (Id. ¶ 13.)

Another irreparable harm is sure to follow - the use of these codes will make it harder for law enforcement to solve and reduce gun crime. Because "the 3D printed firearms will not have serial numbers or other identifiable marks, they will never be traceable by law enforcement." (Id. ¶ 10). As Deputy Chief Donohue explains,

> A serial number is required to be placed on all firearms so that they can be traced to its original owners if they are ever used to commit a criminal offense. Law enforcement traces firearms by finding the owner's name in the gun dealer's records, and then interviewing that person and any other person to whom he sold the gun, and so on. Through this process, law enforcement is able to determine the manufacturer of the gun, the date it was sold, the dealership, and the purchaser. This information assists law enforcement in determining what happened to a particular gun after it left the dealer

16

> by learning the history of who owned the gun.
>
> Being able to trace a gun is critical in the investigation of gun-related crimes. The [CAD] codes of [Defendants] will allow individuals across New Jersey to automatically manufacture untraceable guns on 3D printers. If law enforcement is unable to trace 3D guns to determine their owners, law enforcement will be critically hampered in its ongoing efforts to solve gun crimes and prevent new gun crimes from being committed. This poses a direct and immediate threat to public health, safety, and welfare.
>
> (Id. ¶¶ 11-12.)

And the Director of the New Jersey Office of Homeland Security and Preparedness, Jared Maples, agrees, noting that law enforcement agencies "use the results of these traces to identify the methods by which firearms entered the illegal market and to devise strategies to disrupt these criminal networks. But if there were to be a proliferation of untraceable 3D guns, these crimes and criminal networks might go unsolved and the perpetrators might go on to commit additional acts of violence." (Certification of New Jersey Office of Homeland Security Director Jared Maples ("Maples Cert."), ¶ 12.)

The risks to homeland security are equally pressing. As Director Maples has explained, "terrorists and other networks directing violence at the United States and in New Jersey could use this technology to manufacture guns, including assault

17

firearms." (Id. ¶ 10.) Moreover, "proliferation of untraceable guns would also give terrorist groups a significant advantage and deprive NJOHSP the ability to gather the necessary intelligence to combat them and reduce their threat they pose to our citizens." (Id. ¶ 11.) And finally, at least one code is for a "plastic firearm that can be produced in a way as to be both fully operable and virtually undetectable by conventional security measures. 3D firearms can defeat normal detection such as metal detectors and wands, and present a problem to public safety in venues such as airports, arenas, schools, government buildings, and/or courthouses." (Id. ¶ 16.) As a result, "Defendants' effort to post these CAD files represents a direct threat to New Jersey's homeland security." (Id. ¶ 20.)

For all of these reasons, other courts have recognized that "very strong public interest[s]" would be irreparably harmed by Defendants' threatened conduct. Defense Distributed v. U.S. Dep't of State, 838 F.3d 451, 458 (5th Cir. 2016). Indeed, the U.S. Court of Appeals for the Fifth Circuit refused to allow Defense Distributed to release the same computer files it threatens to release here, because the government's "national defense and national security interest would be harmed forever" if Defense Distributed were permitted to follow through on its threatened activities. Id. at 460; see also Defense Distributed

<u>v. U.S. Dep't of State</u>, 121 F. Supp. 3d 680, 689-90 (W.D. Tex. 2015). New Jersey is in the same position now – it has a strong sovereign interest in protecting homeland security within its borders, and that interest would be irreparably harmed if the Court permits Defendants to follow through on their threats.

The <u>Defense Distributed</u> decisions comport with decisions from other courts finding that state governmental interests would be impaired by conduct of the exact kind threatened here. In <u>Tracy Rifle & Pistol LLC v. Harris</u>, 118 F. Supp. 3d 1182 (E.D. Cal. 2015), for example, the court acknowledged California's sovereign interest in enforcing a law that prohibited retail firearms dealers from advertising or displaying handguns, such that the advertisement or display could readily be seen from the outside. The court determined that the State's interest in preventing the proliferation of hand guns outweighed the dealer's interest in having the regulation preliminarily enjoined. <u>See id.</u> at 1183, 1193-95. As that court put it, "[t]he costs of being mistaken, on the issue of whether the injunction would have a detrimental effect on handgun crime, violence, and suicide, would be grave. These costs would affect members of the public, and they would affect the Government which is tasked with managing handgun violence." <u>Id.</u> at 1193. The Ninth Circuit upheld the district court's

order allowing the ban to remain in place, likewise recognizing that "serious public risks are implicated" by the activity the firearms dealer sought to undertake. Tracy Rifle & Pistol LLC v. Harris, 637 Fed. App'x 401, 402 (9th Cir. Feb. 23, 2016).

Moreover, the harms to New Jersey identified in Deputy Chief of Detectives Donohue's and Director Maples's Declarations are at least as severe as the harms to "law enforcement and public safety interests" underlying decisions granting states' requests for temporary equitable relief in other contexts. See, e.g. Maryland v. King, 133 S. Ct. 1, 3 (2012) (Roberts, C.J.) (finding that a state was irreparably harmed by a lower court decision enjoining collection of DNA samples from individuals charged with certain crimes because DNA testing "provides a valuable tool for investigating unsolved crimes and thereby helping to remove violent offenders from the general population"); Coleman v. Paccar Inc., 424 U.S. 1301, 1307 (1976) (Rehnquist, C.J.) (finding that the government would suffer irreparable harm if it could not enforce certain motor vehicle safety standards for even a 60-day period, where delay would leave manufacturers "free to produce as many vehicles as they can and . . . obtain substantial stockpiles of noncomplying vehicles for later sale," resulting in a "serious setback" for "the goals of federal motor vehicle safety"). New Jersey would

suffer immeasurably more harm if the State were flooded with the 3-D guns that Defendants seek to make available to everyone.

All these public harms – in the form of increased mortality, increased lawlessness, and decreased security – cannot be addressed outside of an injunction. See Crowe, 90 N.J. at 132. That is so for one simple reason: posting these codes is a bell that can never be un-rung. Criminals, gangs, and terrorist networks only need to download a code once to benefit from it permanently. The consequences of publishing the printable-gun codes are grave and irreversible, and no money can restore or make up for the threats to public safety and law enforcement safety that will follow. Accordingly, the Court should order an injunction to prevent irreparable harm to the residents of New Jersey.

**B. Plaintiff has demonstrated a settled legal right and a likelihood of success on the merits.**

Second, Defendants' planned actions violate New Jersey public nuisance and negligence law. The Attorney General can therefore demonstrate a reasonable probability of success on the merits. Crowe, 90 N.J. at 133. Nonetheless, "mere doubt as to the validity of [a] claim is not an adequate basis for refusing to maintain the status quo." Crowe, 90 N.J. at 133-34 (citing Naylor v. Harkins, 11 N.J. 435 (1953)). "Indeed, the point of temporary relief is to maintain the parties in substantially the

21

same condition when the final decree is entered as they were when the litigation began." Id. at 134 (citation and internal quotation marks omitted).

    1.   Public Nuisance

    To state a public nuisance claim, a plaintiff must allege "an unreasonable interference with a right common to the general public." In re Lead Paint Litig., 191 N.J. 405, 425 (2007) (citing The Restatement (Second) of Torts § 821B (1979)). The interference need not involve "conduct that is proscribed by statute or other legislative act." James v. Arms Tech., Inc., 359 N.J. Super. 291, 330 (App. Div. 2003). Rather, a public nuisance may exist "if the conduct complained of involves a 'significant interference' with the public welfare or 'is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right.'" Id. (quoting Restatement § 821B(2)(a) and (c)). So long as the tortfeasor's conduct was a "substantial factor" in causing the injury, regardless of the presence of other intervening causes, the causation element will be satisfied. James, 359 N.J. Super. at 311.

    James controls this case. There, the Appellate Division upheld a public nuisance claim asserted by New Jersey

municipalities against firearms manufacturers. The plaintiffs alleged that the manufacturers intentionally marketed and sold firearms to persons who would bring them illegally into Newark. Id. at 307. The municipalities alleged that defendants' unlawful "distribution, promotion, and sale of guns" constituted "an unreasonable interference with . . . the public's right to be free from danger," and that the conduct "resulted in . . . significant costs to the City of Newark in order to enforce the laws and to treat the victims of crimes facilitated through the use of [d]efendants' firearms." Id. at 306-307. The possible actions of intervening third parties did not mean that the municipalities were incapable of establishing that defendants exercised control over the use of illegal firearms. Id. at 332. The nuisance was not the specific guns; instead, the Court focused on the manufacturers' participation in "the creation and supply of this illegal market." James, 359 N.J. Super. at 332. Because manufacturers controlled their own participation in the "creation and supply" of the market, the court held the municipalities had sufficiently pleaded their public nuisance claim, including for causation. Id.

With those principles in mind, the Appellate Division had little trouble understanding why these municipalities had stated a claim against these firearms manufacturers. First, the Court

in _James_ explained, "[n]o one can seriously debate" that regulated guns are "dangerous instrumentalities" and thus implicate New Jersey public nuisance law. _Id._ at 320. _Second_, the Court held, it would violate New Jersey law for manufacturers to "flood the gun market" through a high volume of sales, while failing to develop "reasonable safeguards over the distribution scheme" and "refus[ing] to oversee or supervise the control of handgun distribution in order to prevent the foreseeable channeling of guns to such an illegal market." _Id._ at 312. And so, the Appellate Division concluded, when a defendant floods the gun market and fails to take steps to prevent these distributions from ending up in criminals' hands, they could be held responsible under public nuisance law when their acts "facilitate[d] the illegal sale of weapons to criminals and other unlawful users." _Id._

There is no doubt that, under _James_, Defendants will commit a public nuisance if they proceed with their plans to publish computer files, which will allow anyone with a 3-D printer to download a code and create a fully operational gun with just a few clicks. There is no question that these files will interfere with the public's safety by "flood[ing] the market" with illicit arms. Again, as Deputy Chief Donohue explained, the "codes will be available to everyone in New Jersey."

24

(Donohue Cert. ¶ 14.)

In addition, these actions will directly undermine New Jersey's statutory scheme – further evidence that they are creating a public firearms nuisance. For one, under N.J.S.A. 2C:39-9(d), it is illegal to manufacture a weapon without a license. And yet Defendants plan to distribute codes that would enable individuals to do just that – to print a gun at home, without a license, and without going through a Federal Firearms Licensee. For another, "certain persons . . . are prohibited from purchasing, owning, possessing, or controlling any and all firearms under N.J.S.A. 2C:39-7(b), due to their prior convictions for aggravated assault, arson, burglary, escape, extortion, homicide, kidnapping, robbery, aggravated sexual assault, sexual assault, bias intimidation, endangering the welfare of a child, stalking, or a crime involving domestic violence. Those persons face a mandatory term of imprisonment with at least five years of parole ineligibility if they purchase, own, possess, or control a firearm. But the 3D codes will allow them to easily download firearms at home, which will severely hamper law enforcement's ongoing efforts to keep dangerous guns out of the hands of dangerous criminals." (Donohue Cert., ¶ 16.)   Still more, Defendants' codes will "enable individuals to print assault weapons, which are illegal

25

in New Jersey under N.J.S.A. 2C:39-5(f)."  (Id. ¶ 13.)

And last—and critically—Defendants made no effort to develop "reasonable safeguards over the distribution scheme" or to "oversee or supervise the control of handgun distribution in order to prevent the foreseeable channeling of guns to such an illegal market."  In fact, just the opposite is true: Defendants actively believe their codes should be accessible to individuals who are prohibited from owning weapons.  Wilson has stated that his database "will be available to anyone anywhere in the world with an uncensored internet connection, to download, alter, remix, and fabricate into legal weapons with tools like 3D printers and computer-controlled milling machines."  (Greenberg, supra.)  According to Wilson, "What's about to happen is a Cambrian explosion of the digital content related to firearms . . . [a]ll this Parkland stuff, the students, all these firearms of 'common sense gun reforms'?  No.  The internet will serve guns, the gun is downloadable . . . No amount of petitions or die-ins or anything else can change that."  (Ibid.)  He also posted a picture of a tombstone in the ground, engraved with the phrase "American Gun Control."  What this all shows is that Defendants' interference with New Jersey's firearm safety regulations is intentional and thus per se unreasonable – and it certainly confirms that Defendants will not put reasonable

26

safeguards in place to keep guns out of prohibited persons' hands.

All of the other traditional public nuisance factors only confirm that relief is warranted. Defendants are in complete control of the CAD files and their publication, and thus would create, or at a minimum would be a substantial factor in creating, the nuisance by allowing unrestricted access of the files on the Internet through its Website. The public nuisance is also foreseeable to Defendants. Again, Wilson has publicly stated that the database "will be available to anyone anywhere in the world with an uncensored internet connection." (Greenberg, *supra*.) And Defendants were put on notice by the Federal Government and multiple federal courts that the publication of their CAD files, which permanently make the files available to those with Internet access, would forever harm national defense and national security. (*Defense Distributed v. U.S. Dept. of State*, 838 F.3d 451, 461 (5th Cir. 2016).) For all these reasons, in light of *James*, little doubt exists that Defendants' actions constitute a public nuisance.

   2.   Negligence

   For the same reasons that Plaintiff has proven a public nuisance claim, their plan is also negligent. Defendants' planned widespread dissemination of printable-gun code is

27

negligent because it encourages an illegal gun market, which will foreseeably lead to increased crime and violence in New Jersey, and to an increase in expenditures of government funds to prevent crime and protect the public's health. See James, 359 N.J. Super. at 308-324 (finding legally valid negligence claim against gun manufacturers, trade organizations, and gun distributors and retailers that flooded illegal gun market); see also Ileto v. Glock, Inc., 349 F.3d 1191, 1214-16 (9th Cir. 2003) (reversing dismissal of plaintiffs' claims that gun manufacturers negligently created an illegal secondary market for guns); City of Cincinnati v. Beretta U.S.A. Corp., 95 Ohio St.3d 416, 421-23 (reversing dismissal of city's negligence counts and finding that city had a viable negligence claim against defendant gun manufacturers, trade associations, and distributors).

In James, the trial court denied defendants' motions to dismiss the City of Newark's negligence claim and found that the defendants owed a duty of care to the City of Newark. Id. at 307. In doing so, the trial court considered the "inherent dangerousness of handguns." Ibid. On appeal, the Appellate Division upheld that determination, finding "the dangerous propensity of handguns is self-evident, and the consequence of their misuse is well documented." Id. at 323. Similarly, in

28

the instant case, Defendants have a duty to the citizens of New Jersey. The printed guns peddled by Defendants are even more dangerous than the guns in _James_, because they are unserialized and undetectable by traditional law enforcement measures, providing further support for a finding that Defendants owe a duty of care to New Jersey residents. As in _James_, the State has a valid, viable negligence claim against Defendants.

Accordingly, the State has demonstrated a probability of ultimate success, as to both its public nuisance and negligence claims.

**C.   On balance, a greater and substantial harm will result if an injunction is not issued.**

Any harm to the Defendants arising from the issuance of the requested injunctive relief is clearly outweighed by the resultant harm to New Jersey residents' safety if Defendants flood the illegal gun market and put untraceable weapons in the hands of criminals and minors. When an interlocutory injunction seeks to maintain the status quo, "a court may take a less rigid view" of the _Crowe_ factors. _Waste Mgmt. of N.J., Inc. v. Union County Mun. Utils. Auth._, 399 N.J. Super 508, 520 (App. Div. 2008). Here, if injunctive relief is granted, Defendants will stand in the same place tomorrow that they stand today. Defendants removed their printable-gun code from the Internet in 2013. _Defense Distributed_, 121 F.Supp.3d at 687. An injunction

29

simply preserves this status quo. Conversely, unfettered access to the printable-gun code poses a severe risk to public safety that is irreversible and permanent. Again, the codes will be available to everyone – regardless of age, criminal status, or history of mental illness. (Donohue Cert., ¶ 14.) The only requirement to obtain a gun would be a 3-D printer. Permitting dissemination of the code would undermine all the systems, laws, and regulations currently in place to ensure that those exact individuals do not possess firearms. (Id., ¶ 15.) Additionally, the guns would not have serial numbers and would not contain metal. (Donohue Cert., ¶ 14; Maples Declaration, ¶ 16.) They would thus be untraceable and undetectable, further hamstringing law enforcement efforts. The balance of hardships and the fact that the relief just maintains the status quo both weigh heavily in favor of granting a temporary restraining order.

Notably, the Texas district court and the U.S. Court of Appeals for the Fifth Circuit have already weighed similar harms in determining whether then-plaintiff Defense Distributed was itself entitled to a preliminary injunction. Ultimately, both courts found that the equities weighed in favor of prohibiting dissemination. Defense Distributed, 838 F.3d at 458-61. Even after Defense Distributed contended that "the balance of

30

interests tilts in their favor because 'it is always in the public interest to prevent the violation of a party's constitutional rights,'" the district court rejected that bald assertion as lacking and determined that the public had a "keen interest in restricting the export of defense articles." Defense Distributed, 121 F.Supp.3d at 689.  The Fifth Circuit readily agreed.  Defense Distributed, 838 F.3d at 458-61.  New Jersey has a similar interest in restricting the proliferation of untraceable, undetectable weapons, and so the balancing of equities should yield the same result in this case.

D.  **The public interest favors the issuance of an injunction.**

This case is one of "significant public importance," and, consequently, in determining whether to issue an injunction, the Court must also consider the harm to the public interest.  See Garden State Equality, 216 N.J. at 320-21.  That is why "Courts, in the exercise of their equitable powers, 'may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved.'" Waste Mgmt of N.J., Inc., 399 N.J. Super at 520-21, quoting Yakus v. United States, 321 U.S. 414, 441 (1944).  For many of the reasons already given, this factor likewise weighs strongly in favor of granting the State's application for injunctive relief.

31

Threats to public safety and law enforcement safety are the quintessential harm to the public interest. As the Appellate Division has held, "New Jersey has a strong public interest in protecting the public from the violence and social cost associated with the criminal misuse of firearms." James, 359 N.J. Super. at 320. And as explained above, Defendants' plans directly undermine that public interest. Defendants have made it abundantly clear that they wish to flood New Jersey with untraceable and unlicensed firearms, including illegal assault weapons. Again, Defendant Cody Wilson has stated "All this Parkland stuff, the students, all these dreams of 'common sense gun reforms'? No. The internet will serve guns, the gun is downloadable." (Greenberg, supra.) The code will give minors, felons, and domestic abusers access to guns that they would not otherwise have. (Donohue Cert., ¶ 14.) This will lead to an increase in violence, lawlessness, and, ultimately, mortality.

Moreover, permitting dissemination of the printable gun code undermines the democratic process. The New Jersey Legislature has enacted comprehensive gun restrictions to ensure the safety of New Jersey residents. See N.J.S.A. 2C:58-1 et. seq. The dissemination of Defendants' code undermines those restrictions, undermining the democratic process and harming the public. An injunction must thus be entered to avoid significant

32

and grave harm to the public safety and to New Jersey's statutory scheme.

**E.   This Court should enjoin Defendants from publishing their codes.**

In order to fully protect New Jersey citizens, any injunction must completely preclude Defendants from disseminating the printable-gun code on the Internet.   An injunction limited only to publication in New Jersey would be, essentially, a nullity.   If the code were disseminated elsewhere, the files could be downloaded and then disseminated further, including on other websites not run by Defense Distributed.   That is not academic: when Wilson posted the code for a single gun in 2013 for just a few days before the Federal Government stepped in, that code was downloaded 100,000 times. (Greenberg, _supra_.)   Moreover, a criminal network could access the code in New York, and share it with other members in New Jersey.   Merely limiting access from New Jersey IP addresses, as Defense Distributed promises it will do (temporarily) in response to the New Jersey Cease-And-Desist Letter, accomplishes next to nothing.   Criminals, gangs, terrorist groups – to name just a few – have a reach that spans across state borders, and would easily access the code, and then continue using it to print firearms in New Jersey.   And individuals could likewise do so with ease – all it takes is one trip to New York to download

the code, and then that individual could print weapons in New Jersey for years to come. In addition, it is remarkably easy to mask an IP address using a virtual private network ("VPN"). In fact, web providers such as Google Chrome even sell a way to mask IP addresses via VPN through its website. (See https://chrome.google.com/webstore/detail/hide-my-ip-vpn/keodbianoliadkoelloecbhllnpiocoi.)

The only solution that will protect New Jersey's public safety is for this Court to enjoin Defendants from publishing their codes altogether. The consequences of making these codes widely accessible across the United States on the Internet are grave and irreversible, and will plainly and severely impact New Jersey.

## CONCLUSION

For the foregoing reasons, the Attorney General respectfully urges this Court to enter the proffered Order to Show Cause so that temporary, preliminary and thereafter final relief can be entered to ensure that Defendants' publication of the printable-gun computer files for use in New Jersey are restricted and, as such, are no longer in a position to irreversibly endanger the health, safety, peace, and comfort of New Jersey citizens.

34

Respectfully submitted,

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY

By: _Lara J. Fogel_____
        Lara J. Fogel
        Deputy Attorney General

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY
Division of Law
124 Halsey Street
P.O. Box 45029
Newark, New Jersey 07101
Attorney for Plaintiff

JUL 3 0 2018

By:  Lorraine K. Rak (035771985)
     Deputy Attorney General, Section Chief
     Lara J. Fogel (038292006)
     Melissa Medoway (028422011)
     Jesse J. Sierant (049342013)
     Deputy Attorneys General
     Affirmative Civil Enforcement
     (973) 877-1280

                              SUPERIOR COURT OF NEW JERSEY
                              CHANCERY DIVISION, ESSEX COUNTY
                              DOCKET NO._____

| | |
|---|---|
| GURBIR S. GREWAL, Attorney General of the State of New Jersey,<br><br>                   Plaintiff,<br><br>          v.<br><br>DEFENSE DISTRIBUTED, CODY R. WILSON, and JANE and JOHN DOES 1-20, individually and as owners, officers, directors, shareholders, founders, members, managers, agents, servants, employees, representatives and/or independent contractors of DEFENSE DISTRIBUTED, and XYZ CORPORATIONS 1-20,<br><br>                   Defendants. | Civil Action<br><br><br><br>CERTIFICATION OF INVESTIGATOR AZIZA SALIKHOVA |

I, Aziza Salikhova, of full age, certify as follows:

1.   I make this Certification based upon my personal knowledge and review of documents in my possession.

2.   I am currently employed as an Investigator with the New Jersey Division of Consumer Affairs ("Division"), Office of Consumer Protection.   I have held this position since approximately March 10, 2001.

3.   In that capacity, I am responsible for investigating possible violations of New Jersey laws and regulations.

4.   Defense Distributed has a website[1] located at https://defdist.org ("DD Website").   The "About" section of the DD Website provides as follows:

7/26/2018                                    About | Defense Distributed

**ABOUT**

Defense Distributed is a non-profit, private defense firm principally engaged in the research, design, development, and manufacture of products and services for the benefit of the American rifleman. Since 2012, DD has been headquartered in Austin, Texas.

Media inquiries: crw@defdist.org

5.   Defendants have posted their Computer Aided Design ("CAD") files on https://defcad.org ("DefCad Website"), a

---

[1]   On July 26, 2018 I was able to access Defense Distributed's websites located at https://defdist.org, https://defcad.com, and https://ghostgunner.net.   I completed electronic captures of these web sites which are available to be produced upon request.

website they created to serve as an open-source repository for weapons designs.

6.   The DD Website currently states as follows:

Defense Distributed |

(DD) ABOUT  CONSULTING  LOGIN  JOIN

AUGUST 1
2018

Defense Distributed relaunches DEFCAD after reaching a settlement agreement with the US Department of State, concluding a multi-year federal lawsuit. The age of the downloadable gun begins.

7.   The DefCad Website includes data to automatically manufacture the "Liberator" pistol, which is a plastic firearm. The DefCad Website depicts the Liberator pistol as follows:



8.    Through the related website of https://ghostgunner.net ("GG Website"), Defense Distributed also manufactures and sells a "computer-controlled milling machine" called the "Ghost Gunner," which is designed to allow its owner to carve gun parts out of aluminum.   The GG Website includes the following depiction of the Ghost Gunner:





‪☏ 800-880-8257‬   Cart

HOME   PRODUCTS   DOWNLOADS   FAQ   DEALERS   ABOUT ▾

## GHOST GUNNER 2
### An open source hardware project

Ghost Gunner is a general purpose CNC mill, built upon a large body
of open source work, grbl g-code motion control, and popular
microcontrollers.

View Specifications ▸
Learn more ▸

SHOP NOW

## FOR 80 PERCENT RECEIVERS AND FRAMES
### No prior CNC experience required

Ghost Gunner is specially designed to manufacture a growing library of mil-spec 80 percent lowers to
completion. With simple tools and point and click software, the machine automatically finds and aligns
to your 80% lower to get to work. No prior CNC knowledge or experience is required to manufacture
from design files. Legally manufacture unserialized rifles and pistols in the comfort and privacy of home.

9.   On July 26, 2018, I created a user account on the DefCad Website. During the process I was not asked to verify my age, criminal background, or any other factors that would render me ineligible to possess a firearm.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
AZIZA SALIKHOVA

Dated:  July 30, 2018
        Newark, New Jersey

5

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY
Division of Law
124 Halsey Street
P.O. Box 45029
Newark, New Jersey 07101
Attorney for Plaintiff

JUL 3 0 2018

By:  Lorraine K. Rak (035771985)
     Deputy Attorney General, Section Chief
     Lara J. Fogel (038292006)
     Melissa Medoway (028422011)
     Jesse J. Sierant (049342013)
     Deputy Attorneys General
     Affirmative Civil Enforcement
     (973) 877-1280

|  |  |
|---|---|
| | SUPERIOR COURT OF NEW JERSEY<br>CHANCERY DIVISION, ESSEX COUNTY<br>DOCKET NO. _____ |
| GURBIR S. GREWAL, Attorney General<br>of the State of New Jersey,<br><br>                    Plaintiff,<br><br>          v.<br><br>DEFENSE DISTRIBUTED, CODY R.<br>WILSON, and JANE and JOHN DOES 1-<br>20, individually and as owners,<br>officers, directors, shareholders,<br>founders, members, managers,<br>agents, servants, employees,<br>representatives and/or independent<br>contractors of DEFENSE<br>DISTRIBUTED, and XYZ CORPORATIONS<br>1-20,<br><br>                    Defendants. | **Civil Action**<br><br><br><br><br>**CERTIFICATION OF<br>DEPUTY CHIEF OF DETECTIVES<br>CHRISTOPHER W. DONOHUE** |

I, Christopher W. Donohue, of full age, certify as follows:

1.   I am a citizen of the United States and a resident of the State of New Jersey ("New Jersey").

1

2.    I am over 21 years of age.

3.    I am the Deputy Chief of Detectives, shield #1783, of the Gangs/Organized Crime Bureau of the New Jersey Division of Criminal Justice ("DCJ").

4.    I graduated with honors from the Westchester County Police Academy, in Valhalla, New York in 1996, and became an Investigator for the New York County District Attorney's Office in New York City in the same year. I attained the rank of Senior Investigator and Field Training Officer (FTO) before leaving in November of 2001.

5.    In 2001, I became a detective with DCJ and was assigned to the Gangs/Organized Crime Bureau. I was promoted to the rank of Lieutenant in 2009, and remained assigned to the Gangs/Organized Crime Bureau. In 2014, I was promoted to the rank of Deputy Chief of Detectives of the Gangs/Organized Crime Bureau.

6.    In my current capacity as Deputy Chief of Detectives, I am responsible for overseeing all criminal investigations administered by the Gangs/Organized Crime Bureau. The Gangs/Organized Crime Bureau is responsible for investigating groups and/or individuals associated with street gangs and organized crime who commit criminal offenses in violation of New Jersey State law, such as narcotics trafficking, weapons offenses, money laundering, and murder. The vast majority of

2

cases investigated by the Gangs/Organized Crime Bureau involve a firearm.

7.   During my career, I have investigated and supervised hundreds of cases involving organized crime, narcotics trafficking, weapons offenses, homicide, and money laundering. Throughout my career, I have served as an affiant on numerous wiretap applications, as well as search and arrest warrant applications.

8.   In addition to attending the Westchester County Police Academy, I have also received specialized training over the course of my career from agencies, such as the New York City Police Department, the New Jersey State Police ("NJSP"), the United States Drug Enforcement Administration, and the NY/NJ High Intensity Drug Trafficking Area.  I have also participated in numerous in-service trainings from the New York County District Attorney's Office and DCJ.  I have also received meritorious commendations from the New Jersey Attorney General, the New York City Police Department, the Federal Bureau of Investigation, the United States Drug Enforcement Administration, the NJSP, and the United States Attorney's Office.

9.   I am trained in and qualified to carry several types of firearms.  Twice a year, I am required to attend in-service trainings and qualify to carry firearms.  I have attended these

twice-a-year trainings and qualifications every year since 1996.

10.  Printable-gun computer files allow anyone with a third dimensional ("3D") printer to download a code and create a fully operational gun.  Because the 3D printed firearms will not have serial numbers or other identifiable marks, they will never be traceable by law enforcement.  This completely subverts New Jersey's system of gun regulation and threatens the health, safety, and welfare of our citizens.

11.  A serial number is required to be placed on all firearms so that they can be traced to their original owners if they are ever used to commit a criminal offense.  Law enforcement traces firearms by finding the owner's name in the gun dealer's records, and then interviewing that person and any other person to whom he sold the gun, and so on.  Through this process, law enforcement is able to determine the manufacturer of the gun, the date it was sold, the dealership, and the purchaser.  This information assists law enforcement in determining what happened to a particular gun after it left the dealer by learning the history of who owned the gun.

12.  Being able to trace a gun is critical in the investigation of gun-related crimes.  The computer-aided design (CAD) codes of defendants Defense Distributed and Cody R. Wilson (collectively, "Defendants") will allow individuals across New Jersey to automatically manufacture untraceable guns

4

on 3D printers.  If law enforcement is unable to trace 3D guns to determine their owners, law enforcement will be critically hampered in its ongoing efforts to solve gun crimes and prevent new gun crimes from being committed.  This poses a direct and immediate threat to public health, safety, and welfare.

13.  Defendants' codes for 3D guns will also enable individuals to print assault weapons, which are illegal in New Jersey under N.J.S.A. 2C:39-5(f).

14.  In addition, Defendants' codes for 3D guns will be available to everyone in New Jersey, regardless of age, criminal status, history of mental illness, or other disqualifying characteristic.  There will thus be no way for law enforcement to prevent guns from winding up in the hands of those who are prohibited from purchasing firearms under New Jersey law, including the following:

 a. those who have been convicted of crimes and disorderly persons offenses involving acts of domestic violence (prohibited by N.J.S.A. 2C:58-39(c)(1));

 b. those who are drug dependent (N.J.S.A. 2C:58-3(c)(2));

 c. those who are confined for mental disorders to hospitals, mental institutions or sanitariums (N.J.S.A. 2C:58-3(c)(2));

d.   those who suffer from a physical defect or disease that would make it unsafe for them to handle firearms (N.J.S.A. 2C:58-3(c)(3));

e.   those who have been confined for a mental disorder (N.J.S.A. 2C:58-3(c)(3));

f.   those who are alcoholics and are unable to produce proof demonstrating that they no longer suffer from that particular disability in a manner that would interfere with or handicap them in the handling of firearms (N.J.S.A. 2C:58-3(c)(3));

g.   juveniles (N.J.S.A. 2C:58-3(c)(4));

h.   those for whom the issuance of a permit to purchase a handgun or firearms purchaser identification card would not be in the interests of the public health, safety, or welfare (N.J.S.A. 2C:58-3(c)(5));

i.   those who are subject to restraining orders issued pursuant to the "Prevention of Domestic Violence Act" prohibiting them from possessing firearms (N.J.S.A. 2C:58-3(c)(6);

j.   those who were adjudicated delinquent for offenses which, if committed by an adult, would constitute a crime involving the unlawful use or possession of weapons, explosives, or destructive devices (N.J.S.A. 2C:58-3(c)(7));

k.   those who had a firearm seized pursuant to the Prevention of Domestic Violence Act (N.J.S.A. 2C:58-3(c)(8)); and

l.   those who are named on the consolidated Terroristic Watchlist maintained by the Terrorist Screening Center administered by the Federal Bureau of Investigation (N.J.S.A. 2C:58-3(c)(9)).

15.  The New Jersey Legislature has passed these laws prohibiting the foregoing groups of individuals from obtaining permits to purchase handguns and firearms purchaser identification cards because the legislative judgment is that if such persons had access to guns, there would be a direct threat to public safety. However, if Defendants' codes for 3D guns are readily available to the general public, everyone with access to a 3D printer will be able to manufacture a gun, and law enforcement will have no way to ensure that guns are not possessed by persons who are prohibited from possessing them under current New Jersey law. This undermines the legislative will and poses a direct and immediate threat to public health, safety, and welfare of New Jersey residents.

16.  Of particular concern are certain persons who are prohibited from purchasing, owning, possessing, or controlling any and all firearms under N.J.S.A. 2C:39-7(b), due to their prior convictions for aggravated assault, arson, burglary,

escape, extortion, homicide, kidnapping, robbery, aggravated sexual assault, sexual assault, bias intimidation, endangering the welfare of a child, stalking, or a crime involving domestic violence. Those persons face a mandatory term of imprisonment with at least five years of parole ineligibility if they purchase, own, possess, or control a firearm. But the 3D codes will allow them to easily download firearms, which will severely hamper law enforcement's ongoing efforts to keep dangerous guns out of the hands of dangerous criminals.

17. I was able to log on to the Defense Distributed website (located at https://defcad.com) and register simply by providing a username and email address. There was nothing on the website requiring that I attest to being over a certain age, not having a criminal background, or being otherwise ineligible to possess a weapon. The website indicated that the download will be free starting August 1, 2018. Thus, on August 1, 2018, any person in New Jersey will be able download the 3D gun codes for free, regardless of that person's eligibility to legally purchase or possess a weapon.

18.   I read Defense Distributed's Complaint filed on July 29, 2018, in the Western District of Texas, where it claimed that "[u]sers with New Jersey based IP addresses are currently blocked from accessing the files[.]"   Later that day, I attempted to and was still able to log on to the website using a smartphone while in New Jersey, contrary to Defense Distributed's claim.

19.   Even were Defense Distributed's controls effective, that does not fix the problem.  I still would be able to travel to the State of New York quickly, download the code one time, return to New Jersey, and print the 3D guns in New Jersey indefinitely.

20.   In sum, Defendants' codes for 3D guns will facilitate the illegal possession of weapons to criminals and other unlawful users, will undermine New Jersey's comprehensive scheme for keeping guns out of dangerous criminals' hands, and will undermine the safety of New Jersey residents.  Based upon my experience, to allow individuals to download the 3D gun from Defendants' website will result in printable 3D guns that will flood the illegal firearms market and pose a direct threat to the public safety of New Jersey.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

CHRISTOPHER W. DONOHUE

Dated:  July 30, 2018

LAW OFFICES

# HARTMAN & WINNICKI, P.C.

Dariusz M. Winnicki *◊
Brian T. Keane ◊°
Richard L. Ravin *◊□
Daniel L. Schmutter*
Andrew T. Wolfe ◊
Samantha N. Polizzi◊
Steven B. Gladis◊×

74 PASSAIC STREET
RIDGEWOOD, NEW JERSEY 07450

* * *

WEBSITE
www.hartmanwinnicki.com

Phone: (201) 967-8040
Fax:   (201) 967-0590

Porter E. Hartman (1920-2009)
Charles R. Buhrman (1938-1994)
William T. Marsden (1943-1993)
Cyrus D. Samuelson (1911-1998)

───────────
* New York and New Jersey Bars
° Florida Bar
□ Washington, D.C. Bar
◊ New Jersey Bar
× Pennsylvania Bar

July 31, 2018

**VIA HAND DELIVERY**
Superior Court of New Jersey
Chancery Division, Essex County
212 Washington Street
Newark, New Jersey 07101

> Re:   **Grewal v Defense Distributed, Cody R. Wilson, et al.**
>        **Docket No.: ESX-C-131-18**

Dear Sir or Madam:

On behalf of Defendants Defense Distributed and Cody R. Wilson, enclosed please find an original and two (2) copies of the following documents for filing with the court:

1. Notice of Cross Motion for Stay;
2. Letter Brief in opposition to Application for Temporary Restraints and in Support of Cross-Motion for Stay;
3. Certification of Josh Blackman;
4. Certification of Service; and
5. Proposed form of Order

Additionally, we are enclosing our firm's check in the amount of $50.00 payable to "Treasurer- State of New Jersey" as the filing fee in this matter.   Please stamp the enclosed documents as "FILED" and return one copy to the awaiting messenger.

Should you have any questions, please do not hesitate to contact me.

Very truly yours,

DANIEL L. SCHMUTTER

DLS/sr
Enclosures
cc:   Lorraine Rak, Esq.,Office of Attorney General via email
F:\FIRMDOCS\11634\001\COMM\P0154683.DOC

**HARTMAN & WINNICKI, P.C.**
Daniel L. Schmutter, Esq. 049381991
74 Passaic Street
Ridgewood, New Jersey 07450
Phone: (201) 967-8040
Fax:    (201) 967-0590
Attorneys for Defendants
Defense Distributed and Cody R. Wilson

| | |
|---|---|
| GURBIR S. GREWAL, Attorney General of the State of New Jersey,<br><br>                      Plaintiff,<br><br>v.<br><br>DEFENSE DISTRIBUTED, CODY R. WILSON, et al.<br><br>                  Defendants. | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION: ESSEX COUNTY<br><br>DOCKET NO.: ESX-C-131-18<br><br>Civil Action<br><br>**NOTICE OF CROSS-MOTION FOR STAY** |

To:   **Lorraine Rak, Esq.**
      **Office of Attorney General**
      **124 Halsey Street**
      **Newark, NJ 07101**
      **Attorneys for Plaintiff**

     **PLEASE TAKE NOTICE** that on July 31, 2018, at 1:30 p.m., or as soon thereafter as counsel may be heard, the undersigned, attorneys for Defendants Defense Distributed and Cody R. Wilson., will move before the Superior Court of New Jersey, Chancery Division, Essex County, Newark, New Jersey, for an order staying the within matter.

     **PLEASE TAKE FURTHER NOTICE** that Defendants will rely upon the Letter Brief and Certification of Josh Blackman, Esq. submitted herewith.

     **PLEASE TAKE FURTHER NOTICE** that pursuant to *R.* 1:6-2(d), Defendants hereby request oral argument.

**PLEASE TAKE FURTHER NOTICE** that a proposed form of order is submitted

herewith.

> **HARTMAN & WINNICKI, P.C.**
> Attorneys for Defendants
> Defense Distributed and Cody R. Wilson.
>
>
> By: _____
> DANIEL L. SCHMUTTER

Dated: July 31, 2018

2

LAW OFFICES

# HARTMAN & WINNICKI, P.C.

Dariusz M. Winnicki *◦
Brian T. Keane ◊◦
Richard L. Ravin *◦□
Daniel L. Schmutter*
Andrew T. Wolfe ◊
Samantha N. Polizzi◊
Steven B. Gladis◊×

74 PASSAIC STREET
RIDGEWOOD, NEW JERSEY 07450

* * *

WEBSITE
www.hartmanwinnicki.com

Phone: (201) 967-8040
Fax:    (201) 967-0590

Porter E. Hartman (1920-2009)
Charles R. Buhrman (1938-1994)
William T. Marsden (1943-1993)
Cyrus D. Samuelson (1911-1998)

* New York and New Jersey Bars
* Florida Bar
□ Washington, D.C. Bar
◊ New Jersey Bar
× Pennsylvania Bar

July 31, 2018

**VIA HAND DELIVERY**
Honorable Walter Koprowski, Jr., P.J. Ch.
Superior Court of New Jersey
Chancery Division
212 Washington Street - 8th Floor
Newark, New Jersey 07102

Re:   **Gurbir S. Grewal v. Defense Distributed, et al.**
      **Docket No. ESX-C-131-18**

**LETTER BRIEF OF DEFENDANTS DEFENSE DISTRIBUTED AND
CODY R. WILSON IN OPPOSITION TO PLAINTIFF'S APPLICATION
FOR TEMPORARY RESTRAINTS AND IN SUPPORT OF CROSS-
MOTION FOR STAY**

Dear Judge Koprowski:

Please accept this letter brief in lieu of a more formal brief on behalf of Defendants Defense

Distributed and Cody R. Wilson in opposition to Plaintiff's application for temporary restraints

and in support of their cross-motion for a stay.

The standard that Plaintiff must satisfy in order to obtain temporary restraints is well settled

and is a heavy burden. Plaintiff must demonstrate: (1) that an injunction is "necessary to prevent

irreparable harm"; (2) that the legal right underlying its claim is settled; (3) that it has "a reasonable

probability of ultimate success on the merits"; and (4) that, considering "the relative hardship to

the parties in granting or denying relief," the balance of the equities favors the requested injunction.

*Crowe v. DeGioia*, 90 N.J. 126, 132–34 (1982).

{Ref:@WDWORDC-1}

Honorable Walter Koprowski, Jr., P.J. Ch.
July 31, 2018
Page 2

Moreover, a request for an injunction must be supported by "'clear and convincing proof.'" *Subcarrier Commc'ns, Inc. v. Day*, 229 N.J. Super. 634, 639 (App. Div. 1997) (quoting *Am. Employers' Ins. Co. v. Elf Atochem N. Am., Inc.*, 280 N.J. Super. 601, 610–11 n.8 (App. Div. 1995)); *see also Dolan v. DeCapua*, 16 N.J. 599, 614 (1954) ("Injunctive judgments are not granted in absence of clear and convincing proof."); *B&S Ltd., Inc. v. Elephant & Castle Int'l, Inc.*, 388 N.J. Super. 160, 168 (Ch. Div. 2006) ("The movant carries the burden to prove its entitlement to injunctive relief by clear and convincing evidence.").

1.      **By the Attorney General's own admission, temporary restraints are no longer "necessary to prevent irreparable harm."**

The Attorney General informed the Court that "in just two days"—that is, on August 1—Defense Distributed will post certain files to the Internet. In his motion for *ex parte* relief—which the court denied, the Attorney General warned that "the risk is imminent; once Defendants open that Pandora's Box, it can never be closed. This lawsuit seeks to enjoin Defendants from heading down this path." None of this is accurate: Defense Distributed uploaded the files to the Internet on Friday, July 27, 2018. Indeed, the government's own witnesses attest that the files are *already* available on the Internet.

The government can't have it both ways. Whatever imminent risk may have warranted emergency injunctive relief is now dissipated. By the Attorney General's own admission, temporary restraints are no longer "necessary to prevent irreparable harm." *Crowe*, 90 N.J. at 132–34 . Such intervention can no longer work. The Court should deny the temporary restraints, and this case should proceed to the preliminary injunction phase in the normal course. In the interim, Defense Distributed will continue to block IP addresses in New Jersey from accessing the files. Defense Distributed has also blocked access to the files from all cellular-based devices,

Honorable Walter Koprowski, Jr., P.J. Ch.
July 31, 2018
Page 3

nationwide. We will maintain this virtual wall around New Jersey as the case proceeds to the next stage or until a Court orders otherwise.

2.    **Plaintiff Cannot Show That "The Legal Right Underlying Its Claim Is Settled"**

Under *Crowe*'s second element, the Attorney General has the burden to show "that the legal right underlying [his] claim is settled." *Id.* Absolutely none of the claims in this case are "settled." No court, in any jurisdiction, has ever held that posting information on the Internet amounts to a common law nuisance. Yet, the Attorney General insists that *James v. Arms Tech., Inc.* controls this case. 359 N.J. Super. 291, 330 (App. Div. 2003). It is not even close. *James* permitted a public nuisance claim against firearms manufacturers. That case is worlds away from the facts here: Defense Distributed shares files on the Internet pursuant to a federal license. The Attorney General attempts to cram the facts of this case into *James*: (1) Defense Distributed posts the files online; (2) New Jersey residents bypass the location-based firewall; (3) New Jersey residents download the files; (4) New Jersey residents then use the files to print certain parts; (5) New Jersey residents then assemble the parts to form a prohibited firearm.

No fair reading of *James* can support this strained chain of inferences. Critically, Defense Distributed does not manufacture firearms, nor does it ship them in interstate commerce. Whether or not *James* can be *extended* to cover the posting of information on the Internet, as a common law nuisance, is a question for another day. However, that such an extension would be needed demonstrates the "legal right underlying [his] claim" cannot be settled. Likewise, the Attorney General can cite no precedent to suggest that posting information on the Internet can constitute negligence. Here too, the law is not "settled." The shaky terrain on which this case sits is reaffirmed

Honorable Walter Koprowski, Jr., P.J. Ch.
July 31, 2018
Page 4

by Points #4, 5, 6, and 7 *infra*: the federal Constitution, as well as the Supremacy of the President's

powers in matters subject to federal export controls, preempt both claims for nuisance and

negligence. The Attorney General has failed to satisfy his burden to obtain temporary restraints in

such uncharted waters.

3.      **The Court Should Stay This Lawsuit in Favor of both the First-Filed Texas Action and the Washington Action to Prevent Blatant Forum Shopping.**

"Under the first-filed rule, a New Jersey state court ordinarily will stay or dismiss a civil action

in deference to an already pending, substantially similar lawsuit in another state, unless compelling

reasons dictate that it retain jurisdiction." *Sensient Colors, Inc. v. Allstate Ins. Co.*, 193 N.J. 373,

386 (2008). "If we are to have harmonious relations with our sister states, absent extenuating

circumstances sufficient to qualify as special equities, comity and common sense counsel that a

New Jersey court should not interference with a similar, earlier-filed case in another jurisdiction

that is 'capable of affording adequate relief and doing complete justice.'" *Id.* at 387

(quoting *O'Loughlin v. O'Loughlin*, 6 N.J. 170, 179 (1951)). "The litigation of substantially

similar lawsuits in multiple jurisdictions with opposing parties racing to acquire the first judgment

is not only wasteful of judicial resources, but anathema in a federal system that contemplates

cooperation among the states. Thus, any comity analysis should begin with a presumption in favor

of the earlier-filed action." *Id.*

Further, "if the two cases involve substantially the same parties, claims, and issues, the burden

shifts to the party arguing that jurisdiction should be retained in the second-filed action, either

because it will not have the opportunity for adequate relief in the first-filed forum or because there

are other special equities. *Sensient Colors*, 190 N.J. at 391–92.

Honorable Walter Koprowski, Jr., P.J. Ch.
July 31, 2018
Page 5

This Court recently followed the first-filed rule to dismiss a later filed state court action in favor of a first filed federal court action. *See Rose v. Hassan*, ESX-C-264-2010 (Koprowski, J.S.C., August 9, 2011) (*see* copy attached). Here, the forum shopping by the Attorney General could not be more obvious and blatant. On Sunday, July 29, 2018, Defense Distributed filed suit against the Attorney General in the United States District Court for the Western District of Texas. The complaint contended that New Jersey's common law torts were preempted by federal and state law. The Texas Action includes the same essential parties and was filed a day earlier in the Western District of Texas, where defendants Defense Distributed and Wilson reside.

The Attorney General was obviously aware of the Texas Action because he discusses it and even quotes it at length in his papers. Plaintiff could easily have sought emergent injunctive relief in the Texas Action but plainly chose not to file such a motion there because he prefers to be in a New Jersey State Court where he perceives he has an advantage. The New Jersey Supreme Court adopted the first-filed rule to prevent such blatant forum shopping behavior the first-filed rule is designed to prevent. Thus, this Court should follow New Jersey's first-filed rule and stay the within action in favor of the first-filed action already pending in the Western District of Texas.

The Attorney General's forum shopping gets even worse. Several hours after he filed suit in this Court, the Attorney General joined eight other states to sue Defense Distributed in federal court in Washington. That case raises different legal questions, but seeks the same remedy: force Defense Distributed to stop sharing files on the internet. This Court has scheduled a hearing at 1:30 ET. The Western District of Washington will schedule a hearing at some point later in the day.

The Attorney General actually wants to litigate in two different forums simultaneously in order to see where he gets the best relief. This further example of blatant forum shopping also violates

Honorable Walter Koprowski, Jr., P.J. Ch.
July 31, 2018
Page 6

the basic values of fairness and efficiency embodied in the rulings of our Supreme Court as discussed above. Thus, the Court should grant Defendants' cross motion and stay the within action in favor of both the first-filed Texas Action and the simultaneously filed Washington Action. Alternatively, this Court may seek to postpone the hearing an additional day until the matter is resolved in Washington. Critically, the Federal Court arguably has power to provide broader relief than this action.

4.      **The Plaintiffs Seek an Unconstitutional Prior Restraint on Speech**

The Attorneys General have styled this case as a mundane common law dispute. Their proposed remedy sounds innocuous enough: abate the public nuisances and negligence. However, that description of the case is dangerous window dressing. This case implicates foundational principles of free speech. Simply put, the Attorney General demands a prior restraint of constitutionally protected speech that is *already* in the public domain. We know that "[a]ny system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). That presumption of liberty is even heavier where, as here, the speech is *already* available on the Internet, and has been available for years. In *The Pentagon Papers Case*, Justice White remarked that when "publication has *already* begun," the "efficacy of equitable relief . . . to avert anticipated damages is doubtful at best." *New York Times Co. v. U.S.*, 403 U.S. 713, 732 (1971) (White, J., concurring) (emphasis added). Yet, the Attorney General, who swore an oath to the Constitution, failed to even mention the First Amendment in his emergency pleading. Such a careless disregard for the Bill of Rights fails to meet the "heavy burden" needed to justify a prior restraint. *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971). Fortunately, the bedrock principles of the First

Honorable Walter Koprowski, Jr., P.J. Ch.
July 31, 2018
Page 7

Amendment make this case much easier. A finding that a constitutional right "'is either threatened or in fact being impaired'. . . mandates a finding of irreparable injury." *Deerfield Med. Center v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). And "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod*, 427 U.S. at 373-74 (citations omitted).

Under *Crowe's* second foot, "the legal right[s] underlying" the claims here are entirely uncharted, and in no sense settled. The Plaintiff has completely failed to meet his burden to justify this prior restraint.

## 5.     The Plaintiffs Seek A Global Injunction On Free Speech

The Plaintiff does not seek to limit his remedy to Internet users in New Jersey. Rather, he explicitly seeks to order a citizen of another state to shut down a website that can be accessed globally. Today, the validity of nationwide injunctions is subject to a robust debate. But never before has any federal court—let alone a state court of limited geographic jurisdiction— entertained a global injunction on the freedom of speech of *all* Americans. The requested relief is far too broad, and should be denied.

## 6.     The Proposed Relief Violates the Federal Constitution's "Dormant" Commerce Clause

The proposed remedies would not only require Defense Distributed to cease sharing files on its Texas-based servers within New Jersey, but would also prohibit Plaintiffs from sharing the files

Honorable Walter Koprowski, Jr., P.J. Ch.
July 31, 2018
Page 8

within Texas, and other states. The Supreme Court has recognized that the "Commerce Clause . .

. precludes the application of a state statute to commerce that takes place wholly outside of the

State's borders, whether or not the commerce has effects within the State." *Healy v. Beer Inst.,*

*Inc.*, 491 U.S. 324, 336 (1989). Through the current legal action, New Jersey "project[s] its

legislation" into other states, in violation of the "Dormant" Commerce Clause. *See Brown-Forman*

*Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573, 583 (1986). *See also Am.*

*Booksellers Found. v. Dean*, 342 F.3d 96, 103–04 (2d Cir. 2003); *Publius v. Boyer-Vine*, 237 F.

Supp. 3d 997, 1025 (E.D. Cal. 2017); *Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d

946, 958–59 (N.D. Cal. 2006). The Attorney General's interruption and prevention of Defense

Distributed from publishing the files on its Texas-based servers, under color of law, violates the

Defendants' rights to freely participate in intrastate and interstate commerce under the "Dormant"

Commerce Clause, U.S. Const. art. I, § 8. The Attorney General's actions have caused Defendants,

their customers, visitors and members significant damages, in violation of 42 U.S.C. § 1983. *See*

*Dennis v. Higgins*, 498 U.S. 439 (1991).

7.    **The Federal Constitutional and Federal Export Control Law Preempt All State**
      **Law Claims**

Consistent with the President's role as Commander and Chief, and the delegation of Congress's

powers under the Commerce and Necessary and Proper Clauses, Congress has conferred the

President with the exclusive authority to issue licenses and other forms of authorizations for the

export of technical data on firearms controlled under the Arms Export Control Act ("AECA"), 22

U.S.C. § 2751 et seq. The President has delegated this authority to the State Department. Executive

Order 13637 of March 8, 2013. Pursuant to its exclusive authority under the AECA,  the State

Honorable Walter Koprowski, Jr., P.J. Ch.
July 31, 2018
Page 9

Department issued a license expressly authorizing Defense Distributed to publish certain firearms files for "unlimited distribution" pursuant to International Traffic in Arms Regulations ("ITAR") § 125.4(b)(13). Further pursuant to its exclusive authority under the AECA, the State Department issued an authorization under ITAR § 126.2 to allow every U.S. person to access, discuss, use, reproduce or otherwise benefit from technical data for the development, production, and/or use of firearms. (In the parallel Washington Action, the Attorney General also challenges the issuance of this license; yet another reason to stay any proceedings in this case pending the resolution of that federal court matter).

The Plaintiffs' proposed relief conflicts with the State Department's exclusive authority and seeks to interfere with this federal licensing framework. *See Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 375 (2000); *Nat'l Foreign Trade Council, Inc. v. Giannoulias*, 523 F. Supp. 2d 731, 738-742 (N.D. Ill. 2007). In a press release, Defendant Grewal expressly stated that he seeks to override the federal government's licensing framework: "The federal government is no longer willing to stop Defense Distributed from publishing this dangerous code, and so New Jersey must step up." New Jersey can no more prohibit the operation of a federally licensed export framework than could Maryland prohibit the operation of a federally chartered bank. *See McCulloch v. Maryland*, 17 U.S. 316 (1819). The relief based on common law nuisance and negligence are preempted legal actions are preempted based on Defense Distributed's Export License that was issued by the State Department.

Honorable Walter Koprowski, Jr., P.J. Ch.
July 31, 2018
Page 10

**8.     Defendants Do Not Consent to Venue, Subject Matter Jurisdiction, or Personal Jurisdiction**

Defendants reserve their rights to challenge this Court's venue, subject matter jurisdiction, and personal jurisdiction. Likewise, Defendants reserve their right to seek removal of this case to federal court under the "complete preemption" doctrine. *See Vafokulova v. UA Int'l Consulting Corp.*, No. CV 17-2605, 2017 WL 5557923, at *3 (E.D. Pa. Nov. 17, 2017) ("However, even if a complaint purports to rest on state law, the action may still qualify for federal question jurisdiction 'when a federal statute wholly displaces the state-law cause of action through complete preemption.'") (quoting *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003)). The federal government gave the Defendants a license to distribute the files on the Internet. Federal export control law completely preempts any state law claims to the contrary. Defense Distributed and Mr. Wilson will also be litigating this same preemption issue in the Western District of Texas: yet another reason to stay this action in favor of the first-filed case.

The Attorney General has failed to satisfy his burden to obtain temporary restraints, especially in light of his burden to establish his right to relief by clear and convincing proof.  His application should be denied, and Defendants' cross-motion to stay this matter should be granted.

Respectfully submitted,

DANIEL L. SCHMUTTER, ESQ.

JOSH BLACKMAN, ESQ.
*Admission Pro Hac Vice Pending

DLS/srs
cc:     Lorraine Rak, Esq.,Office of Attorney General

Unpublished Opinion

**NOT FOR PUBLICATION**
**WITHOUT THE APPROVAL OF THE COMMITTEE ON OPINIONS**

|  |  |
| --- | --- |
| Sylvia L. Rose, et al., Derivatively on Behalf of Merck & Co, Inc. | : SUPERIOR COURT OF NEW JERSEY<br>: CHANCERY DIVISION,<br>: GEN. EQUITY PART<br>: ESSEX COUNTY |
| Plaintiffs | : DOCKET NO.: ESX-C-264-2010 |
| v. | : |
| Fred Hassan, et al., | : **REASONS** |
| Defendants | : |

Decided:  August 9, 2011

By: Walter Koprowski, Jr., J.S.C.

_____

Oral argument was held before this Court on August 5, 2011.  The following attorneys and litigants appeared:  Gary Graifman, Esq. of Kantrowitz, Goldhamer & Graifman, P.C. appeared on behalf of the Plaintiffs; Andrew Gordon, Esq. of Paul, Weis, Rifkind, Wharton & Garrison, LLP appeared pro hac vice and William B. McGuire, Esq. of Tompkins McGuire Wachenfeld & Barry both appeared on behalf of the Defendants.

The issue before the court is whether this derivative shareholder action filed against various board members and executives of Merck & Co, Inc, successor in interest to the former Schering-Plough Corporation, should be dismissed without prejudice or stayed pending the outcome of substantially similar litigation proceeding in the U.S. District Court for the District of New Jersey under the "First-Filed Rule".

The facts giving rise to this litigation as well as at least five other litigations pending in District Court in New Jersey are not disputed for purposes of this motion.  Defendants are various board members, executives, and officers of the former Schering-Plough Corp. and its successor entity as a result of merger,

1

Merck & Co., Inc.  In an effort to market several of its cholesterol control drugs, Schering-Plough conducted a series of clinical trials known as the ENHANCE trials the company hoped would demonstrate successful results for a combined use of two of its cholesterol drugs.  It is alleged that the early returns from the trials, dated approximately late 2005 - early 2006, did not demonstrate the desired results, but the negative results of the tests were not publicly disclosed until 2008, ultimately triggering a substantial drop in the company's stock price. Plaintiffs claim the Individual Defendants were aware of the problems and short-comings of the products, and yet they failed to tell the public of these problems and continued to publicize the benefits of the products until Defendants had no choice but to release the information about the trials. Starting on January 14, 2008, the Company began partial disclosures about the failed ENHANCE study results.  The Company's stock prices began to "slide."  When the Company finally released the full results to the public on March 30, 2008, the Company's stock dropped about 20%.  (Complaint ¶ 158).

Steven Waldman was the first Schering shareholder to question Defendants' conduct regarding the ENHANCE trials, when on February 6, 2008, he made a demand on the Board to pursue these issues.  The Schering Board formed a Special Committee ("SC") and referred the demand to the SC.  Mr. Waldman is not a plaintiff in this matter.  On February 25, 2008, another set of shareholders filed a shareholder derivative action in the New Jersey District Court against substantially the same officers and directors as Plaintiff has done here.  The first-filed derivative action, <u>Cain v. Hassan</u>, is being litigated before the Honorable Dennis M. Cavanaugh.  (Hereinafter "first-filed action"). These plaintiffs did not make a demand upon the Board.  The first-filed action is one of a cluster of cases filed in the District Court which deal with the same common nucleus of factual allegations surrounding the ENHANCE study; these cases include the following: two derivative actions (including the first-filed action), two federal securities actions, and two actions arising under the Employee Retirement Income Security Act. The six pending federal actions have been coordinated for discovery and pre-trial purposes.

On June 5, 2009, Plaintiff, Sylvia Rose, a shareholder, made her demand letter upon the Schering Board referencing the ENHANCE controversy, the omissions and misrepresentations constituting wrongful action and demanded that the Board bring legal action to protect the Company and its shareholders, including actions for breach of fiduciary duty, unjust enrichment and other causes of action. (Complaint, Ex. C, Rose Demand).  On October 31, 2009, the SC's counsel informed Plaintiff's counsel that the SC investigations had been completed and the Schering Board declined to pursue claims against any present or former officers or directors.  (Complaint, Ex. D).  Plaintiffs filed this complaint in General Equity on November 16, 2010, more than two and a half years after the negative results were disclosed and the first-filed action was commenced, and more than one year after the Schering board declined to pursue her demand.

The court notes that Schering-Plough and Merck completed a merger transaction in November of 2009 as well.

Defendants filed a motion to either stay or dismiss without prejudice this case under New Jersey's First-Filed Rule, pending the outcome of the various federal litigations. To prevent simultaneous and/or duplicitous litigation, New Jersey courts have long adopted the "first-filed rule." The parties agree the controlling case on this issue is <u>Sensient Colors, Inc. v. Allstate Ins. Co.</u>, 193 N.J. 373 (2008). In that case, the Supreme Court of New Jersey set forth the motives, history, and applicable test for the first-filed rule. The court stated, "New Jersey has long adhered to the general rule that the court which first acquired jurisdiction has precedence in the absence of special equities. . . Under the first-filed rule, a New Jersey state court ordinarily will stay or dismiss a civil action in deference to an already pending, substantially similar lawsuit in another state, unless compelling reasons dictate that it retain jurisdiction." <u>Id.</u> at 387 (internal citations omitted). The Court continued, "[t]he question is not whether a state court has the power to exercise jurisdiction over a case filed within its jurisdiction, but whether the court should restrain itself and not exercise that power." <u>Id.</u> 386-87. "If [New Jersey courts] are to have harmonious relations with . . . sister states, absent extenuating circumstances sufficient to qualify as special equities, comity and common sense counsel that a New Jersey court should not interfere with a similar, earlier-filed case in another jurisdiction that is 'capable of affording adequate relief and doing complete justice.'" <u>Id.</u> "Thus, any comity analysis should begin with a presumption in favor of the earlier-filed action." <u>Id.</u> (quoting <u>O'Loughlin v. O'Loughlin</u>, 6 N.J. 170, 179 (1951)).

The Court clearly held the presumption favoring the "first-filed" jurisdiction can be overcome only by a showing of "special equities" in existence, which justify the New Jersey court retaining jurisdiction over the matter. "Special equities are reasons of a compelling nature that favor the retention of jurisdiction by the court in the later-filed action. Special equities have been found when one party has engaged in jurisdiction shopping to deny the other party the benefit of its natural forum." <u>Id.</u> at 387. The New Jersey Supreme Court has identified at least four interrelated "special equities" that may be marshaled to rebut the presumption favoring dismissal or stay of a later-filed action: 1) inability of the first-filed action to provide adequate relief; 2) strong public policy interests of New Jersey; 3) further progression of the second-filed action; and 4) *forum non conveniens* factors. *See* <u>Sensient Colors</u>, 193 N.J. at 391-96. The Court explained that "[a]ll special equities are grounded in principles of fairness, and are implicated when a first-filed action may not do full justice to a party." <u>Id.</u> "Whether special equities exempt a court from deferring to a first-filed action depends on a fact-specific inquiry that weighs considerations of fairness and comity. The determination of whether to grant a comity stay or dismissal is generally within the discretion of the trial court." <u>Id.</u> at 389-90. (internal cites omitted).

3

### A.  The First-Filed Action Involves Substantially The Same Parties, Claims, And Legal Issues

As explained above, on February 25, 2008, two plaintiffs filed a shareholder derivative action against various officers and directors of Schering-Plough in New Jersey District Court under the name Cain v. Hassan.  (Tarnofsky Aff., Ex. B).  On November 5, 2009, another federal derivative action was brought against various officers and directors of Merck, which named defendants who were associated with Merck rather than Schering-Plough.  (Tarnofsky Aff., Ex. E).  Since the underlying controversy related to the same ENHANCE allegations as in the Schering-Plough federal derivative case, Judge Cavanaugh coordinated the Merck federal derivative case with the Schering-Plough federal derivative case due to their common question of fact and the desire to avoid duplicative discovery.  (Tarnofsky Aff., Ex. G).  The other federal actions which revolve around the same core facts are two federal securities actions, and two actions arising under the Employee Retirement Income Security Act.  (Id. at Ex. I, K, and N and P).  All of these matters were consolidated for discovery purposes in December of 2009.

On November 16, 2010, Plaintiff filed her complaint in this case.  The complaint names the same defendants, makes the same factual claims, raises the same legal issues, and pursues the same causes of action under New Jersey state law as the first-filed action.  Specifically, the Rose Complaint is filed against the same defendants in the first-filed federal derivative action, except for two defendants who are not named in the federal derivative case (one is named in the securities case), and four defendants in the first-filed action, who are not named in this case.  Moreover, the legal issues in both cases are substantially the same in that both cases are shareholder derivative actions and both cases allege the same legal causes of action, including: (1) breach of fiduciary duty; (2) unjust enrichment, (3) corporate waste, and (4) gross mismanagement.  Both cases apply New Jersey law.  If anything, the first-filed action seeks slightly broader relief than the Rose Case.  Plaintiffs argue this case is distinguishable from the first-filed case because demand was made of the board in this case, and was not made of the board by the plaintiffs in the first-filed action.

Plaintiffs argue that it is significant that Plaintiffs herein made a demand upon the Board prior to initiating suit because when a demand made is improperly refused or not acted upon, in a subsequent litigation the defendants have the initial burden to demonstrate that the Board members were independent and disinterested, citing to In re PSE&G Shareholder Litigation, 173 N.J. 258, 286 (2002).  When a demand is not made of the board prior to commencing derivative litigation, the shareholders have the burden of proving demand would be futile, because the board is either conflicted, complicit, or otherwise unable to render an independent decision.  When a demand is made of the board, and the board declines or refuses to pursue the litigation

4

demanded, the burden shifts to the board to demonstrate its decision not to pursue the action was reasonable under the business judgment rule.  As Defendants argue, the procedural distinction between the two actions regarding demand-futility and demand-made has no bearing on the <u>Sensient Colors</u> first-filed analysis under New Jersey law.  The existence of a board demand in a derivative suit does not alter the underlying claims or remedies – it simply shifts the burden of proof.  Furthermore, if federal derivative actions are dismissed on the issue of demand futility, then this Court can lift the stay or reinstate the case.  Plaintiffs have not cited any case in their papers holding that the presence of a board demand distinguishes a later-filed action from an earlier one which involves the same parties, claims and issues.

The court finds that the parties, legal issues, factual circumstances, and relief sought are substantially the same in this case as they are in the pending federal derivative litigations.  Identical similarity is not required.  The presumption that the second-filed action should be dismissed or stayed pending the outcome in the first-filed litigation is therefore triggered.

### B.   There Are No Special Equities That Would Overcome The Presumption Of Stay Or Dismissal, And Compel The Court To Keep The Case Active

After establishing the elements required to trigger a presumption of dismissal or stay under the first-filed rule, the burden shifts to the non-moving party to demonstrate "special equities" or compelling reasons, for allowing the later-filed action to proceed.  The New Jersey Supreme Court has identified at least four interrelated "special equities "that may be marshaled to rebut the presumption favoring dismissal or stay of a later-filed action: 1) inability of the first-filed action to provide adequate relief; 2) strong public policy interests of New Jersey; 3) further progression of the second-filed action; and 4) *forum non conveniens* factors.  *See* <u>Sensient Colors</u>, 193 N.J. at 391-96.

No "special equities" exist here to rebut the presumption in favor of dismissal or a stay of this action.  Plaintiffs have not shown that the first-filed federal actions are incapable of providing adequate relief because the federal derivative case seeks broader relief than the Rose Case.  There is no reason the federal court cannot provide adequate relief in the <u>Cain</u> consolidated derivative case.  The plaintiffs in that case seek the same relief, i.e. compensatory damages and fees, as well as the additional relief of 1) punitive and exemplary damages; 2) an order implementing corrective measures, including a system of internal controls to prevent future violations; 3) an accounting for all losses sustained by reason of the alleged unlawful conduct; 4) disgorgement of all incentive-based or equity-based compensation during the period of alleged breach; 5) disgorgement and a constructive trust on defendant's assets or

proceeds of alleged insider trading; and 6) a pre- and post-judgment interest. The U.S. District Court has been managing the various litigations related to the ENHANCE trials for more than three years, and Plaintiffs have not demonstrated any reason that court could provide less than adequate relief. Arguments that the presence of different burdens resulting from the failure of the first-filed plaintiffs to make a demand on the board are not convincing as a reason why the federal court could not provide adequate relief. That is a tactical choice made by plaintiff's counsel in the first-filed action, and does not impact the adequacy of the relief the court could afford.

Second, Plaintiffs have not identified any strong public interest of New Jersey sufficient to rebut the presumption in favor of dismissal or stay because there are no specialized policy interests or public safety concerns here. Again, Plaintiff points to the presence of a demand in this case, and failure to make demand in the first-filed action as a reason to justify denial of a stay or dismissal for public policy grounds. There can be no doubt that New Jersey law encourages potential derivative plaintiffs to make demand on the board by erecting substantial burden-shifting obstacles to derivative claims made without demand on the board. In this way, the courts have chosen to incentivize derivative plaintiffs to make their demand on the board before filing litigation, allowing the board to consider the demand and rule on it as a business decision. However, the court cannot find that it is a strong public policy concern of the State of New Jersey to allow litigation to proceed in multiple venues simply because demand was made in one case, and not another. The Supreme Court has established the burdens of proof regarding demand–made and demand-futility cases, interpreting Court Rule 4:32-5[1]. If it was a strong policy preference of the State of New Jersey to make demands on the board prior to commencing litigation, the Legislature could have elected to bar all cases in which prior demand is not made completely. It has not done so, leaving it to the courts, who have opted instead to shift the burden of proof, and leaving it to potential litigants to decide for themselves how to proceed.

Plaintiff's reliance on In re PSE&G, supra, to demonstrate that a demand requirement is a strong public policy preference is unavailing. In that case, the Supreme Court of New Jersey adopted a modified form of the business judgment rule, and held that if a demand was made, the burden was initially on the board to demonstrate the board acted independently, in good faith and with due care in their investigation, and reasonably under the business judgment rule. If a demand was not made, the burden shifted to the litigant, to establish reasonable doubt that either the directors are disinterested and independent, or the challenged transaction was otherwise the product of a valid exercise of business judgment. The court did not at any point state New Jersey had a strong public policy concern in requiring demands to be made of Boards. To the contrary, the procedural and evidentiary framework established by the court in PSE&G is the

---

[1] Pleading requirements regarding derivative shareholder litigation previously found at Rule 4:32-5 are now found at Rule 4:32-3.

6

product of "an appropriate balance between director autonomy and the interests of the shareholders in this context." PSE&G, 173 N.J. at 310.  The court continued, "More broadly, we are satisfied that the demand-futility doctrine and the modified business judgment rule each serve a discrete but critical function. . . The practical reality is that in many cases a shareholder will want to make a demand on the board to avoid the burden of demonstrating demand-futility. Given the salutary purposes of the demand requirement, that practical reality convinces us that our approach is proper.  It preserves the most useful elements of Rule 4:32-5 while advancing an overarching standard to guide judicial review." Id. at 313.

The policy interests that have been recognized as creating "special equities" are those that concern "significant state interests...[which] are implicated" such as: the remediation of polluted site, Sensient, supra, 193 N.J. at 387; parental rights in child custody cases, Innes v. Carrascosa, 391 N.J. Super. 453, 492-94 (App. Div.) certif. denied, 192 N.J. 73 (2007); Van Haren v. Van Haren, 171 N.J. Super. 12 (App. Div. 1979), and determinations of mental incapacity, In re Glasser, 2006 WL 510096 (N.J. Ch. 2006) (New Jersey public policy strongly favors adjudicating incapacity issues in the state of domicile).  In short, the public policy concerns previously found to constitute "special equities" all involve situations in which New Jersey courts are presumed best able to judge how to apply New Jersey law.  The following cases illustrate some of the policy arguments made by parties which New Jersey Courts have rejected.  In Karzhevsky v. Loving Care Agency, Inc., 2010 N.J. Super. Unpub. LEXIS 88 (App.Div. Jan. 14, 2010) the Appellate Court was not convinced by Plaintiffs' argument that the trial court erred by dismissing their complaint on comity grounds because New Jersey has a strong public policy in enforcing the LAD. The Court did not find that New York is any less committed than New Jersey to addressing unlawful discrimination in employment on the basis of national origin and religion.  Id. at *15-16.  Furthermore, in Continental Ins. Co. v. Honeywell Intern., Inc., 406 N.J. Super. 156, 193 (App. Div. 2009) looking at the special equities the Court noted that "it is New Jersey's interest in the health and safety of its citizens and the remediation of property within its boundaries." Id. citing to Sensient, supra, 193 N.J. at 394; Century Indem. Co., 398 N.J. Super. at 437.

At oral argument, Plaintiff's counsel cited Ryan v. Gifford, 918 A.2d 341 (Del. Ch. 2007), a Delaware chancery case in which the court declined to stay the Delaware action pending the outcome of several similar actions filed in U.S. District Court in California.  That case is easily distinguishable.  In that case, which involved claims against board members and executives for breach of fiduciary duty for backdating stock options, the Delaware Court retained jurisdiction and allowed the case to proceed because the issue was one of first impression, and the court held it was too important to allow another forum to interpret Delaware law where the Delaware courts themselves had not ruled on the issue.  There is no such claim in this case, and Plaintiffs do not argue that the issues before the federal court in the first-filed action constitute uncharted legal

7

waters that require a New Jersey court to interpret the issue.  Plaintiffs in the first-filed case undoubtedly weighed the merits of making a demand versus filing their complaint without a demand, and elected to take the risk that they could establish demand futility.  There is no strong New Jersey public policy concern regarding demand letters requiring this court to retain jurisdiction.  The Supreme Court (not the Legislature) has spoken on the issue, and established different burdens of proof in different scenarios regarding demands on the board in derivative actions.  The Court left plaintiffs with a tactical choice, and the first-filed plaintiffs have elected to proceed without a demand.

Third, Plaintiffs have not shown that this action has progressed further than the first-filed federal action.  Plaintiffs' argument that this case, like previous Vioxx litigation against Merck, could quickly "catch-up" to the first-filed demand futility action because the discovery has already been checked for privilege, bates-stamped, sorted, and electronically stored, is unconvincing.  Plaintiffs further argue production of that discovery would then allow this case to race ahead of the first-filed litigation, which is "bogged down" by motion practice concerning the futility of the demand.  This argument is also not convincing.  To the contrary, the end of fact-discovery in the first-filed case is drawing near.  More than 11 million pages of discovery have already been produced, and dozens of depositions have been taken.  This case is just getting started.  The first-filed case is years ahead of this case, and Plaintiffs' arguments to the contrary are speculative at best.

Finally, Plaintiffs have not shown or argued that the first-filed federal actions are in an inconvenient forum, which could be grounds to overcome the presumption of the first-filed rule as a special equity.  This line of argument would not apply in this case, because the first-filed case before Judge Cavanaugh and the second-filed case before this court are both venued in New Jersey.

## CONCLUSION

The parties, causes of action, and underlying facts are substantially the same in this case and Cain v. Hassan, pending before the U.S. District Court for the District of New Jersey.  A presumption is triggered in favor of staying or dismissing this case.  There are no special equities present to rebut or overcome the presumption.  The case is dismissed without prejudice, subject to revival upon application by the Plaintiff and pending the outcome in U.S. District Court for the District of New Jersey.

**HARTMAN & WINNICKI, P.C.**
Daniel L. Schmutter, Esq. 049381991
74 Passaic Street
Ridgewood, New Jersey 07450
Phone: (201) 967-8040
Fax:     (201) 967-0590
Attorneys for Defendants
Defense Distributed and Cody R. Wilson

| | |
|---|---|
| GURBIR S. GREWAL, Attorney General of the State of New Jersey,<br><br>                        Plaintiff,<br><br>v.<br><br>DEFENSE DISTRIBUTED, CODY R. WILSON, et al.<br><br>                        Defendants. | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION: ESSEX COUNTY<br><br>DOCKET NO.: ESX-C-131-18<br><br>Civil Action<br><br>**CERTIFICATION OF JOSH BLACKMAN IN OPPOSITION TO TEMPORARY RESTRAINTS AND IN SUPPORT OF CROSS-MOTION FOR STAY** |

I, Josh Blackman, hereby certify as follows:

      1.     I am counsel for Defendants. As such, I have personal knowledge of the facts set forth herein. I make this Certification in opposition to Plaintiff's application for temporary restraints and in support of the cross-motion to stay this matter.

      2.     On July 26, 2018, Defendant Grewal sent a letter to Defense Distributed's headquarters in Austin, Texas. (*See* **Exhibit A,** attached hereto.)

      3.     The letter "directed [Defendants] to cease and desist from publishing printable-gun computer files for use by New Jersey residents."

      4.     Grewal asserted that publishing these files would violate New Jersey's "public nuisance laws."

      5.     Grewal's letter closed with a clear and present threat: "Should you fail to comply with this letter, my Office will initiate legal action barring you from publishing these files before August 1, 2018."

6.      In a press release, Grewal explicitly reiterated that threat: "Attorney General Grewal threatened Defense Distributed with 'legal action' if it fails to comply with his demand." Grewal also expressed his belief that "[p]osting this material online is no different than driving to New Jersey and handing out hard-copy files on any street corner." (*See* **Exhibit B** attached hereto.)

7.      On July 27, 2018, Defendants responded to Grewal. (*See* **Exhibit C** attached hereto). Defendants explained that the "Letter takes only vague and general positions regarding nuisance and negligence law." Defendants also explained that "all actions contemplated by Defense Distributed are fully protected by the First Amendment, and [Grewal's] attempts to prevent such actions constitute an unconstitutional prior restraint and otherwise violate the United States Constitution and the New Jersey Constitution." Defendants added that "the Letter constitutes an unlawful threat, in violation of Defense Distributed's Constitutional rights," and "demand[ed] that [the Defendant] withdraw the Letter."

8.      Defendants conveyed to the Grewal that "at this time Defense Distributed will attempt to restrict files made available on the internet to prevent download within New Jersey." Defendants stated that "this [modification] should not be construed as an acknowledgment of the validity of your position, and Defense Distributed reserves all of its rights in this regard."

9.      Also on July 27, 2018, pursuant to its exclusive authority under the Arms Export Control Act, 22 U.S.C. § 2751 *et seq.*, and the settlement in  the United States Department of State issued a license expressly authorizing the publication of the files that are now the subject of this lawsuit.  (*See* **Exhibit D**, attached hereto.)

10.     On Sunday, July 29, 2018, Defense Distributed filed a federal civil rights

action against Attorney General Grewal in the Western District of Texas. *See* Defense Distributed and Second Amendment Foundation v. Gurbir S. Grewal and Michael Feuer, 1:18-cv-637 (W.D.Tx. Jul. 29, 2018), **Exhibit E**, attached hereto.

11.    Defense Distributed made the following claims: "The Defendants' threatened legal actions violate the First Amendment speech rights of Defense Distributed and its audience, including SAF's members; run afoul of the Dormant Commerce Clause; infringe upon the Second Amendment rights of those who would make use of the knowledge disseminated by Defense Distributed; constitute a tortious interference with Defense Distributed's business; and are in any event, federally pre-empted by Congress's export control laws as well as Defense Distributed's export license, by which the State Department has explicitly authorized the speech that the Defendants are seeking to silence. Plaintiffs are entitled to declaratory and injunctive relief, damages, and attorney fees."

12.    These claims duplicate the question present in this Court: whether state tort claims are preempted by the federal Constitution, and federal export control law.

13.    On Monday, July 30, 2018, Plaintiff Grewal filed the instant action.

14.    Several hours after he filed suit in this Court, the Attorney General joined eight other states to sue Defense Distributed in federal court in Washington. (*See* **Exhibit F**, attached hereto.) That case raises different legal questions, but seeks the same remedy: force Defense Distributed to stop sharing files on the internet. This Court has scheduled a hearing at 1:30 ET. The Western District of Washington will schedule a hearing at some point later in the day. The Attorney General actually wants to litigate in two different forums simultaneously in order to see where he gets the best relief.

15.    I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to

punishment.

DATED: July 31, 2018

# EXHIBIT "A"

# EXHIBIT "A"



### *State of New Jersey*

PHILIP D. MURPHY
*Governor*

SHEILA Y. OLIVER
*Lt. Governor*

OFFICE OF THE ATTORNEY GENERAL
DEPARTMENT OF LAW AND PUBLIC SAFETY
DIVISION OF LAW
PO Box 080
TRENTON, NJ 08625-0080

GURBIR S. GREWAL
*Attorney General*

Defense Distributed
2320 Donley Dr., Suite C
Austin, TX 78758

July 26, 2018

To Whom It May Concern:

You are directed to cease and desist from publishing printable-gun computer files for use by New Jersey residents. The files you plan to publish offer individuals, including criminals, codes that they can use to create untraceable firearms—and even to make assault weapons that are illegal in my state. These computer codes are a threat to public safety, and posting them violates New Jersey's public nuisance and negligence laws. If you do not halt your efforts to proceed with publication, I will bring legal action against your company before August 1, 2018.

The computer files that you plan to publish will undermine the public safety of New Jersey residents. These files allow anyone with a 3-D printer to download your code and create a fully operational gun. More than that, the codes you plan to post will enable individuals to print assault weapons that are illegal in New Jersey. And because the printed guns would not have serial numbers, they would not be traceable by law enforcement. Worst of all, you are going to make the codes available to everyone—regardless of age, criminal status, or history of mental illness. That would undermine New Jersey's comprehensive scheme for keeping guns out of dangerous criminals' hands, and it would undermine the safety of our residents.

Not only are your codes dangerous, but posting them would also be illegal. New Jersey's law is clear: an individual who interferes with public health, safety, peace, and comfort violates our public nuisance law. *See James v. Arms Tech., Inc.*, 359 N.J. Super. 291, 329-33 (App. Div. 2003). As New Jersey courts have held, "[n]o one can seriously debate" that regulated guns are "dangerous instrumentalities" and thus implicate our public nuisance law. *Id.* at 320. So when a group of manufacturers "flood[ed] the gun market" through a high volume of sales, while failing to develop "reasonable safeguards over the distribution scheme" and "refus[ing] to oversee or supervise the control of handgun distribution in order to prevent the foreseeable channeling of guns to such an illegal market," New Jersey courts found they could be held responsible when their actions "facilitate[d] the illegal sale of weapons to criminals and other unlawful users." *Id.* at 312. That is what your actions will do as well—make do-it-yourself guns available to anyone, even if the individuals are prohibited from owning guns because of prior convictions, history of mental illness, or history of domestic violence, even if the weapons they print are illegal in my



Hughes Justice Complex • TELEPHONE: (609) 292-4925 • FAX: (609) 292-3508
*New Jersey Is An Equal Opportunity Employer • Printed on Recycled Paper and Recyclable*

July 26, 2018
Page 2

state, and even if they plan to use their weapons to further crimes and acts of violence. Because your actions will flood the illegal firearms market and pose a direct threat to the public safety of my state, they constitute a public nuisance.

Worse still, your comments make clear that you hope your actions will undermine all the efforts of states like New Jersey to keep guns out of criminals' hands. You have stated, "All this Parkland stuff, the students, all these dreams of 'common sense gun reforms'? No. The internet will serve guns, the gun is downloadable."[1] You have also stated, "I'm not worried about public safety."[2] And on July 10, 2018, you tweeted a photo of a gravestone engraved with the words "American Gun Reform."[3] These comments show that you have no intention of precluding your printable-gun computer files, including designs for assault weapons, from winding up in the hands of criminals, minors, and the mentally ill. Not only does that reveal a lack of regard for safety, but it also shows that your interference with the public's health and safety is intentional and per se unreasonable. *James*, 359 N.J. Super. at 330.

Finally, your widespread dissemination of printable-gun computer files is negligent because it encourages an illegal gun market, which will foreseeably lead to increased crime and violence in New Jersey, and which will lead to an increase in expenditures of public funds for combatting crime and protecting our resident's health. *See id.* at 308-24 (finding a legally valid negligence claim against same manufacturers of guns that flooded the illegal market). Your planned method of making codes available and your public comments show that you are ignoring and violating your duty. By broadly sharing an inherently dangerous product, you should reasonably foresee the resulting governmental and public costs and must bear them. *Id.* at 323-24.

As the chief law enforcement officer for New Jersey, I demand that you halt publication of the printable-gun computer files. Should you fail to comply with this letter, my Office will initiate legal action barring you from publishing these files before August 1, 2018.

Sincerely,

Gurbir S. Grewal
Attorney General

---

[1] Andy Greenberg, "A Landmark Legal Shift Opens Pandora's Box for DIY Guns," Wired (July 10, 2018), available at https://www.wired.com/story/a-landmark-legal-shift-opens-pandoras-box-for-diy-guns/.

[2] Tess Owen, "Get Ready for the New Era of 3D-Printed Guns Starting August 1," Vice News (July 18, 2018), available at https://news.vice.com/en_us/article/ev8xjn/get-ready-for-the-new-era-of-3d-printed-guns-starting-august-1.

[3] Cody R. Wilson (@Radomysisky), Twitter (July 10, 2018, 12:25 P.M.), https://twitter.com/Radomysisky/status/1016765282017337344.

EXHIBIT "B"

EXHIBIT "B"

THE STATE OF NEW JERSEY
DEPARTMENT OF LAW & PUBLIC SAFETY
OFFICE OF THE ATTORNEY GENERAL

Search

NJHome | Services A to Z | Departments/Agencies | FAQs

OAG Services from A - Z

Servicios en Español

OAG Contact    News Release



Gurbir S. Grewal
Attorney General

AG's Executive Leadership Team

AG's Message · Ask the AG

**For Immediate Release:**
July 26 2018

**Office of The Attorney General**
- Gurbir S. Grewal, Attorney General

**For Further Information:**
Media Inquiries-
Lee Moore
609-292-4791

Citizen Inquiries-
609-984-5828

Contact OAG · About OAG

OAG News · OAG FAQs

OAG Library · Employment

OAG Grants · Proposed Rules

OAG History · Services A-Z

Statutes / Regulations / Rules

Agencies / Programs / Units

**Other News Pages**

Governor's Office

Child Notices en Español (OAG)

Civil Rights (Division on)

Consumer Affairs (Division of)

Criminal Justice (Division of)

Election Law Enforcement Comm

Gaming Enforcement (Div. of)

Highway Traffic Safety (Division of)

Insurance Fraud Prosecutor (Office of)

Juvenile Justice Commission

State Police (Division of NJ)

Law (Division of)

## AG Grewal Demands That Gun Developer Halt Plans to Publish Printable-Gun Computer Files; Threatens Imminent Legal Action
### Citing Threat to Public Safety, AG Warns of Lawsuit Before August 1

View Cease and Desist Letter

**TRENTON** – Acting to protect New Jersey residents from an emerging threat to public safety, Attorney General Gurbir S. Grewal today sent a "cease and desist" letter to a firearm developer that plans to publicly release computer files on August 1 that would enable individuals to create firearms using a 3-D printer.

"You are directed to cease and desist from publishing printable-gun computer files for use by New Jersey residents," Attorney General Grewal warned Texas-based Defense Distributed in today's letter. "The files you plan to publish offer individuals, including criminals, codes that they can use to create untraceable firearms—and even to make assault weapons that are illegal in my state."

Citing New Jersey's public nuisance law and prior court decisions that have upheld claims against gun manufacturers for similar reckless actions, Attorney General Grewal threatened Defense Distributed with "legal action" if it fails to comply with his demand to halt its planned publishing of printable-gun computer files starting next week.

"Defense Distributed's plans to allow anyone with a 3-D printer to download a code and create a fully operational gun directly threatens the public safety of New Jersey's residents, " Attorney General Grewal stated. "Posting this material online is no different than driving to New Jersey and handing out hard-copy files on any street corner. The federal government is no longer willing to stop Defense Distributed from publishing this dangerous code, and so New Jersey must step up."

Defense Distributed plans to "make do-it-yourself guns available to anyone, even if the individuals are prohibited from owning guns because of prior convictions, history of mental illness, or history of domestic violence, even if the weapons they print are illegal in my state, and even if they plan to use their weapons to further crimes and acts of violence," added Attorney General Grewal. "Not only are these plans to publish printable-gun files dangerous, they also violate New Jersey law."

Defense Distributed made national headlines by developing gun computer files that enable consumers to create fully operational firearms with a 3-D printer. The company's founder, Cody Wilson, developed a printable plastic pistol known as the "Liberator .380" in 2012 and put the plans online, but was blocked by the federal government. Wilson

sued, and under a settlement he reached with the U.S. State Department, his company is free to begin releasing computer files for printable guns beginning on August 1.

In his cease-and-desist letter, Attorney General Grewal warns Defense Distributed that its actions will "flood the illegal firearms market and pose a direct threat to the public safety of my state." He also takes the company to task for striving to make do-it-yourself guns readily available to people deemed unfit to have them. "By broadly sharing an inherently dangerous product," the letter adds, Defense Distributed "should reasonably foresee the resulting governmental and public costs and must bear them."

The letter also highlights that Cody Wilson has "no intention of precluding [these] printable-gun computer files, including designs for assault weapons, from winding up in the hands of criminals, minors, and the mentally ill." Wilson has publicly stated, ""All this Parkland stuff, the students, all these dreams of 'common sense gun reforms'? No. The internet will serve guns, the gun is downloadable." He has even announced, "I'm not worried about public safety." As a result, the letter notes, his "interference with the public's health and safety is intentional and per se unreasonable."

"As the chief law enforcement officer for New Jersey, I demand that you halt publication of the printable gun computer files," Attorney General Grewal concludes. "Should you fail to comply with this letter, my Office will initiate legal action barring you from publishing these files before August 1, 2018."

Follow the New Jersey Attorney General's Office online at Twitter, Facebook, Instagram, Flicker & YouTube. The social media links provided are for reference only. The New Jersey Attorney General's Office does not endorse any non-governmental websites, companies or applications.

#### ####

News Index Page | top

Contact Us | Privacy Notice | Legal Statement | Accessibility Statement  
Departmental: OAG Home | Contact OAG | About OAG | OAG News | OAG FAQs
Statewide: NJ Home | Services A to Z | Departments/Agencies | FAQs
Copyright © State of New Jersey
This page is maintained by OAG Communications. Comments/Questions: email or call 609-292-4925

# EXHIBIT "C"

# EXHIBIT "C"

LAW OFFICES

# HARTMAN & WINNICKI, P.C.

Dariusz M. Winnicki *°
Brian T. Keane ◊°
Richard L. Ravin *°☐
Daniel L. Schmutter*
Andrew T. Wolfe ◊
Samantha N. Polizzi◊
Steven B. Gladis◊×

74 PASSAIC STREET
RIDGEWOOD, NEW JERSEY 07450

* * *

WEBSITE
www.hartmanwinnicki.com

Phone: (201) 967-8040
Fax:    (201) 967-0590

Porter E. Hartman (1920-2009)
Charles R. Buhrman (1938-1994)
William T. Marsden (1943-1993)
Cyrus D. Samuelson (1911-1998)

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
* New York and New Jersey Bars
* Florida Bar
☐ Washington, D.C. Bar
◊ New Jersey Bar
× Pennsylvania Bar

July 27, 2018

**Via FAX 609-292-3508**
Gurbir S. Grewal
Attorney General of New Jersey
Office of the Attorney General
P.O. Box 080
Trenton, NJ 08625

Re:    **Defense Distributed**

Dear Attorney General Grewal:

We represent Defense Distributed in connection with your letter dated July 26, 2018, in which you make various demands regarding making certain computer files available to the public on the internet (the "Letter").

First, please be advised that Defense Distributed rejects your contention that any action contemplated by Defense Distributed violates or will violate New Jersey law. The Letter takes only vague and general positions regarding nuisance and negligence law. Nothing in the Letter supports your position.

Second, please be advised that all actions contemplated by Defense Distributed are fully protected by the First Amendment, and your attempts to prevent such action constitute an unconstitutional prior restraint and otherwise violate the United States Constitution and New Jersey Constitution.

Third, the Letter constitutes an unlawful threat, in violation of Defense Distributed's Constitutional rights, and Defense Distributed reserves its rights under 18 U.S.C. §1983, 18 U.S.C. §242, and N.J.S. 10:6-2, and demands that you withdraw the Letter.

Notwithstanding the foregoing, at this time Defense Distributed will attempt to restrict files made available on the internet to prevent download within New Jersey. This should not be construed as an acknowledgment of the validity of your position, and Defense Distributed reserves all of its rights in this regard.

Very truly yours,

DANIEL L. SCHMUTTER

DLS/srs
cc:    Evan Nappen, Esq, (via email)
       Defense Distributed (via email)

# EXHIBIT "D"

# EXHIBIT "D"



**United States Department of State**
*Bureau of Political-Military Affairs*
*Directorate of Defense Trade Controls*
*Washington, D.C. 20522-0112*

July 27, 2018

Mr. Cody R. Wilson, Defense Distributed, and Second Amendment Foundation, Inc.
c/o Mr. Matthew A. Goldstein
Snell & Wilmer
One South Church Avenue
Suite 1500
Tucson, AZ 85701-1630

RE:   Directorate of Defense Trade Controls Approval of Certain Files for Public Release

Dear Mr. Wilson, Defense Distributed, and Second Amendment Foundation, Inc.:

This letter is provided in accordance with section 1(c) of the Settlement Agreement in the matter of *Defense Distributed, et al., v. U.S. Department of State, et al.,* No. 15-cv-372-RP (W.D. Tx.) (hereinafter referred to as "*Defense Distributed*"). As used in this letter,

- The phrase "Published Files" means the files described in paragraph 25 of Plaintiffs' Second Amended Complaint in *Defense Distributed*.
- The phrase "Ghost Gunner Files" means the files described in paragraph 36 of Plaintiffs' Second Amended Complaint in *Defense Distributed*.
- The phrase "CAD Files" means the files described in paragraph 40 of Plaintiffs' Second Amended Complaint in *Defense Distributed*.

The Department understands that Defense Distributed submitted the Published Files, Ghost Gunner Files, and CAD Files to the Department of Defense's Defense Office of Prepublication and Security Review (DOPSR) in 2014 to request review for approval for public release pursuant to International Traffic in Arms Regulations (ITAR) § 125.4(b)(13). It is our further understanding that DOPSR did not make a determination on the eligibility of these files for release, but instead referred you to the Directorate of Defense Trade Controls (DDTC) regarding public release of these files.

1

I advise you that for the purposes of ITAR § 125.4(b)(13), the Department of State is a cognizant U.S. government department or agency, and DDTC has authority to issue the requisite approval for public release. To that end, I approve the Published Files, Ghost Gunner Files, and CAD Files for public release (i.e., unlimited distribution). As set forth in ITAR § 125.4(b)(13), technical data approved for public release by the cognizant U.S. government department or agency is not subject to the licensing requirements of the ITAR.

Sincerely,

Acting Deputy Assistant Secretary for the
Directorate of Defense Trade Controls

# EXHIBIT "E"

# EXHIBIT "E"

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEFENSE DISTRIBUTED and SECOND AMENDMENT FOUNDATION, | § § § | Case No. 1:18-CV-637 |
| Plaintiffs, | § § | COMPLAINT |
| v. | § § | |
| GURBIR S. GREWAL, individually, and in his official capacity as Attorney General of New Jersey; MICHAEL FEUER, individually, and in his official capacity as Los Angeles City Attorney, | § § § § § | |
| Defendants. | § § § | |

## COMPLAINT

Plaintiffs Defense Distributed and Second Amendment Foundation, Inc., by and through undersigned counsel, complain of Defendants as follows:

## INTRODUCTION

Pursuant to a license and other authorization from the State Department, Defense Distributed has published and will continue to publish Computer-Aided Design (CAD) and Computer-Numeric Control (CNC) files on its Internet servers in furtherance of its mission to promote firearms knowledge and possession. The Second Amendment Foundation's members and supporters are among Defense Distributed's audience. New Jersey's Attorney General (Gurbir S. Grewal) and Los Angeles's City Attorney (Michael Feuer), have waged an ideologically-fueled program of intimidation and harassment against Defense Distributed. Grewal and Feuer have

1

threatened and intend to drag Defense Distributed before all manner of far-flung criminal and civil tribunals in an effort to silence the organization.

Alas these state and municipal officers from across the country cannot veto Defense Distributed's constitutionally-protected and federally-licensed speech. The Defendants' threatened legal actions violate the First Amendment speech rights of Defense Distributed and its audience, including SAF's members; run afoul of the Dormant Commerce Clause; infringe upon the Second Amendment rights of those who would make use of the knowledge disseminated by Defense Distributed; constitute a tortious interference with Defense Distributed's business; and are in any event, federally pre-empted by Congress's export control laws as well as Defense Distributed's export license, by which the State Department has explicitly authorized the speech that the Defendants are seeking to silence. Plaintiffs are entitled to declaratory and injunctive relief, damages, and attorney fees.

### The Parties

1.      Plaintiff Defense Distributed is a Texas corporation organized under the laws of the State of Texas, whose headquarters are located in Austin, Texas, and whose principal place of business is located in Austin, Texas. Defense Distributed was organized and is operated for the purpose of defending the civil liberty of popular access to arms guaranteed by the United States Constitution through facilitating access to, and the collaborative production of, information and knowledge related to the production of arms; and to publish and distribute, at no cost to the public, such information and knowledge on the Internet in promotion of the public interest.

2.      Consistent with the President's role as Commander and Chief, and the delegation of Congress's powers under the Commerce and Necessary and Proper Clauses, Congress has

conferred the President with the exclusive authority to issue licenses and other forms of authorizations for the export of technical data on firearms controlled under the Arms Export Control Act ("AECA"), 22 U.S.C. § 2751 et seq. The President has delegated this authority to the State Department. Executive Order 13637 of March 8, 2013.

3.      Pursuant to its exclusive authority under the AECA, the State Department issued a license expressly authorizing the Plaintiffs to publish certain firearms files for "unlimited distribution" pursuant to ITAR § 125.4(b)(13). *See* Exhibit A.

4.      Further pursuant to its exclusive authority under the AECA, the State Department issued an authorization under ITAR § 126.2 to allow every U.S. person to access, discuss, use, reproduce or otherwise benefit from technical data for the development, production, and/or use of firearms. *See* Exhibit B.

5.      Plaintiff Second Amendment Foundation, Inc., is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF has over 650,000 members and supporters nationwide, including members in Texas, New Jersey, and Los Angeles. The purposes of SAF include promoting the exercise of the right to keep and bear arms; and education, research, publishing and legal action focusing on the constitutional right to privately own and possess firearms, and the consequences of gun control. SAF brings this action on behalf of its members. Cody Wilson, Defense Distributed's principal, is a SAF member. SAF members seek to download the files shared by Defense Distributed, as well as use Defense Distributed's facilities to share their own files with others

6.      Defendant Gurbir S. Grewal is the Attorney General of New Jersey. He is sued in his official and individual capacities.

7.     Defendant Michael Feuer is the City Attorney for Los Angeles, California. He is sued in his official and individual capacities.

JURISDICTION AND VENUE

8.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 1367, 2201, and 2202.

9.     Plaintiff Defense Distributed resides within the jurisdiction of the U.S. District Court.

10.     Venue lies in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred, and a substantial part of property that is the subject of the action, are situated within the Western District of Texas.

11.     This action involves actions taken by Defendants in New Jersey and Los Angeles with respect to the Plaintiffs' business, activities, and property in Austin. Therefore, venue lies in this Court pursuant to 28 U.S.C. § 1391(b)(3), because there is no district in which this action may otherwise be brought, and both Defendants are subject to this Court's personal jurisdiction.

*Defendants' Threats of Legal Actions Against Defense Distributed*

12.     On July 26, 2018, Defendant Grewal sent a letter to Defense Distributed's headquarters in Austin, Texas.

13.     The letter "directed [Plaintiff] to cease and desist from publishing printable-gun computer files for use by New Jersey residents." *See* Exhibit C.

14.     Grewal asserted that publishing these files would violate New Jersey's "public nuisance laws." *Id.*

15.     Grewal's letter closed with a clear and present threat: "Should you fail to comply

4

with this letter, my Office will initiate legal action barring you from publishing these files before August 1, 2018." *Id.*

16.    In a press release, Grewal explicitly reiterated that threat: "Attorney General Grewal threatened Defense Distributed with 'legal action' if it fails to comply with his demand." Grewal also expressed his belief that "[p]osting this material online is no different than driving to New Jersey and handing out hard-copy files on any street corner." *See* Exhibit D.

17.    On July 27, 2018, Defendant Feuer caused to be filed in this Court, in the case of *Defense Distributed v. U.S. Dep't of State*, No. 1:15-CV-372-RP, a letter addressed to the Hon. Robert Pitman, who was then presiding over that case. *See* Exhibit E.

18.    The letter, at Dkt. 109-1, expressed Feuer's belief that Defense Distributed's publication of files "would pose a direct and immediate threat to public safety in the City of Los Angeles, and cause numerous violations of California and City laws designed to protect the public from gun violence." *Id.*

19.    Feuer noted that "[as] the City's chief lawyer and prosecutor, it is [his] job to enforce the gun laws of the City and California." *Id.*

20.    Feuer added that "Defense Distributed's blueprints" may violate California civil and criminal laws. *Id.*

21.    Feuer threatened Defense Distributed with legal action: "his office is authorized to file lawsuits to 'enjoin' the manufacture, importation, or possession of an undetectable firearm." *Id.*

22.    Feuer expressed his intent to seek to intervene in that case, for the express purpose of silencing Defense Distributed. *Id.*

23.    To convey this message, at least two of Feuer's attorneys appeared telephonically

during an emergency hearing before Judge Pitman. (At that juncture, the City of Los Angeles was not yet a party to the case, nor had it even filed a motion to intervene.)

24.     On July 28, 2019, Feuer released the following tweet from the @CityAttorneyLA Account: "City Atty Mike Feuer & @ManhattanDA Cyrus Vance, Jr. to @StateDept: NO #DIY #guns! #gunviolence #GunControl #gunsense ▓▓▓https://goo.gl/L377y3 @ProsecutorsAGV." *See* Exhibit F.

25.     That tweet linked to a press release from the Prosecutors Against Gun Violence, which is chaired by the Los Angeles City Attorney and the Manhattan District Attorney.  It stated that Defense Distributed's "blueprints should not be published under any circumstances." *See* Exhibit G.

26.     On information and belief, Plaintiffs anticipate further legal actions from the Manhattan District Attorney.

*Plaintiff Responds to Defendant Grewal*

27.     On July 27, 2018, Plaintiff responded to Grewal. *See* Exhibit H. Plaintiff explained that the "Letter takes only vague and general positions regarding nuisance and negligence law." Plaintiff also explained that "all actions contemplated by Defense Distributed are fully protected by the First Amendment, and [Grewal's] attempts to prevent such actions constitute an unconstitutional prior restraint and otherwise violate the United States Constitution and the New Jersey Constitution." Plaintiff added that "the Letter constitutes an unlawful threat, in violation of Defense Distributed's Constitutional rights," and "demand[ed] that [the Defendant] withdraw the Letter."

28.     Plaintiff conveyed to the Grewal that "at this time Defense Distribute will attempt to restrict files made available on the internet to prevent download within New Jersey." Plaintiff

stated that "this [modification] should not be construed as an acknowledgment of the validity of your position, and Defense Distributed reserves all of its rights in this regard."

*Great, Irreparable, and Continuing Harm*

29.    But for Defendant Grewal's letter, Defense Distributed would freely distribute the files in New Jersey. However, Defense Distributed has taken steps to prevent the distribution of files in New Jersey because Defense Distributed reasonably fears that Defendant Grewal would pursue civil enforcement proceedings against Plaintiff. *See* Exhibit H. Users with New Jersey-based IP Addresses are currently blocked from accessing the files. *See* Exhibit I. [1]

30.    But for Defendant Feuer's letter, Defense Distributed would freely distribute the files in Los Angeles. However, Defense Distributed has already taken steps to prevent the distribution of files in Los Angeles because Defense Distributed reasonably fears that Defendant Feuer would pursue civil and t enforcement proceedings against Plaintiff. Users with Los Angeles-based IP Addresses are currently blocked from accessing the files. *See* Exhibit I.

31.    Notwithstanding its efforts to placate the Defendants, a legitimate controversy exists between Defense Distributed, and Defendants Grewal and Feuer, as to the legality of Defense Distributed's conduct. Defense Distributed can reasonably expect a continuing campaign of harassment and intimidation aimed at silencing it and tortiously interfering with its business.

32.    Defense Distributed is entitled to appropriate declaratory and injunctive relief against all further acts of harassment and intimidation by Grewal, Feuer, and all others who may act in concert with them.

COUNT ONE

---

[1] Defense Distributed also blocked access to the files from IP addresses based in the following foreign countries: Islamic Republic of Iran, Belarus, Myanmar (Burma), Burundi, Cote d'Ivoire, Cuba, The Democratic Republic of the Congo, Iraq, Lebanon, Liberia, Libyan Arab Jamahiriya, Democratic People's Republic of Korea, Somalia, Sudan, Syrian Arab Republic, Yemen, and Zimbabwe.

42 U.S.C. § 1983

RIGHT OF FREE SPEECH—U.S. CONST. AMEND. I

33.    Defendants' threats of legal actions are invalid on their face, and as applied to
Plaintiffs' public speech, are an unconstitutional prior restraint on protected expression. *Bantam
Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963).

34.    Defendants' interruption and prevention of Plaintiffs from publishing the subject
files, under color of law, violates Plaintiffs' rights under the First Amendment to the United States
Constitution, by virtue of the Fourteenth Amendment, causing Plaintiffs, their customers, visitors
and members significant damages, in violation of 42 U.S.C. § 1983.

35.    Plaintiffs are therefore entitled to declaratory and injunctive relief, and an award of
damages and attorney fees, against Defendants.


COUNT TWO

42 U.S.C. § 1983

"DORMANT" COMMERCE CLAUSE, U.S. CONST. ART. I, § 8

36.    The threatened legal actions would not only require Plaintiffs to cease sharing files
on its Texas-based servers within New Jersey and Los Angeles, respectively, but would also
prohibit Plaintiffs from sharing the files within Texas, and other states.

37.    The Supreme Court has recognized that the "Commerce Clause . . . precludes the
application of a state statute to commerce that takes place wholly outside of the State's borders,
whether or not the commerce has effects within the State." *Healy v. Beer Inst., Inc.*, 491 U.S. 324,
336 (1989).

38.    Through the threatened legal actions, New Jersey and Los Angeles "project[s] its

8

legislation" into other states, in violation of the "Dormant" Commerce Clause. *See* Brown-Forman Distillers Corp. v. New York State Liquor Auth., 476 U.S. 573, 583 (1986). *See also Am. Booksellers Found. v. Dean*, 342 F.3d 96, 103–04 (2nd Cir. 2003); *Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1025 (E.D. Cal. 2017); *Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 958–59 (N.D. Cal. 2006).

39.     Defendants' interruption and prevention of Plaintiffs from publishing the subject files on its Texas-based servers, under color of law, violates the Plaintiffs rights to freely participate in intrastate and interstate commerce under the "Dormant" Commerce Clause, U.S. Const. art. I, § 8.

40.     Defendants' actions have caused Plaintiffs, their customers, visitors and members significant damages, in violation of 42 U.S.C. § 1983. *See Dennis v. Higgins*, 498 U.S. 439 (1991).

41.     Plaintiffs are therefore entitled to declaratory and injunctive relief, and an award of damages and attorney fees, against Defendants.


COUNT THREE

42 U.S.C. § 1983

RIGHT TO KEEP AND BEAR ARMS—U.S. CONST. AMEND. II

42.     The fundamental Second Amendment right to keep and bear arms inherently embodies two complimentary guarantees: the right to acquire arms, and the right to make arms.

43.     If one cannot acquire or create arms, one cannot exercise Second Amendment rights. Infringing upon the creation and acquisition of arms of the kind in common use for traditional lawful purposes violates the Second Amendment, as applied to the states by virtue of the Fourteenth Amendment. *District of Columbia v. Heller*, 554 U.S. 570, 627 (2008); *McDonald*

*v. City of Chicago*, 561 U.S. 742 (2010).

44.     By forbidding Defense Distributed from distributing files that concern the lawful manufacture of firearms, Defendants are violating the Second Amendment rights of Plaintiffs, their customers, members, and visitors.

45.     Defendants' interruption and prevention of Plaintiffs from publishing the subject files, under color of law, violates Plaintiffs' rights under the Second Amendment to the United States Constitution, by virtue of the Fourteenth Amendment, causing Plaintiffs, their customers, visitors and members significant damages, in violation of 42 U.S.C. § 1983.

46.     Plaintiffs are therefore entitled to declaratory and injunctive relief, and an award of damages and attorney fees, against Defendants

COUNT FOUR

THE SUPREMACY CLAUSE, U.S. CONST. ART. VI, CL. 2

PRE-EMPTION BASED ON EXPORT LICENSE ISSUED BY THE STATE DEPARTMENT

47.     Consistent with the President's role as Commander and Chief, and the delegation of Congress's powers under the Commerce and Necessary and Proper Clauses, Congress has conferred the President with the exclusive authority to issue licenses and other forms of authorizations for the export of technical data on firearms controlled under the Arms Export Control Act ("AECA"), 22 U.S.C. § 2751 et seq. The President has delegated this authority to the State Department. Executive Order 13637 of March 8, 2013.

48.     Pursuant to its exclusive authority under the AECA, the State Department issued a license expressly authorizing the Plaintiffs to publish certain firearms files for "unlimited distribution" pursuant to ITAR § 125.4(b)(13). *See* Exhibit A.

49.     Further pursuant to its exclusive authority under the AECA, the State Department issued an authorization under ITAR § 126.2 to allow every U.S. person to access, discuss, use, reproduce or otherwise benefit from technical data for the development, production, and/or use of firearms. *See* Exhibit B.

50.     The Defendants' threatened legal actions conflict with the State Department's exclusive authority and seek to interfere with this federal licensing framework. *See* Exhibits C, D, and E.

51.     In a press release, Defendant Grewal expressly stated that he seeks to override the federal government's licensing framework: "The federal government is no longer willing to stop Defense Distributed from publishing this dangerous code, and so New Jersey must step up." *See* Exhibit D.

52.     New Jersey and Los Angeles can no more prohibit the operation of a federally licensed export framework than could Maryland prohibit the operation of a federally chartered bank. *See McCulloch v. Maryland*, 17 U.S. 316 (1819).

53.     The threatened legal actions are preempted based on Defense Distributed's Export License that was issued by the State Department.

54.     "[I]f an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted." *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015).

55.     Plaintiffs are therefore entitled to injunctive relief against Defendants' threat of legal actions that are pre-empted.

COUNT FIVE

THE SUPREMACY CLAUSE, U.S. CONST. ART. VI, CL. 2

11

EXPRESS PREEMPTION

56.     Through federal export control law, Congress has expressly preempted state law.

57.     Therefore, the threatened legal actions are expressly preempted by federal export control law. *See English v. General Elec. Co.*, 496 U.S. 72, 78-79 (1990).

58.     "[I]f an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted." *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015).

59.     Plaintiffs are therefore entitled to injunctive relief against Defendants' threat of legal actions that are pre-empted.


COUNT SIX

THE SUPREMACY CLAUSE, U.S. CONST. ART. VI, CL. 2

FIELD PREEMPTION

60.     Congress has occupied the entire field of export control law.

61.     Therefore, the threatened legal actions are preempted by field preemption. *See English v. General Elec. Co.*, 496 U.S. 72, 79 (1990).

62.     "[I]f an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted." *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015).

63.     Plaintiffs are therefore entitled to injunctive relief against Defendants' threat of legal actions that are pre-empted by federal export control law.


COUNT SEVEN

THE SUPREMACY CLAUSE, U.S. CONST. ART. VI, CL. 2

CONFLICT PREEMPTION

64.     The threatened legal actions would stand as an obstacle and would frustrate the accomplishment of objectives authorized by federal export control law. *See Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 375 (2000); *Nat'l Foreign Trade Council, Inc. v. Giannoulias*, 523 F. Supp. 2d 731, 738-742 (N.D. Ill. 2007).

65.     Therefore, the threatened legal actions are preempted by conflict preemption.

66.     "[I]f an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted." *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015).

67.     Plaintiffs are therefore entitled to injunctive relief against Defendants' threat of legal actions that are pre-empted by federal export control law.

COUNT EIGHT

TORTIOUS INTERFERENCE WITH CONTRACTS

68.     Defensed Distributed receives advertising revenue from its file-sharing system through contracts with third-parties.  In the past, these revenues have exceeded $75,000 per annum.

69.     Defendants willfully and intentionally sought to interfere with those contracts.

70.     Defense Distributed has taken steps to prevent the distribution of files in New Jersey and Los Angeles because Defense Distributed reasonably fears that Defendants Grewal and Feuer would pursue civil and criminal enforcement proceedings against Plaintiff for doing so.

71.     The willful and intentional actions of Defendants Grewal and Feuer have proximately and directly caused damages to Defense Distributed's contracts.

13

72.     The willful and intentional actions of Defendants Grewal and Feuer have resulted in actual damages.

73.     Defendants' conduct, as described in this complaint, constitutes tortious interference with contracts. *See ACS Inv'rs, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex.1997).

74.     Plaintiffs are therefore entitled to injunctive relief against Defendants' tortious interference with contracts.

## COUNT NINE

### TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTS

75.     There was a reasonable probability that Defense Distributed was to enter into contract(s) to do business with other third parties in New Jersey and Los Angeles.

76.     The threatened legal actions constitute a wrongful, deliberate, willful, intentional or otherwise tortious interference with prospective contracts in New Jersey and Los Angeles.

77.     Plaintiffs are therefore entitled to injunctive relief against Defendants' tortious interference with prospective contracts.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against Defendant as follows:

1.      A declaration, and injunctive relief, to prevent Defendants' threatened legal actions that violate the First Amendment to the United States Constitution;

2.      A declaration, and injunctive relief, to prevent Defendants' threatened legal actions

that violate the Dormant Commerce Clause;

     3.     A declaration, and injunctive relief, to prevent Defendants' threatened legal actions that violate the Second Amendment to the United States Constitution;

     4.     A declaration, and injunctive relief, to prevent Defendants' threatened legal actions that are preempted based on Defense Distributed's Export License that was issued by the State Department;

     5.     A declaration, and injunctive relief, to prevent Defendants' threatened legal actions that are expressly preempted by federal export control law;

     6.     A declaration, and injunctive relief, to prevent Defendants' threatened legal actions that are preempted by field preemption by federal export control law;

     7.     A declaration, and injunctive relief, to prevent Defendants' threatened legal actions that are preempted by conflict preemption by federal export control law;

     8.     A declaration, and injunctive relief, to prevent Defendants' threatened legal actions that tortiously interfere with contracts, and damages to be determined for Defendants' tortious interference with contracts;

     9.     A declaration, and injunctive relief, to prevent Defendants' threatened legal actions that tortiously interfere with prospective contracts, and damages to be determined for Defendants' tortious interference with prospective contracts;

     10.     Actual damages in an amount according to proof at trial;

     11.     Attorney fees and costs pursuant to 42 U.S.C. § 1988; and

     12.     Any other further relief as the Court deems just and appropriate.

The Plaintiffs hereby demand a jury trial.

Dated: July 29,  2018            Respectfully submitted,

*Alan Gura*                           */s/ Josh Blackman*
Virginia Bar No. 68842*          Virginia Bar No. 78292
Gura PLLC                      1303 San Jacinto Street
916 Prince Street, Suite 107      Houston, Texas 77002
Alexandria, Virginia 22314       202.294.9003/Fax: 713.646.1766
703.835.9085 / Fax 703.997.7665  Josh@JoshBlackman.com
alan@gurapllc.com              Counsel of Record
*Admission pro hac vice pending

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Defense Distributed and Second Amendment Foundation | GURBIR S. GREWAL, individually, and in his official capacity as Attorney General of New Jersey; MICHAEL FEUER, individually, and in |

| **(b)**  County of Residence of First Listed Plaintiff     Travis County, Texas | County of Residence of First Listed Defendant |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| **(c)**  Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Josh Blackman, Josh Blackman LLC, 1303 San Jacinto Street, Houston, TX 77002, 202-294-9003. | |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                 *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | Leave Act | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☒ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation - Transfer
- ☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 1983

Brief description of cause:
Challenge to prior restraint imposed by threatened state legal enforcement

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 7/29/18 | *J.C. Blackman* |

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

# Exhibit A



**United States Department of State**
*Bureau of Political-Military Affairs*
*Directorate of Defense Trade Controls*
*Washington, D.C. 20522-0112*

July 27, 2018

Mr. Cody R. Wilson, Defense Distributed, and Second Amendment Foundation, Inc.
c/o Mr. Matthew A. Goldstein
Snell & Wilmer
One South Church Avenue
Suite 1500
Tucson, AZ 85701-1630

RE:   Directorate of Defense Trade Controls Approval of Certain Files for Public Release

Dear Mr. Wilson, Defense Distributed, and Second Amendment Foundation, Inc.:

This letter is provided in accordance with section 1(c) of the Settlement Agreement in the matter of *Defense Distributed, et al., v. U.S. Department of State, et al.*, No. 15-cv-372-RP (W.D. Tx.) (hereinafter referred to as "*Defense Distributed*"). As used in this letter,

- The phrase "Published Files" means the files described in paragraph 25 of Plaintiffs' Second Amended Complaint in *Defense Distributed*.
- The phrase "Ghost Gunner Files" means the files described in paragraph 36 of Plaintiffs' Second Amended Complaint in *Defense Distributed*.
- The phrase "CAD Files" means the files described in paragraph 40 of Plaintiffs' Second Amended Complaint in *Defense Distributed*.

The Department understands that Defense Distributed submitted the Published Files, Ghost Gunner Files, and CAD Files to the Department of Defense's Defense Office of Prepublication and Security Review (DOPSR) in 2014 to request review for approval for public release pursuant to International Traffic in Arms Regulations (ITAR) § 125.4(b)(13). It is our further understanding that DOPSR did not make a determination on the eligibility of these files for release, but instead referred you to the Directorate of Defense Trade Controls (DDTC) regarding public release of these files.

1

I advise you that for the purposes of ITAR § 125.4(b)(13), the Department of State is a cognizant U.S. government department or agency, and DDTC has authority to issue the requisite approval for public release. To that end, I approve the Published Files, Ghost Gunner Files, and CAD Files for public release (i.e., unlimited distribution). As set forth in ITAR § 125.4(b)(13), technical data approved for public release by the cognizant U.S. government department or agency is not subject to the licensing requirements of the ITAR.

Sincerely,

Acting Deputy Assistant Secretary for the
Directorate of Defense Trade Controls

# Exhibit B

 An official website of the United States government



MENU

**U.S. DEPARTMENT OF STATE**

**Directorate of Defense Trade Controls**

# DDTC Mission:

Ensuring commercial exports of defense articles and defense services are consistent with U.S. national security and foreign policy objectives.

## Learn About Export Regulations

Read about the laws and regulations that govern Defense Trade, including the Arms Export Control Act (AECA), the ITAR, and the United States Munitions List (USML).

Find out if you need to Register

Review the ITAR

Request a Commodity Jurisdiction (CJ)

## Export Your Goods/Services

Access the ways you conduct Defense Trade activities, including Registration, Licenses, Agreements, and

their associated online systems.

Register your Business

Go to DTrade Portal

Apply for Licenses or Agreements

Access DTAS & DECCS Systems

## Get Help from DDTC

Learn all the ways we can help you or your organization to meet any of your specific needs with regards to conducting Defense Trade.

Contact Us

Review FAQs

DDTC Outreach Opportunities

# The Defense Trade Advisory Group (DTAG)

Providing a formal channel for regular consultation and coordination with U.S. private sector defense exporters and defense trade specialists.

**Learn about DTAG**

**See the latest from DTAG**

# Announcements

**Upcoming**

EVENT: **IN-HOUSE SEMINARS**

08/10/18 - 09/19/18

## DDTC In-House Seminar

Registration for The Directorate of Defense Trade Controls (DDTC) In-House Seminar for Wednesday, September 19th, 2018 opens August 10th and closes August 31st. Attendees will be identified on a first-come, first-serve basis. Preference will be given to new registrants and small-businesses. A completed registration form must be sent to the DDTC In-House Seminar email, as an attachment, DDTCInHouseSeminars@state.gov.

For more information, please visit the DDTC Outreach Programs page and click the "In-House Seminars" tab.

## Today

NOTICE

05/31/18 - 08/31/18

## Temporary Extension on May 31, 2018 and June 30, 2018 Expirations

DDTC has determined that a system issue prevented registration reminder letters for Tier 1 registrants with expirations of May 31, 2018 and June 30, 2018 from being sent out at least 60 days prior to expiration. The issue has been resolved. To ensure registrants are not adversely affected, DDTC has temporarily extended May 31, 2018, expirations to July 31, 2018, and June 30, 2018, expirations to August 31, 2018. Please note that registration submissions still need to be made at least 30 days in advance of the expiration of the temporary extension to ensure a lapse in registration does not occur. Properly renewed registrations affected by this issue will reflect either a May or June 2019 expiration, unless a lapse occurs. Questions regarding registration status as a result of this issue should be directed to the DDTC Response Team.

## Previous

NOTICE: GENERAL

NOTICE: GENERAL

07/27/18

# Temporary Modification of Category I of the United States Munitions List

Consistent with the International Traffic in Arms Regulations (ITAR), 22 C.F.R. § 126.2, the Acting Deputy Assistant Secretary for Defense Trade Controls has determined that it is in the interest of the security and foreign policy of the United States to temporarily modify United States Munitions List (USML) Category I to exclude the following technical data identified in the Settlement Agreement for the matter of Defense Distributed, et al., v. U.S. Department of State, et al, Case No. 15-cv-372-RP (W.D. Tex.) (hereinafter "Defense Distributed"):

- "Published Files," i.e., the files described in paragraph 25 of the Second Amended Complaint in Defense Distributed.
- "Ghost Gunner Files," i.e., the files described in paragraph 36 of the Second Amended Complaint in Defense Distributed.
- "CAD Files," i.e., the files described in paragraph 40 of the Second Amended Complaint in Defense Distributed.
- "Other Files," i.e., the files described in paragraphs 44-45 of the Second Amended Complaint in Defense Distributed, insofar as those files regard items exclusively: (a) in Category I(a) of the USML, as well as barrels and receivers covered by Category I(g) of the USML that are components of such items; or (b) items covered by Category I(h) of the USML solely by reference to Category I(a), excluding Military Equipment.  Military Equipment means (1) Drum and other magazines for firearms to .50 caliber (12.7 mm) inclusive with a capacity greater than 50 rounds, regardless of jurisdiction of the firearm, and specially designed parts and components therefor; (2) Parts and components specially designed for conversion of a semi-automatic firearm to a fully automatic firearm; (3) Accessories or attachments specially designed to automatically stabilize aim (other than gun rests) or for automatic targeting, and specially designed parts and components therefor.

This temporary modification will remain in effect while the final rule referenced in paragraph 1(a) of the Settlement Agreement is in development.

Please see the Settlement Agreement and the Second Amended Compliant for additional information.

NOTICE: GENERAL

07/25/18

# Public Comments on USML Categories I–III

# Exhibit C



## *State of New Jersey*

PHILIP D. MURPHY
*Governor*

SHEILA Y. OLIVER
*Lt. Governor*

OFFICE OF THE ATTORNEY GENERAL
DEPARTMENT OF LAW AND PUBLIC SAFETY
DIVISION OF LAW
PO Box 080
TRENTON, NJ 08625-0080

GURBIR S. GREWAL
*Attorney General*

Defense Distributed
2320 Donley Dr., Suite C
Austin, TX 78758

July 26, 2018

To Whom It May Concern:

You are directed to cease and desist from publishing printable-gun computer files for use by New Jersey residents. The files you plan to publish offer individuals, including criminals, codes that they can use to create untraceable firearms—and even to make assault weapons that are illegal in my state. These computer codes are a threat to public safety, and posting them violates New Jersey's public nuisance and negligence laws. If you do not halt your efforts to proceed with publication, I will bring legal action against your company before August 1, 2018.

The computer files that you plan to publish will undermine the public safety of New Jersey residents. These files allow anyone with a 3-D printer to download your code and create a fully operational gun. More than that, the codes you plan to post will enable individuals to print assault weapons that are illegal in New Jersey. And because the printed guns would not have serial numbers, they would not be traceable by law enforcement. Worst of all, you are going to make the codes available to everyone—regardless of age, criminal status, or history of mental illness. That would undermine New Jersey's comprehensive scheme for keeping guns out of dangerous criminals' hands, and it would undermine the safety of our residents.

Not only are your codes dangerous, but posting them would also be illegal. New Jersey's law is clear: an individual who interferes with public health, safety, peace, and comfort violates our public nuisance law. *See James v. Arms Tech., Inc.*, 359 N.J. Super. 291, 329-33 (App. Div. 2003). As New Jersey courts have held, "[n]o one can seriously debate" that regulated guns are "dangerous instrumentalities" and thus implicate our public nuisance law. *Id.* at 320. So when a group of manufacturers "flood[ed] the gun market" through a high volume of sales, while failing to develop "reasonable safeguards over the distribution scheme" and "refus[ing] to oversee or supervise the control of handgun distribution in order to prevent the foreseeable channeling of guns to such an illegal market," New Jersey courts found they could be held responsible when their actions "facilitate[d] the illegal sale of weapons to criminals and other unlawful users." *Id.* at 312. That is what your actions will do as well—make do-it-yourself guns available to anyone, even if the individuals are prohibited from owning guns because of prior convictions, history of mental illness, or history of domestic violence, even if the weapons they print are illegal in my



Hughes Justice Complex • TELEPHONE: (609) 292-4925 • FAX: (609) 292-3508
*New Jersey Is An Equal Opportunity Employer • Printed on Recycled Paper and Recyclable*

July 26, 2018
Page 2

state, and even if they plan to use their weapons to further crimes and acts of violence. Because your actions will flood the illegal firearms market and pose a direct threat to the public safety of my state, they constitute a public nuisance.

Worse still, your comments make clear that you hope your actions will undermine all the efforts of states like New Jersey to keep guns out of criminals' hands. You have stated, "All this Parkland stuff, the students, all these dreams of 'common sense gun reforms'? No. The internet will serve guns, the gun is downloadable."[1] You have also stated, "I'm not worried about public safety."[2] And on July 10, 2018, you tweeted a photo of a gravestone engraved with the words "American Gun Reform."[3] These comments show that you have no intention of precluding your printable-gun computer files, including designs for assault weapons, from winding up in the hands of criminals, minors, and the mentally ill. Not only does that reveal a lack of regard for safety, but it also shows that your interference with the public's health and safety is intentional and per se unreasonable. *James*, 359 N.J. Super. at 330.

Finally, your widespread dissemination of printable-gun computer files is negligent because it encourages an illegal gun market, which will foreseeably lead to increased crime and violence in New Jersey, and which will lead to an increase in expenditures of public funds for combatting crime and protecting our resident's health. *See id.* at 308-24 (finding a legally valid negligence claim against same manufacturers of guns that flooded the illegal market). Your planned method of making codes available and your public comments show that you are ignoring and violating your duty. By broadly sharing an inherently dangerous product, you should reasonably foresee the resulting governmental and public costs and must bear them. *Id.* at 323-24.

As the chief law enforcement officer for New Jersey, I demand that you halt publication of the printable-gun computer files. Should you fail to comply with this letter, my Office will initiate legal action barring you from publishing these files before August 1, 2018.

Sincerely,

Gurbir S. Grewal
Attorney General

---

[1] Andy Greenberg, "A Landmark Legal Shift Opens Pandora's Box for DIY Guns," Wired (July 10, 2018), available at https://www.wired.com/story/a-landmark-legal-shift-opens-pandoras-box-for-diy-guns/.

[2] Tess Owen, "Get Ready for the New Era of 3D-Printed Guns Starting August 1," Vice News (July 18, 2018), available at https://news.vice.com/en_us/article/ev8xjn/get-ready-for-the-new-era-of-3d-printed-guns-starting-august-1.

[3] Cody R. Wilson (@Radomysisky), Twitter (July 10, 2018, 12:25 P.M.), https://twitter.com/Radomysisky/status/1016765282017337344.

# Exhibit D

The State of New Jersey
**DEPARTMENT OF LAW & PUBLIC SAFETY**
OFFICE OF THE ATTORNEY GENERAL

Search

NJHome  |  Services A to Z  |  Departments/Agencies  |  FAQs

OAG Home  OAG Services from A - Z  |  Servicios en Español
OAG Contact  **News Release**

Gurbir S. Grewal
Attorney General

AG's Executive Leadership Team

AG's Message    Ask the AG

Contact OAG    About OAG

OAG News    OAG FAQs

OAG Library    Employment

OAG Grants    Proposed Rules

OAG History    Services A-Z

Statutes / Regulations / Rules

Agencies / Programs / Units

**Other News Pages**

Governor's Office

Otras Noticias en Español (OAG)

Civil Rights (Division on)

Consumer Affairs (Division of)

Criminal Justice (Division of)

Election Law Enforcement Comm.

Gaming Enforcement (Div. of)

Highway Traffic Safety (Division of)

Insurance Fraud Prosecutor (Office of)

Juvenile Justice Commission

State Police (Division of NJ)

Law (Division of)

**For Immediate Release:**
July 26 2018

**Office of The Attorney General**
- Gurbir S. Grewal, Attorney General

**For Further Information:**
Media Inquiries-
Lee Moore
609-292-4791
Citizen Inquiries-
609-984-5828

## AG Grewal Demands That Gun Developer Halt Plans to Publish Printable-Gun Computer Files; Threatens Imminent Legal Action
### Citing Threat to Public Safety, AG Warns of Lawsuit Before August 1

### View Cease and Desist Letter

**TRENTON** – Acting to protect New Jersey residents from an emerging threat to public safety, Attorney General Gurbir S. Grewal today sent a "cease and desist" letter to a firearm developer that plans to publicly release computer files on August 1 that would enable individuals to create firearms using a 3-D printer.

"You are directed to cease and desist from publishing printable-gun computer files for use by New Jersey residents," Attorney General Grewal warned Texas-based Defense Distributed in today's letter. "The files you plan to publish offer individuals, including criminals, codes that they can use to create untraceable firearms—and even to make assault weapons that are illegal in my state."

Citing New Jersey's public nuisance law and prior court decisions that have upheld claims against gun manufacturers for similar reckless actions, Attorney General Grewal threatened Defense Distributed with "legal action" if it fails to comply with his demand to halt its planned publishing of printable-gun computer files starting next week.

"Defense Distributed's plans to allow anyone with a 3-D printer to download a code and create a fully operational gun directly threatens the public safety of New Jersey's residents, " Attorney General Grewal stated. "Posting this material online is no different than driving to New Jersey and handing out hard-copy files on any street corner. The federal government is no longer willing to stop Defense Distributed from publishing this dangerous code, and so New Jersey must step up."

Defense Distributed plans to "make do-it-yourself guns available to anyone, even if the individuals are prohibited from owning guns because of prior convictions, history of mental illness, or history of domestic violence, even if the weapons they print are illegal in my state, and even if they plan to use their weapons to further crimes and acts of violence," added Attorney General Grewal. "Not only are these plans to publish printable-gun files dangerous, they also violate New Jersey law."

Defense Distributed made national headlines by developing gun computer files that enable consumers to create fully operational firearms with a 3-D printer. The company's founder, Cody Wilson, developed a printable plastic pistol known as the "Liberator .380" in 2012 and put the plans online, but was blocked by the federal government. Wilson

sued, and under a settlement he reached with the U.S. State Department, his company is free to begin releasing computer files for printable guns beginning on August 1.

In his cease-and-desist letter, Attorney General Grewal warns Defense Distributed that its actions will "flood the illegal firearms market and pose a direct threat to the public safety of my state." He also takes the company to task for striving to make do-it-yourself guns readily available to people deemed unfit to have them. "By broadly sharing an inherently dangerous product," the letter adds, Defense Distributed "should reasonably foresee the resulting governmental and public costs and must bear them."

The letter also highlights that Cody Wilson has "no intention of precluding [these] printable-gun computer files, including designs for assault weapons, from winding up in the hands of criminals, minors, and the mentally ill." Wilson has publicly stated, ""All this Parkland stuff, the students, all these dreams of 'common sense gun reforms'? No. The internet will serve guns, the gun is downloadable." He has even announced, "I'm not worried about public safety." As a result, the letter notes, his "interference with the public's health and safety is intentional and per se unreasonable."

"As the chief law enforcement officer for New Jersey, I demand that you halt publication of the printable gun computer files," Attorney General Grewal concludes. "Should you fail to comply with this letter, my Office will initiate legal action barring you from publishing these files before August 1, 2018."

Follow the New Jersey Attorney General's Office online at Twitter, Facebook, Instagram, Flicker & YouTube. The social media links provided are for reference only. The New Jersey Attorney General's Office does not endorse any non-governmental websites, companies or applications.

####

News Index Page | top



# Exhibit E

# Exhibit D

Case 1:18-cv-00637-RP   Document 161   Filed 07/27/18   Page 2 of 54



MICHAEL N. FEUER
City Attorney

July 27, 2018

The Hon. Robert Pitman
United States District Court for the
Western District of Texas
501 West 5th St., Suite 5300
Austin, TX 78701

     Re: *Defense Distributed et al. v. United States Department of State et al.,*
     (Case No. 15-CV-00372-RP).

Dear Judge Pitman:

     The purpose of this letter is to apprise the Court that the City of Los Angeles intends to move to intervene in *Defense Distributed, et al. v. Dep't of State, et al.*, Case No. 15-cv-372-RP (W.D. Tex.) (the "Litigation") to seek to enjoin Defense Distributed from publishing its blueprints of firearms and firearm components on the internet. The City has a concrete, particularized, and legally protectable interest in the Litigation: the potential public distribution of Defense Distributed's blueprints on the internet would pose a direct and immediate threat to public safety in the City of Los Angeles, and cause numerous violations of California and City laws designed to protect the public from gun violence.

     I am the City Attorney for the City of Los Angeles (the "City"). As the City's chief lawyer and prosecutor, it is my job to enforce the gun laws of the City and California to ensure the safety of the City's nearly four million residents as well as its millions of visitors.[1]

     I have reviewed a settlement agreement (the "Agreement") purporting to resolve the Litigation. Under the Agreement, the plaintiff, Defense Distributed, is allowed to publicly upload blueprints of firearms and firearm components to the Internet so that any terrorist, violent felon, domestic abuser, mentally ill individual, or minor with access to the Internet and a 3D printer may create completely untraceable and undetectable guns and gun components, including

---

[1] In 2016, Los Angeles County had over 47 million visitors. https://www.discoverlosangeles.com/press-releases/facts-about-los-angeles.

The Honorable Robert Pitman
Page 2

"do-it-yourself" semi-automatic weapons. This is not hyperbole. Indeed, in paragraph 1(d) of the Agreement, the State Department acknowledges and agrees that temporary modification of the Category 1 munitions list permits "any United States person" to "access, discuss, use, reproduce, or otherwise benefit" from Defense Distributed's automated blueprints. This will undoubtedly facilitate the manufacture of 3D guns in California, as well as the importation of such guns into California, in violation of numerous California and City laws. The threat to public safety in our jurisdiction is clear.

 For example, California law has labeled "undetectable firearms"—like those that Defense Distributed's blueprints may enable people to make—as a nuisance. (Cal. Pen. Code § 24690.)[2] As such, my office is authorized to file lawsuits to "enjoin" the manufacture, importation, or possession of an undetectable firearm. (*Id.* § 18010.) Furthermore, under California law, it is also a crime to "manufacture[] or cause[] to be manufactured, import[] into the state, … or possess[] any undetectable firearm," subjecting a violator to imprisonment for up to a year. (*Id.* § 24610.) Defense Distributed's blueprints may allow individuals to print undetectable 3D firearms in direct violation of these laws.

 The threat to public safety in Los Angeles posed by undetectable firearms is obvious and immeasurable. For example, it is illegal under the Los Angeles Municipal Code ("LAMC") to possess the "frame, receiver or barrel of a firearm" at an airport. (LAMC § 55.17(a)(1).) This is for good reason; the Los Angeles International Airport is the fifth busiest airport in the world, and served over 84 million passengers in 2017. https://www.businessinsider.com/busiest-airports-in-the-world-2018-2018-4#6-chicago-ohare-international-airport-ord-79828183-passengers-in-2017-15.[3] One way we enforce this law is through the use of X-ray machines. But undetectable gun and gun components may render metal detectors and X-ray machines useless. Thus, the online distribution of Defense Distributed's blueprints will allow criminals and terrorists to evade our law. How will we keep airports and airplanes safe?

 It is also unlawful under California law to sell or transfer a manufactured or assembled firearm (Cal. Pen. Code § 29180(d)),[4] and to aid or abet certain high-risk individuals (e.g., felons, sex offenders, etc.) in the manufacture or assembly of a firearm. (*Id.* § 29180(e).) Defense Distributed's blueprints will allow individuals to circumvent these laws with ease.

 In addition, numerous other California and City laws will be directly undermined by the publishing of Defense Distributed's blueprints. For example, it is a felony in California to manufacture, import, or sell an assault weapon, punishable by up to eight years in prison. (Cal.

---

[2] An undetectable firearm is generally defined as a weapon that is not detectable by a walk-through metal detector or "the types of X-ray machines commonly used at airports." (Cal. Pen. Code § 17280.)

[3] In addition to the significant traffic through Los Angeles's airport, the Port of Los Angeles is the largest container port in North America. https://www.portoflosangeles.org/about/facts.asp. This is another potential access point for 3D guns to slip into Los Angeles undetected.

[4] "For purposes of this chapter, 'manufacturing' or 'assembling' a firearm means to fabricate or construct a firearm, or to fit together the component parts of a firearm to construct a firearm." (Cal. Pen. Code § 29180(a).)

The Honorable Robert Pitman
Page 3

Pen. Code § 30600(a).)   Defense Distributed's blueprints may allow individuals to print 3D assault weapons in direct violation of this law.

California also has a comprehensive scheme to ensure that firearms do not fall into the hands of felons and other individuals deemed by the court system to pose a danger to others as a result of mental disorder or illness through a robust background check process. (Cal. Pen. Code §§ 26815, 28210, 28220, 29800; Cal. Wel. & Inst. Code §§ 8103-04.)   And the City has similar laws designed to prevent gun violence and assist law enforcement in the apprehension of those who misuse firearms. (*See, e.g.*, LAMC § 55.14 (prohibiting the purchase and sale of more than one handgun to the same person in a thirty day period); *id.* § 55.15 (requiring fingerprinting of firearms purchasers).)   All of these laws are directly undermined if felons can simply print their own 3D firearms with the assistance of Defense Distributed's blueprints.

In sum, the potential public distribution of Defense Distributed's blueprints would pose a direct and immediate threat to public safety in the City and would directly cause numerous violations of California and City law.   We were recently made aware of the hearing this Court will hold this afternoon on the Motion to Intervene by The Brady Campaign to Prevent Gun Violence, Everytown for Gun Safety Action Fund, Inc. and Giffords ("the Proposed Intervenors").   We urge the Court to grant the Proposed Intervenors' Motion, and respectfully apprise the Court of our intent to move to intervene ourselves at our earliest opportunity.

Very truly yours,

By:

MICHAEL N. FEUER
Los Angeles City Attorney

# Exhibit F

 **LA City Attorney**
@CityAttorneyLA

 Follow

City Atty Mike Feuer & @ManhattanDA Cyrus Vance, Jr. to @StateDept:  NO #DIY #guns! #gunviolence #GunControl #gunsense ▶▶ goo.gl/L377y3 @ProsecutorsAGV

"Invisible to metal detectors, these plastic guns could easily be smuggled onto airplanes, and into concerts, festivals and government buildings. No one is safer if criminals can print untraceable guns on demand."

Mike Feuer, LA City Attorney and Cyrus Vance, Jr., Manhattan District Attorney Co-Chairs - Prosecutors Against Gun Violence

9:37 AM - 28 Jul 2018

6 Retweets  14 Likes   

💬 1      ♺ 6          14

© 2018 Twitter   About   Help Center   Terms   Privacy policy   Cookies   Ads info