## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GURBIR S. GREWAL, Attorney General of The State of New Jersey, | Civil Action No.:  18-cv-13248-SDW-LDW |
| Plaintiff, | (Document Electronically Filed) |
| v. | |
| DEFENSE DISTRIBUTED, CODY R. WILSON, et al., | |
| Defendants. | |

## DEFENDANTS' BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO CHANGE VENUE OR DISMISS

**BECK REDDEN LLP**
Chad Flores*
cflores@beckredden.com
Mary Kate Raffetto*
mkraffetto@beckredden.com
Dan Hammond*
dhammond@beckredden.com
1221 McKinney St., Suite 4500
Houston, TX 77010
(713) 951-3700

**HARTMAN & WINNICKI, P.C.**
Daniel L. Schmutter
dschmutter@hartmanwinnicki.com
74 Passaic Street
Ridgewood, New Jersey 07450
(201) 967-8040

**FARHANG & MEDCOFF**
Matthew A. Goldstein*
mgoldstein@fmlaw.com
4801 East Broadway Blvd., Suite 311
Tucson, AZ 85711
(520) 790-5433

*Admissions *pro hac vice* pending

*Attorneys for Defendants*

**Table of Contents**

**Page**

Table of Contents ............................................................................................................... i

Table of Authorities ........................................................................................................... ii

Summary of the Argument................................................................................................. 1

Statement of the Case........................................................................................................ 5

I.      Facts. ...................................................................................................................... 5

        A.      "CAD files" are computer files, not firearms. ...........................................5

        B.      The Defendants reside in Texas and publish a website from Texas. .......................6

II.     Procedural posture. ............................................................................................... 7

        A.      Because of *Defense Distributed I*, the federal government approved of
                the Defendants' publication of the files at issue. ........................................7

        B.      Plaintiff and others took action directly against Defense Distributed,
                causing the initiation of *Defense Distributed II*. .......................................9

        C.      The District Court for the Western District of Washington issued a
                nationwide injunction stopping the result of *Defense Distributed I*. .......................9

        D.      This lawsuit follows in the footsteps of *Defense Distributed I*, *Defense
                Distributed II*, and the Western District of Washington litigation.........................10

Argument .......................................................................................................................... 13

I.      The action should be transferred to where the other two key cases are pending: Texas. . 13

        A.      This action might have been brought in the Western District of Texas.................13

        B.      Public factors favor transferring the case to Texas..............................................15

        C.      Private factors favor transferring the case to Texas.............................................19

II.     The action should be dismissed for want of personal jurisdiction................................. 21

        A.      General jurisdiction's minimum contacts do not exist. .......................................22

        B.      Specific jurisdiction's minimum contacts do not exist.......................................22

Conclusion ...................................................................................................................... 30

**Table of Authorities**

**Case**                                                                                                                    **Page(s)**

*Ackourey v. Sonellas Custom Tailors*,
573 Fed. Appx. 208 (3d Cir. 2014) ...................................................................................27

*Adam v. Jacobs*,
950 F.2d 89 (2d Cir. 1991) .................................................................................................16

*Avaya, Inc. v. Mitel Networks Corp.*,
460 F. Supp. 2d 690 (E.D. Va. 2006) ................................................................................16

*Bell Tel. Labs., Inc. v. Int'l Bus. Machines Corp.*,
630 F. Supp. 373 (D. Del. 1984) .......................................................................................16

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ...........................................................................................................30

*Chavez v. Dole Food Co., Inc.*,
836 F.3d 205 (3d Cir. 2016) .........................................................................................18, 20

*CIBC World Mkts. v. Deutsche Bank Sec., Inc.*,
309 F. Supp. 2d 637 (D. N.J. 2004) ...................................................................................17

*Cont'l Grain Co. v. Barge FBL–585*,
364 U.S. 19 (1960) .............................................................................................................17

*Crosley Corp. v. Hazeltine Corp.*,
122 F.2d 925 (3d Cir. 1941) ........................................................................2, 17, 18, 19, 20

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) .........................................................................................................3, 24

*Dapuzzo v. Anderson*,
Civ. Ac. No. 14-6107 FLW D, 2015 WL 1268317
(D. N.J. Mar. 18, 2015) ......................................................................................................23

*Defense Distributed, et al.
v. Gurbir S. Grewal, Attorney General of New Jersey, et al.*,
No. 1:18-CV-00637-RP (W.D. Tex.) .....................................................................................2

*Defense Distributed, et al. v. United States Department of State, et al.*,
No. 1:15-CV-372-RP (W.D. Tex.) .........................................................................................2

*Defense Distributed, et al. v. United States Department of State, et al.*,
No. 15-50759 (5th Cir.) .....................................................................................................5, 6

ii

*EEOC v. Univ. of Pa.*,
   850 F.2d 969 (3d Cir.1988)..................................................................................19, 20

*Eli Lilly & Co. v. Nang Kuang Pharm. Co., Ltd.*,
   No. 1:14-CV-01647-TWP, 2015 WL 3744557
   (S.D. Ind. June 15, 2015) ...................................................................................31

*FlagHouse, Inc. v. ProSource Dev., Inc.*,
   528 F. App'x 186 (3d Cir. 2013) ........................................................................24

*Food Scis. Corp. v. Nagler*,
    No. 09-1798 (JBS), 2010 WL 1186203, at *1
    (D.N.J. Mar. 22, 2010) ......................................................................................28

*Gregory v. HMSHost Family Restaurants, Inc.*,
   Civ. Ac. No. 09-6132 (SDW), 2010 WL 2015255
   (D. N.J. May 20, 2010), *report and recommendation adopted*,
   Civ. Ac. No. 09-6132 (SDW), 2010 WL 2557546 (D. N.J. June 23, 2010)............................21

*Hanson v. Denckla*,
   357 U.S. 235 (1958)..............................................................................................30

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984)..............................................................................................30

*Hershey Co. v. Pagosa Candy Co.*,
   1:07-CV-1363, 2008 WL 1730538 (M.D. Pa. Apr. 10, 2008)................................................27

*Holder v. Humanitarian Law Project*,
   561 U.S. 1 (2010)..................................................................................................18

*Home Gambling Network, Inc. v. Betinternet.com, PLC*,
   2:05CV 00610 KJD LRL, 2006 WL 1795554
   (D. Nev. June 26, 2006) ......................................................................................31

*In re: Howmedica Osteonics Corp.*,
   867 F.3d 390 (3d Cir. 2017).................................................................................4

*Int'l Shoe Co. v. State of Wash., Office of Unemployment
   Comp. & Placement*,
   326 U.S. 310 (1945)..........................................................................................30, 31

*Jumara v. State Farm Ins. Co.*,
   55 F.3d 873 (3d Cir. 1995).......................................................................17, 20, 21, 22

*Koninklijke Philips N.V. v. Digital Works, Inc.*,
   2:13-CV-01341-JAD, 2014 WL 3816395
   (D. Nev. Aug. 4, 2014) .......................................................................................31

*Maliki v. Holy Redeemer Hosp.*,
   Civ. Ac. No. CV-151591-KSH-CLW, 2016 WL 4161094
   (D. N.J. Aug. 5, 2016)............................................................................22

*Estate of Martinez v. Yavorcik*,
   455 F. Supp. 2d 115 (D. Conn. 2006)....................................................31

*Maximum Human Performance, Inc. v. Dymatize Enterprises, Inc.*,
   No. CIV.A. 09-235(PGS), 2009 WL 2778104 (D.N.J. Aug. 27, 2009),
   report and recommendation adopted, No. CIV.A 09-235(PGS),
   2009 WL 2952034 (D.N.J. Sept. 14, 2009) ...........................................19

*Metcalfe v. Renaissance Marine, Inc.*,
   566 F.3d 324 (3d Cir. 2009)...............................................................5, 23

*Morilla v. Laser Spine Inst., LLC*,
   2:10-CV-01882 WHW, 2010 WL 3258312
   (D. N.J. Aug. 16, 2010).........................................................................27

*Nationwide Contractor Audit Serv., Inc.*
   *v. Nat'l Compliance Mgmt. Services, Inc.*,
   622 F. Supp. 2d 276 (W.D. Pa. 2008)....................................................24

*Orabi v. Attorney Gen. of the U.S.*,
   738 F.3d 535 (3d Cir. 2014).....................................................................7

*Patchen v. McGuire*,
   No. 11-5388, 2012 WL 4473233
   (E.D. Pa. Sept. 27, 2012) ......................................................................27

*Rakoff v. St. Clair, CPAs, P.C.*,
   CIV.A. 12-5996 JEI, 2013 WL 1007330
   (D. N.J. Mar. 12, 2013)..........................................................................24

*S. Morantz, Inc. v. Hang & Shine Ultrasonics, Inc.*,
   79 F. Supp. 2d 537 (E.D. Pa. 1999) .......................................................27

*Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*,
   549 U.S. 422 (2007)..................................................................................4

*Skidmore v. Swift & Co.*,
   323 U.S. 134 (1944)................................................................................18

*Smith v. McIver*,
   22 U.S. (9 Wheat.) 532, 6 L.Ed. 152 (1824)..........................................19

*SW Indus., Inc. v. Aetna Cas. & Sur. Co.*,
   653 F. Supp. 631 (D.R.I. 1987)..............................................................17

*Sys. Software Assocs., Inc. v. Trapp*,
    No. 95 C 3874, 1995 WL 506058
    (N.D. Ill. Aug.18, 1995)......................................................................................31

*Toys "R" Us, Inc. v. Step Two, S.A.*,
    318 F.3d 446 (3d Cir. 2003)...................................................................25, 26, 27, 28

*Vukich v. Nationwide Mut. Ins. Co.*,
    68 Fed. Appx. 317 (3d Cir. 2003).......................................................................16

*Walden v. Fiore*,
    571 U.S. 277 (2014)......................................................................................4, 25, 28, 29

*Washington v. United States Dep't of State*,
    No. C18-1115RSL, 2018 WL 4057006
    (W.D. Wash. 2018) ......................................................................................1, 10, 11

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)....................................................................................28, 29, 30, 31

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,
    952 F. Supp. 1119 (W.D. Pa. 1997)...................................................................3, 26

**Statutes**

28 U.S.C.
    § 1391(b)(1) .......................................................................................................15
    § 1391(b)(2) .......................................................................................................16
    § 1391(c)(2) .......................................................................................................15
    § 1404......................................................................................................................2, 15
    § 1404(a) ............................................................................................................2, 15

42 U.S.C. § 1983...............................................................................................................2, 10

**Rules**

Fed. R. Civ. P.
    12(b)(3) ...............................................................................................................3, 23
    13(a)(1) ...............................................................................................................16

v

**Other Authorities**

22 C.F.R. parts 120–130 .................................................................................................7

22 C.F.R. § 125.4(b)(13).................................................................................................9

15 Charles Alan Wright & Arthur R. Miller et al.,
    Federal Practice & Procedure: Jurisdiction & Related Matters
    (4th ed. West 2018)................................................................15, 17, 20, 21, 22, 23

**Summary of the Argument**

This action is the Attorney General of New Jersey's effort to have a prior restraint issued against a website's publication of information about firearms.  The Constitution protects the Defendants' right to engage in this speech freely, and the federal authorities in charge of the matter have issued the Defendants a license to speak.  But according to the Attorney General of New Jersey, state tort law lets it ignore all of that for the sake of silencing a disfavored message.

This effort should not succeed for many reasons.  Standing's injury requirement is unmet because the alleged harms are too speculative and reliant upon conjecture about third-party criminal behavior.  Standing's redressability element is also unmet because other websites are already publishing the very same files that this suit seeks to stop the Defendants' website from publishing.  Federal preemption is also a problem.  And all of that aside, the action fails because no one—not Congress, not the President, and not the Attorney General of New Jersey—can justify issuing a prior restraint against speech lying at the core of both the First *and* Second Amendments.

New Jersey also has a serious contradiction to answer for.  In another federal court, to obtain an injunction regarding the computer files at issue here, a lawyer representing the State of New Jersey took the position that it is ***not*** illegal to "produce this information" generally; "Internet posting" of the files is objected to; but New Jersey has conceded that the Defendants would break no law if they were to just "hand them around."  Ex. D at 23.  The court it told that to agreed: Without breaking any law, the computer files at issue here "can be emailed, mailed, securely transmitted, or otherwise published within the United States." *Washington v. United States Dep't of State*, No. C18-1115RSL, 2018 WL 4057006, at *11 (W.D. Wash. 2018) (Ex. E at 25).  Why does the Internet get less constitutional protection than all other media?  New Jersey has no answer.

These and the action's many other serious faults will have to be addressed in due course. For now, the Defendants seek to resolve a practical issue about *where* these decisions will occur.

First, the Defendants move for an order transferring this action to the United States District Court for the Western District of Texas, Austin Division.  The statute warranting the transfer is 28 U.S.C. § 1404: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

In every relevant respect, the Western District of Texas's Austin Division is where this case belongs.  That is where both Defendants reside, where all of the important events occurred, and where two closely related federal actions are pending before the same judge.

The first related action is *Defense Distributed, et al. v. United States Department of State, et al.*, No. 1:15-CV-372-RP (W.D. Tex.) (Pitman, J).  *See* Ex. A.  The complaint here refers to that very action in alleging that "the Federal Government . . . decided to allow Defense Distributed to move forward with its plans to share these computer codes on the Internet."  Dkt. 1-2 at 3, ¶ 2. The State Department's settlement of that action's keystone dispute is what the Attorney General wants to upend here.  The settlement is set in stone, but the action itself is very much still alive.

The second related action is *Defense Distributed, et al. v. Gurbir S. Grewal, Attorney General of New Jersey, et al.*, No. 1:18-CV-00637-RP (W.D. Tex.) (Pitman, J).  *See* Ex. B.  That is a Section 1983 action by Defense Distributed against the Plaintiff here (and others).  It will decide whether federal law protects the Defendants' right to do what the Plaintiff says tort law proscribes.  Because the Texas suit is the "first-filed" of two duplicative suits, Defense Distributed is  entitled to invoke the rule that the "party who first brings a controversy into a court of competent jurisdiction for adjudication should, so far as our dual system permits, be free from the vexation of subsequent litigation over the same subject matter."  *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941).  A change of venue is the least that this warrants.

Thus, in Texas, Judge Robert Pitman already presides over two prominent actions that predate this one and that will decide all of the main issues in dispute. Transferring this case to that same Texas court is the most convenient solution for the parties and witnesses, and is the best solution for the interests of justice. This controversy ought to be resolved in one fell swoop, and Judge Pitman is in the perfect position to do so. The action should be transferred immediately.

Second, the Defendants move for an order dismissing this action for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(3). Unlike the Western District of Texas, which has both general and specific personal jurisdiction over the Defendants, this Court has neither.

General jurisdiction is not debatable because the Defendants are at home only in Texas. *See, e.g.*, *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014). The complaint acknowledges that the Defendants reside and work in Texas, Dkt. 1-02 at 2, ¶¶ 6–7, 10, and does not allege anything to the contrary vis-à-vis New Jersey. To remove any doubt, proof shows that Texas is where both the Defendants have conducted all of their relevant day-to-day activities for years. Wilson Decl. ¶¶ 1-3, 5-6.

Specific jurisdiction does not exist either. The only contacts that count towards specific jurisdiction are those that play an operative role in a plaintiff's case. Here, the complaint's only operative jurisdictional fact is the prediction that, in the future, the Defendants will publish a passive website providing generalized computer files to anyone in the world that wishes to visit. Even if that future conduct had occurred already (it has not, which is a jurisdictional problem of its own), it would not meet the test for specific jurisdiction for at least two sets of reasons.

First, under the leading precedent about websites in particular, *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), jurisdiction does not exist where, as here, a website does "little more than make information available to those who are interested in it." *Id.* at 1124.

3

Second, specific jurisdiction does not exist because this suit tries to do precisely what *Walden v. Fiore*, 571 U.S. 277 (2014), disallowed.  It tries to establish specific jurisdiction with something other than "contacts that the 'defendant *himself*' creates"; and it contradicts the rule that "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 284–85.  The Defendants can be only be sued at home, in Texas, which is precisely where they have asked for the case to be transferred.

Procedurally, the Court does not have to address jurisdiction before venue.  So long as the merits are avoided, the jurisdictional and venue decisions can be sequenced however the Court deems appropriate.  *See Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 430–31 (2007); *In re: Howmedica Osteonics Corp.*, 867 F.3d 390, 404 n.8 (3d Cir. 2017) ("[The Court] has discretion to address convenience-based venue issues first under *Sinochem*.").

Hence, Defendants submit that the Court should resolve the motion to change venue first.  Doing so would advance the Court's interest in judicial economy. If the motion to change venue is granted, then the motion to dismiss for lack of personal jurisdiction need not be resolved because the Western District of Texas's Austin Division has personal jurisdiction over the Defendants.  The motion to change venue is therefore both easy to decide on its own and relatively easier to decide than jurisdiction.  It ought to be decided first and ought to be granted.

4

**Statement of the Case**

For this motion's purposes, the facts are those set forth by the complaint (plus a few uncontroversial subjects of judicial notice). *See, e.g.*, *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). The complaint was originally filed in a state court and resides in the docket as an exhibit to the notice of removal. ECF No. 1-2 at 1–22 (hereinafter "Compl.").

**I.    Facts.**

**A.    "CAD files" are computer files, not firearms.**

"Computer Aided Design" files play an important role in the process of creating objects with 3D printing technologies. *See* Compl. ¶ 1. But CAD files are by no means a panacea. Many separate technologies play a role in the process, and all must be directed by an individual according to their personal design decisions. This is true with respect to 3D printing in general, and it is also true with respect to the process of 3D printing what is at issue here: firearms components.

The speech at issue in this action includes CAD files and .txt files with notes, instructions, and comments. *See* Amicus Brief of Electronic Frontier Foundation in *Defense Distributed, et al. v. United States Department of State, et al.*, No. 15-50759 (5th Cir.), 2015 WL 9267338, at 10-11. The information contained in the CAD files describes the shape and sometimes the physical makeup of three-dimensional objects. *See id.* To create a physical object based on a CAD file, a third party must, among other steps, supply additional software to read the files and translate them into the motions of a 3D print head, the 3D printer itself, and the necessary physical materials. The files are not functional software that can be run, launch or executed. *Id.* at 11. Rather, they are storage files for text, images, and three-dimensional shapes, having functional consequences only after a third party interprets and implements them with software, hardware (such as a 3D printer), and raw materials. *Id.*

5

The complaint does not deny this. It does *not* plead that, even for those with a 3D printer, CAD files create firearms automatically. The idea of such a *fait accompli* is technologically false.

Rather, the complaint tacitly acknowledges that CAD files play a limited role in the overall, multi-stage process of creating firearms with 3D printing technologies. It alleges that CAD files are "for" the process, and that they "enable" the process. *Id.* ¶¶ 1, 3, 14, 15. But CAD files are not alleged to encompass the entire process itself. The full method of creating a firearm with 3D printing technologies entails many other digital, mechanical, and personal steps that are not at issue in this case because the complaint ignores them.

**B.    The Defendants reside in Texas and publish a website from Texas.**

Defense Distributed is a Texas non-profit corporation headquartered in Austin. Compl. ¶¶ 6, 10. It engages in the research, design, development, and manufacture of firearms products and services. *Id.* ¶ 10. Defense Distributed's founder is Cody Wilson. *Id.* ¶¶ 1, 12.

Not all of Defense Distributed's work is at issue here. Its research work, design work, and development work are not at issue. The complaint refers to machines that Defense Distributed manufactures and sells, *id.* ¶ 19, but they play no operative role in the causes of action. The only activity at issue here is Defense Distributed's publication of information on a website.

Defense Distributed's activities include the publication of websites addressed as defdist.org and defcad.com. *See* Compl. ¶¶ 10, 16; Wilson Decl. ¶ 3. From time to time, these websites have published information about firearms, including CAD files. The information is not customized for any given visitor; it is generalized and made available to all on equal terms. *See* Compl. ¶ 46.

6

Defense Distributed's first relevant act of publication via a website occurred in 2012. That year, a Defense Distributed website published into the public domain a number of CAD files related to firearms. *Id.* ¶¶ 1, 13. Then began the first in long line of related legal disputes.

## II.   Procedural posture.

Taking judicial notice of other federal dockets is appropriate. *Orabi v. Attorney Gen. of the U.S.*, 738 F.3d 535, 537 n.1 (3d Cir. 2014). The Court should do so here with respect to several ongoing federal actions in other courts that concern this same controversy. In relation to these cases, the instant action is not at the litigation's leading edge. Far from it. This is just one minor branch of a dispute whose real roots lie in other actions that are pending before other federal courts.

### A.   Because of *Defense Distributed I*, the federal government approved of the Defendants' publication of the files at issue.

The United States of America—specifically, the Department of State—used to take the position that Defense Distributed could not publish certain files concerning firearms without first obtaining a license under the Arms Export Control Act, 22 U.S.C. ch. 39, and the administrative scheme implementing that statute, the International Traffic in Arms Regulation, 22 C.F.R. parts 120–130. *See* Compl. ¶¶ 2, 3, 22–23. The litigation challenging that position gives rise to this case.

"*Defense Distributed I*" stands for a lawsuit that Defense Distributed and others brought against the relevant State Department officials in the United States District Court for the Western District of Texas. *See id.* ¶ 2. In that litigation, Defense Distributed argues that the United States Constitution protects its right to publish (and the public's right to receive) certain computer files via the Internet notwithstanding the State Department's Arms Export Control Act licensing regime. *See id.* ¶ 2, 25–26. The federal government has not prevailed in *Defense Distributed I*. Instead, it stopped litigating against the constitutional arguments and settled the matter. *Id.* ¶ 30.

The United States of America no longer takes the position that the Defendants lack the federal preclearance needed publish the files at issue in *Defense Distributed I*. *Id.* ¶¶ 2–3. Instead, the State Department has officially "decided to allow Defense Distributed to move forward with its plans to share these computer codes on the Internet." *Id.*

The settlement agreement between Defense Distributed and the State Department is "approved" and its terms are known. *Id.* ¶ 30. Among other things, it requires the federal government to issue Defense Distributed a license pursuant to 22 C.F.R. § 125.4(b)(13) authorizing it to publish, for unlimited distribution, certain "technical data" that was subject to litigation there. Compl. ¶ 31. It also requires the State Department to temporarily modify part of the State Department's regulatory scheme so as to definitely "exclude" the files at issue from the challenged regime. *Id.* And it requires the Federal Government to acknowledge that those actions "permit[] 'any United States person' 'to access, discuss, use, reproduce, or otherwise benefit from the technical data' that is the subject of [that] litigation." *Id.*

By July of 2018, the State Department had successfully carried out the settlement process's key steps. It had issued Defense Distributed the publication license, temporarily modified the ITAR regulations, and acknowledged that those steps permitted "any United States person" to receive, publish, and use the computer files at issue. *Id.* The State Department also agreed to pay certain of Defense Distributed's attorney's fees and costs. *Id.*

Thus, Defense Distributed decided to utilize the license and other matters that the State Department had provided in accordance with *Defense Distributed I*'s settlement. *Id.* ¶ 33. In late July, a Defense Distributed website announced that certain files would become available beginning August 1, 2018. *Id.* ¶ 32. But in fact, because the State Department's key authorizing actions had taken place well before August 1, so had publication. On July 27, 2018, Defense Distributed's

8

website published into the public domain a number of CAD files covered by the State Department's authorizations.  *See id.* ¶ 18; Ex. E at 22 ("Defense Distributed posted them . . . on July 27, 2018, as soon as the temporary modification and authorizing letter were issued, but took them down when [a] temporary restraining order . . . [was] entered.").

**B.**   **Plaintiff and others took action directly against Defense Distributed, causing the initiation of *Defense Distributed II*.**

New Jersey's Attorney General immediately opposed the State Department's settlement of *Defense Distributed I* and took the position that Defense Distributed had no right to publish the files at issue.  Compl. ¶¶ 49–50.  Despite the constitutional interests at play, the Attorney General commanded Defense Distributed to cease-and-desist its publication of the files at issue in *Defense Distributed I*.  *Id.*  Other states' officials did the same thing.  *See id.* ¶¶ 54, 58.

"*Defense Distributed II*" stands for the next lawsuit in the United States District Court for the Western District of Texas.  *See* Ex. B.  Defense Distributed brought this action against the Attorney General of New Jersey and the officials from other states that had threatened to punish Defense Distributed for taking advantage of the *Defense Distributed I* result.  *See* Compl. ¶¶ 54-57.  Pursuant to 42 U.S.C. § 1983, the action in *Defense Distributed II* seeks to stop New Jersey's Attorney General and similar state officials from upending the settlement of *Defense Distributed I* and violating Defense Distributed's federal right to publish the files at issue in that case.  *Id.*

**C.**   **The District Court for the Western District of Washington issued a nationwide injunction stopping the result of *Defense Distributed I*.**

*State of Washington, et al., v. United States Department of State, et al.*, No. C18-1115RSL (W.D. Wash.) (Lasnik, J.), is yet another important related action.  *See* Ex. C.  On July 30, 2018, a group of states that included New Jersey sued both the State Department and Defense Distributed in the Western District of Washington.  *Id.*  The suit sought a nationwide injunction barring the

State Department from performing its obligations under the settlement agreement.  *See* Ex. E.

Defense Distributed opposed the States' injunction request and defended the settlement agreement's actions as perfectly lawful. *See id.*  Critically, so did the State Department.  Like Defense Distributed, it too opposed the injunction and defended the settlement agreement.  *See Id.*

Nevertheless, on July 31, 2018, the Western District of Washington issued a nationwide temporary restraining order enjoining the State Department from fulfilling its obligations under the settlement agreement.  Ex. E at 6.  And on August 27, 2018, it issued a preliminary injunction that, like the TRO, stops the fulfillment of *Defense Distributed I*'s settlement obligations:

> For all of the foregoing reasons, plaintiffs' motion for a preliminary injunction is GRANTED. The federal defendants and all of their respective officers, agents, and employees are hereby enjoined from implementing or enforcing the "Temporary Modification of Category I of the United States Munitions List" and the letter to Cody R. Wilson, Defense Distributed, and the Second Amendment Foundation issued by the U.S. Department of State on July 27, 2018, and shall preserve the status quo ex ante as if the modification had not occurred and the letter had not been issued until further order of the Court.

*Washington v. United States Dep't of State*, No. C18-1115RSL, 2018 WL 4057006, at *11 (W.D. Wash. 2018) (Ex. E at 25).  As of September 4, 2018, that injunction remains in effect.  *See* Ex. C.

**D.      This lawsuit follows in the footsteps of *Defense Distributed I*, *Defense Distributed II*, and the Western District of Washington litigation.**

This action was originally filed in a New Jersey Superior Court on July 30, 2018.  Compl. at 1.  The Defendants timely removed it to this Court on August 27, 2018.  ECF No. 1.

The sole plaintiff is the Attorney General of New Jersey, who is suing on behalf of the New Jersey public at-large.  Compl. ¶ 5.  The defendants are Defense Distributed and Cody Wilson.  *Id.* ¶¶ 6-7.  Unless otherwise specified, further references to "Defendants" and "Defense Distributed"

10

include both Defense Distributed and Mr. Wilson.[1]

The complaint pleads two causes of action. It calls one a New Jersey tort action for "public nuisance" and the other a New Jersey tort action for "negligence." *Id*. ¶ 3.

No past conduct is at issue. The suit complains only of conduct that, as of its July 30, 2018 filing date, had not occurred yet. *E.g.*, *id*. ¶ 1. The so-called "public nuisance" action is about what "will" supposedly occur in the future and so is the so-called "negligence" action. *Id*. ¶¶ 60-64, 66–69. As relief, the complaint requests an injunction stopping Defense Distributed's website from publishing certain files to New Jersey residents. *Id*. at 20.

Chronologically, this case began long after *Defense Distributed I*, the Texas action involving Defense Distributed and the State Department that began in 2015. *See* Compl. ¶¶ 24–31. It also began after *Defense Distributed II*, the Section 1983 case against the Attorney General of New Jersey and similar officials from other states. *See id*. ¶ 54. This case is also behind the Western District of Washington litigation. *See* Ex. C. Both complaints were filed on July 30. But whereas the state court here has issued no temporary restraining order[2] or preliminary injunction, the Western District of Washington did both already. Ex. C.

---

[1] In addition to Defense Distributed and Mr. Wilson, the Attorney General sued twenty fictitious "John and Jane Does" and twenty fictitious "XYZ Corporations." Compl. ¶¶ 8–9. Defense Distributed and Mr. Wilson take no position about those fictions and use the terms "Defendants" and "Defense Distributed" to mean only Defense Distributed and Mr. Wilson.

[2] The Plaintiff asked the state court to issue a temporary restraining order. ECF No. 1-2 at 26–27. But the state court refused to do so, ECF No. 1-3 at 127–33, opting instead to issue a procedural order setting a briefing schedule and date for a hearing about a preliminary injunction. *Id.* at 128. The last action taken by the state court was to alter the preliminary injunction briefing and hearing schedule. *Id*. at 145.

A final note about the procedural posture warrants emphasis. The Attorney General's complaint repeatedly emphasized a consequence of letting any website publish the kind of files at issue. He says that "posting these codes is a bell that can never be un-rung," ECF No. 1-2 at 53, and that once someone is allowed to "open that Pandora's Box, it can never be closed." Compl. ¶ 1. But if what the Attorney General posits is true, this case can do no good at all.

The very same information that the Attorney General is suing these two Defendants about has already been repeatedly and irrevocably published into the public Internet domain. This was done both by the Defendants' website (when it was undoubtedly legal) and by multiple third-parties that play no role in any lawsuit and continue to publish the files to this day. The complaint itself acknowledges part of this, *id*. ¶¶ 16, 18, and the documents attached to the complaint do so as well, ECF No. 1-3 at 36–37, 98, 121; *see also* Compl. at 22 (incorporating attached documents). Eventually, this reality is going to fully set in and warrant ending this action. *Cf. Washington v. United States Dep't of State*, No. C18-1115RSL, 2018 WL 4057006 (W.D. Wash. 2018) ("Regulation under the AECA means that the files cannot be uploaded to the internet, but they can be emailed, mailed, securely transmitted, or otherwise published within the United States.").

**Argument**

**I.      The action should be transferred to where the other two key cases are pending: Texas.**

Defense Distributed moves for an order transferring venue from this Court to the United States District Court for the Western District of Texas, Austin Division.  The statute authorizing the transfer is 28 U.S.C. § 1404, which grants the authority to change venue for the "convenience of parties and witnesses" and the "interest of justice":

> (a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a); *see generally* 15 Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure: Jurisdiction & Related Matters §§ 3841–3855 (4th ed. West 2018) (hereinafter Wright & Miller).  The Western District of Texas's Austin Division is where this case might have been brought.  And according to virtually all of the Section 1404(a) factors, both private and public, that is the venue that it ought to end up in—alongside the two keystone federal cases pending before Judge Pitman that involve both the entire array of issues and all of the stakeholders.

**A.      This action might have been brought in the Western District of Texas.**

Section 1404(a) gives the Court the authority to transfer this action to "any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The Western District of Texas's Austin Division meets that test.

First, this suit might have been brought in the Western District of Texas's Austin Division under 28 U.S.C. § 1391(b)(1): "A civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."  28 U.S.C. § 1391(b)(1).  That is the case here because both Defense Distributed and Mr. Wilson reside in Austin.  *See* Compl. ¶¶ 6, 7, 10;   Wilson Decl. ¶¶ 1-3, 5-6.; *see also* 28 U.S.C. §

1391(c)(2) ("[A]n entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question.").

Second, this suit might have been brought in the Western District of Texas's Austin Division under 28 U.S.C. § 1391(b)(2): "A civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). That is the case here because Austin is where key events such as the Defendants' website publication have always occurred. *See* Compl. ¶ 10; Wilson Decl. ¶¶ 2-3.

Not only *might* Plaintiff have filed its claims in Texas, Rule 13 *required* Plaintiff to file them there as compulsory counterclaims. *See* Fed. R. Civ. P. 13(a)(1); *Vukich v. Nationwide Mut. Ins. Co.*, 68 Fed. Appx. 317, 319 (3d Cir. 2003) ("the relevant inquiry is whether the counterclaim bears a logical relationship to an opposing party's claim"). In these circumstances, courts regularly hold that transfer to the venue of the first-filed action is proper. *See, e.g.*, *Adam v. Jacobs*, 950 F.2d 89, 94 (2d Cir. 1991) (holding that district court erred in failing to dismiss or transfer an action that constituted a compulsory counterclaim in an earlier-filed action); *Bell Tel. Labs., Inc. v. Int'l Bus. Machines Corp.*, 630 F. Supp. 373, 379 (D. Del. 1984) ("When a party violates Rule 13(a) by bringing a second action rather than filing a compulsory counterclaim in the first action, normally, the first suit should have priority, absent a showing of a balance of convenience in favor of the second action.") (brackets omitted); *Avaya, Inc. v. Mitel Networks Corp.*, 460 F. Supp. 2d 690, 691 (E.D. Va. 2006) ("[T]ransfer would be in the interest of justice because Mitel's claims are compulsory counterclaims in the [first-filed] New Jersey suit."). Thus, the "plaintiff's forum

14

choice is. . . inoperative in a later-filed action" where, as here, "the plaintiff's claims would constitute compulsory counterclaims in the defendant's earlier-filed action." *SW Indus., Inc. v. Aetna Cas. & Sur. Co.*, 653 F. Supp. 631, 637 (D.R.I. 1987).

### B.      Public factors favor transferring the case to Texas.

The "public factors" to be analyzed under Section 1404(a) "encompass the statutory consideration of the interest of justice." Wright & Miller § 3847.  They "focus on judicial economy and often include the district court's familiarity with the governing law, the local interest in deciding local controversies at home, and the relative congestion of the courts." *Id.*  They also include matters like "the enforceability of the judgment" and "practical considerations that could make the trial easy, expeditious, or inexpensive." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995).  Here, all of the relevant public factors weigh heavily in favor transferring this action to Texas.

First and foremost is the overall interest in judicial economy, which supplies an extraordinarily compelling reason to change the venue of this case. *See, e.g.*, *Cont'l Grain Co. v. Barge FBL–585*, 364 U.S. 19, 26 (1960); *CIBC World Mkts. v. Deutsche Bank Sec., Inc.*, 309 F. Supp. 2d 637, 651 (D. N.J. 2004).  Transferring this action to the Western District of Texas's Austin Division puts it before the very same court that is handling two actions that are very closely related to it: The *Defense Distributed I* case involving State Department, and the *Defense Distributed II* case involving the Section 1983 claims against New Jersey and other states.

Because these three cases entail a great many overlapping facts and legal principles, principles of judicial economy call for them to be handled together. "The economic waste involved in duplicating litigation is obvious." *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 930 (3d Cir. 1941). "Equally important is its adverse effect upon the prompt and efficient administration of

justice." *Id.* Another important consideration of judicial economy is the avoidance of "conflicting judgments, and unnecessary friction between courts." *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 220 (3d Cir. 2016) (en banc). Transferring this action advances all of these interests.

A transfer would especially enhance judicial economy here because the factual tasks entail the mastery of cutting-edge technologies. Judge Pitman can do that most efficiently because he has been doing so in *Defense Distributed I* for three years.

A transfer would also especially enhance judicial economy here because the legal issues involve matters of law that might entail deference to the President's view of foreign affairs, *see, e.g.*, *Holder v. Humanitarian Law Project*, 561 U.S. 1, 33 (2010), and/or the meaning of federal statutes and regulations, *see, e.g.*, *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). Judge Pitman can receive the President's views directly because the State Department is a party to the *Defense Distributed I* litigation that remains pending in his court. Others can only speculate.

With a transfer, gains in judicial efficiency would not be limited to federal issues at hand. The state aspect of this dispute would benefit too. In *Defense Distributed II*, Judge Pitman will be resolving the issue of whether, notwithstanding Defense Distributed's perfectly valid federal authorization to engage in the speech at issue, states that oppose its viewpoint can circumvent the First Amendment by citing tort laws like "nuisance." That action includes all of the parties to this case *plus others* (both defendants and plaintiffs), making it a far more productive use of jurisdictional resources than the piecemeal litigation this independent action currently entails.

More importantly, *Defense Distributed II* was filed first. The order of events is clear. On July 26, 2018, the New Jersey Attorney General issued a cease-and-desist letter to Defense Distributed threatening to "bring legal action" if Defense Distributed shared certain files on the internet. Compl. ¶ 50. Three days later, on July 29, 2018, Defense Distributed sued the New

16

Jersey Attorney General (and others) in the United States District Court for the Western District of Texas. *See* Ex. B. The complaint alleged that the Attorney General's threatened legal action would violate the First Amendment, the Second Amendment, the Commerce Clause, and other laws. *Id.* at 4-20. The next day (July 30, 2018), the Attorney General filed this suit and sought ex parte temporary restraints to prohibit Defense Distributed from posting certain files on the internet. ECF No. 1-2 at 1. (By that point, Defense Distributed had already shared the files on the internet). Later that same day (July 30, 2018), New Jersey, and several others states, filed another complaint against Defense Distributed, this time in the United States District Court for the Western District of Washington. *See* Ex. C. This chronology illustrates, with precision, why venue in this Court should not be sustained: Defense Distributed was the first-to-file and did so properly in the United States District Court for the Western District of Texas.

Third Circuit precedent has long held that in "all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941) (quoting *Smith v. McIver*, 22 U.S. (9 Wheat.) 532 (1824)). Under this rule, district courts are counseled to "exercise their discretion by enjoining the subsequent prosecution of 'similar cases . . . in different federal district courts.'" *EEOC v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988) (citations omitted). Here, the doctrine is implicated by very substantial overlap between the later-filed action in this Court and the earlier-filed actions in the Western District of Texas. *See Maximum Human Performance, Inc. v. Dymatize Enterprises, Inc.*, No. CIV.A. 09-235(PGS), 2009 WL 2778104, at *3 (D.N.J. Aug. 27, 2009), *report and recommendation adopted*, No. CIV.A 09-235(PGS), 2009 WL 2952034 (D.N.J. Sept. 14, 2009). Both cases implicate whether the New Jersey Attorney General's threatened legal action violates the First Amendment, the Second Amendment, the Commerce Clause, and other laws.

17

If the application of the first-filed rule does not compel an outright dismissal or stay (it does for the reasons just articulated), then at a minimum, this action's status as the later of two duplicative controversies means that its venue should at least be changed to that of the first-filed action. *See Chavez*, 836 F.3d at 216–21; *E.E.O.C. v. Univ. of Penn.*, 850 F.2d 969, 971 (3d Cir. 1988); *Crosley*, 122 F.2d at 320.

Indeed, there are not just one but *two* sets of duplicative litigation going on here. New Jersey and other states are trying to duplicate the *Defense Distributed I* controversy vis-à-vis the State Department in the Western District of Washington's action, and at the same time, New Jersey is trying to duplicate *Defense Distributed II* vis-à-vis Defense Distributed in this action. Both of New Jersey's efforts are tardy. In both instances, the "first" party to properly initiate litigation was Defense Distributed and the first court of competent jurisdiction to take up the matter was the United States District Court for the Western District of Texas. The same first-filed principles that probably call for dismissal or a stay of this action definitely call for changing its venue to Texas.

Next, this is a case in which "it conserves judicial resources, and furthers the interests of the parties, to transfer a case from a forum in which there is a difficult question of personal jurisdiction or venue to a district in which there are no such uncertainties." Wright & Miller § 3854 & n.35. Third Circuit precedent accounts for this in terms of "enforceability of the Court's judgment," *Jumara*, 55 F.3d at 879, and it is very much implicated by the other main issue presented by this motion—a serious challenge to the exercise of specific personal jurisdiction over the Defendants that exists only so long as this case remains in New Jersey. This is another clear reason to change venue. *See Gregory v. HMSHost Family Restaurants, Inc.*, Civ. Ac. No. 09-6132 (SDW), 2010 WL 2015255, at *4 (D. N.J. May 20, 2010), *report and recommendation adopted*, Civ. Ac. No. 09-6132 (SDW), 2010 WL 2557546 (D. N.J. June 23, 2010).

18

Finally, the "level of congestion" in the District of New Jersey as compared to the Western District of Texas also favors transfer. *See Jumara*, 55 F.3d at 879. For the twelve-month period ending June 30, 2018, the Western District of Texas received two hundred and sixty-six civil case filings per judge, making it the sixty-first busiest civil docket in the country. Ex. F at 37 (*United States District Courts National Judicial Caseload Profile* (June 2018), available at http://www.uscourts.gov/statistics-reports/analysis-reports/federal-court-management-statistics). Meanwhile, the District of New Jersey received one thousand two hundred and eighty civil case filings per judge, making it the busiest court in the Third Circuit and the second busiest civil docket in the country. *Id.* at 15. This factor favors a transfer to the Western District of Texas.

### C. Private factors favor transferring the case to Texas.

The "private factors" under Section 1404(a) account for the "statutory considerations of convenience of the parties and witnesses," and include the "ease of access to sources of proof" and each side's forum preference. Wright & Miller § 3847; *accord Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). Here, none of the private factors play as substantial a role as the public factors do. But for what they are worth, the private factors clearly point in favor of transfer.

Considerations of "convenience of the parties and witnesses" point in favor of transfer. To be sure, the chances are low that this case will entail many evidentiary hearings with fact witnesses and the possibility of things like technical demonstrations. But to the extent that it does, the Western District of Texas is the far more convenient venue because of its proximity to Defense Distributed's Austin headquarters. *See* Wilson Decl. ¶ 4.

Indeed, the Western District of Texas's Austin Division is the Defendants' preferred venue. *Id.* Considerations of convenience and the interests of justice motivated Defense Distributed to file *Defense Distributed I* there three years ago, those same considerations motivated it to initiate

19

*Defense Distributed II* there as well. This genuine, deep-seated preference points in favor of a transfer. *See Jumara*, 55 F.3d at 879. The Attorney General of New Jersey might prefer this case's present venue. But that does not trump the force of so many other factors for several reasons.

First, the Attorney General's preference is not controlling because it is weak, and maybe even nonexistent. In this respect, the Attorney General's actions speak louder than words. By initiating this case in state court, the Attorney General undermined the notion that this particular federal venue matters a great deal; and by going along with a score of other states to sue Defense Distributed on the other side of the country (the Western District of Washington) the Attorney General has again shown that the need for a nearby venue is of little concern to him.

Second, even if the Attorney General of New Jersey had a strong preference for this venue, the law would instruct the Court to apply a discount because of the Attorney General's superior access to litigating resources. *See Maliki v. Holy Redeemer Hosp.*, Civ. Ac. No. CV-151591-KSH-CLW, 2016 WL 4161094, at *2 (D. N.J. Aug. 5, 2016).

Third, "where the plaintiff seeks to vindicate rights of others the plaintiff's venue preference is weakened." Wright & Miller § 3848. That is the case here because the Attorney General sues not in any direct way, but "on behalf of the residents of New Jersey." Compl. ¶ 5.

Finally, a procedural technicality about the removed posture of this case warrants attention. The Defendants here are seeking a Section 1404(a) *change* of venue—not a dismissal for *improper* venue—and the reason for that is important. If New Jersey had sued the Defendants in this Court originally, venue would have been "improper" (because none of the § 1391(b) conditions exist) and the Defendants definitely would have obtained a mandatory dismissal under Rule 12(b)(3). *See Dapuzzo v. Anderson*, Civ. Ac. No. 14-6107 FLW D, 2015 WL 1268317, at *2 (D. N.J. Mar. 18, 2015). But because New Jersey started this action in a state court, the Defendants had no

20

choice but to remove it to this Court, which under the removal rules is technically proper. *See id.* So while it is true that venue here is not technically "improper," *id.*, that point should not carry the weight that would if it least one of Section 1391(b)'s venue conditions had actually been met.

In any event, the Section 1404(a) principles governing change of venue are not overly concerned with a plaintiff's ability to choose their preferred forum, be it by the use of a removal loophole or otherwise. Notwithstanding the plaintiff's preference, "when the Section 1404(a) factors—the convenience of the parties and witnesses and the interest of justice—convince the court that another proper venue is the 'center of gravity' for the dispute, transfer is appropriate." Wright & Miller § 3841 & n.7. Texas is this case's "center of gravity" and should be its venue.

## II.    The action should be dismissed for want of personal jurisdiction.

Defendants move to dismiss this action for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(3). Procedurally, plaintiffs bear the burden of both pleading facts that suffice to establish personal jurisdiction and, when challenged, proving them up. *See, e.g.*, *Metcalfe*, 566 F.3dat 330. Dismissal is warranted here because the Plaintiff has not pleaded facts that establish jurisdiction, nor could he prove them up with evidence.

"A federal court sitting in New Jersey has jurisdiction over the parties to the extent provided under New Jersey state law, and New Jersey law provides for personal jurisdiction coextensive with that allowed by the United States Constitution." *FlagHouse, Inc. v. ProSource Dev., Inc.*, 528 F. App'x 186, 188–89 (3d Cir. 2013). But under the Due Process Clause, the minimum contacts of both general and specific personal jurisdiction are absent here.

21

### A.      General jurisdiction's minimum contacts do not exist.

General personal jurisdiction exists only if a defendant's forum contacts are so "continuous and systematic" that it can said to be "at home" there.  *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014).  No serious case for general jurisdiction can be made here.

Defense Distributed (a Texas non-profit corporation) and Mr. Wilson reside in Texas and do their work there.  Compl. ¶¶ 1, 6, 10, 12; Wilson Decl. ¶¶ 1-3, 6.  The complaint alleges no physical contact with New Jersey whatsoever.  Defense Distributed is "at home" only in Texas, and so is Mr. Wilson.  *Daimler*, 571 U.S. at 122; Wilson Decl. ¶¶ 1-3, 6.  It is true that, according to the complaint, New Jersey residents have from time to time used the Internet to access a website that the Defendants publish from Texas.  Compl. ¶¶ 46, 60–61, 67.  But as a matter of law, that does not entail the kind of "continuous and systematic" contacts required of general jurisdiction.  *See Rakoff v. St. Clair, CPAs, P.C.*, CIV.A. 12-5996 JEI, 2013 WL 1007330, at *7 (D. N.J. Mar. 12, 2013); *Nationwide Contractor Audit Serv., Inc. v. Nat'l Compliance Mgmt. Services, Inc.*, 622 F. Supp. 2d 276, 292 & n.7 (W.D. Pa. 2008).  No general jurisdiction exists.

### B.      Specific jurisdiction's minimum contacts do not exist.

Specific personal jurisdiction exists only if the action arises out of conduct that constitutes a defendant's purposeful availment of the forum itself.  *E.g.*, *Walden v. Fiore*, 571 U.S. 277, 284 (2014).  In light of this action's very limited operative facts, specific jurisdiction does not exist.

According to the complaint, Plaintiff's suit arises from the alleged fact that the Defendants will, in the near future, publish from Texas an essentially-passive website that makes certain computer files accessible to "anyone anywhere."  ECF No. 1-2 at 16, ¶ 37.  Apart from that, the complaint alleges nothing else.  The Plaintiff has not, for example, pleaded any of the more familiar kinds of contacts that could contribute specific jurisdiction, such as "serial business trips to the

forum state, telephone and fax communications directed to the forum state, purchase contracts with forum state residents, contracts that apply the law of the forum state, and advertisements in local newspapers." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir. 2003).

This sets up a simple inquiry. The Plaintiff's ability to sustain personal jurisdiction therefore rises or falls on nothing but the allegation that Defense Distributed will, at a point in the future, publish a set of computer files to a website that people in New Jersey can navigate to if they so choose. That does not meet the specific jurisdiction threshold for several reasons.

### i. Precedent specific to websites dispels specific jurisdiction here.

Several separate lines of precedent show why New Jersey's website allegations do not establish specific jurisdiction. The first is a website-specific body of law originating in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997) (accepted as Third Circuit law by *Toys "R" Us*, 318 F.3d at 452).

*Zippo* sets forth a generally-accurate rule of thumb: The "propriety of exercising jurisdiction depends on where on a sliding scale of commercial interactivity the web site falls." *Toys "R" Us*, 318 F.3d at 452. Jurisdiction is most likely to exist if "the defendant is clearly doing business through its web site in the forum state" and least likely to exist if the "defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions." *Zippo*, 952 F. Supp. at 1124. For mixed cases—"interactive Web sites where a user can exchange information with the host"—jurisdiction turns on "the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Id.*

Under that view, jurisdiction does not exist here because Defense Distributed's website is an essentially passive one. This is according to the complaint, which alleges that Defense Distributed plans to publish "CAD files, without restriction, on the Internet," and acknowledges

that the website "serve[s] as an open-source repository for weapons designs." Compl. ¶¶ 13, 16. This kind of website does no more than "make information available to those who are interested in it," which is the very definition of a "passive" site that does *not* trigger jurisdiction. *Zippo*, 952 F. Supp. at 1124.

That a user must input an email address to access certain information via Defense Distributed's website, Compl. ¶ 46, does not render the site any less "passive." This is established by analogous precedents holding that sites more interactive than Defense Distributed's qualify for treatment as "passive." *See Ackourey v. Sonellas Custom Tailors*, 573 Fed. Appx. 208 (3d Cir. 2014) (holding that site was "essentially passive" where, in addition to advertising, it also "allow[ed] potential customers to email requests for appointments"); *Morilla v. Laser Spine Inst., LLC*, 2:10-CV-01882 WHW, 2010 WL 3258312, at *5 (D. N.J. Aug. 16, 2010) ("A website that has only information and a generic contact information input form falls at the passive end of the Zippo scale."); *Pinninti v. NRI Med. Coll. (NRIAS)*, No. 09-5356MLC, 2010 WL 2483992, at *7 (D.N.J. June 4, 2010) (holding that college's website was passive where it permitted users "to download the Application for Admission").

Alternatively, even if Defense Distributed's website were considered "commercially interactive" under *Zippo*, specific jurisdiction would still not exist because more "purposeful availment" than just the website's maintenance must be shown. *See Toys "R" Us*, 318 F.3d at 454 ("the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world"). Namely, the Plaintiff would have to *also* establish that the Defendants "conduct[ed] activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts." *Id.* That cannot be done here, for the record is devoid of any such suggestion.

24

Instead, the complaint alleges that this website's target audience consists of the *entire world*. Compl. ¶ 37 ("The database will be available to anyone anywhere in the world with an uncensored internet connection."). This defeats the idea of New Jersey residents being the "target audience" or subject of its "knowing[] interact[ions]." *See Toys "R" Us*, 318 F.3d at 454; *Patchen v. McGuire*, No. 11-5388, 2012 WL 4473233, at *5 (E.D. Pa. Sept. 27, 2012); *Hershey Co. v. Pagosa Candy Co.*, 1:07-CV-1363, 2008 WL 1730538, at *7 (M.D. Pa. Apr. 10, 2008); *S. Morantz, Inc. v. Hang & Shine Ultrasonics, Inc.*, 79 F. Supp. 2d 537, 542 (E.D. Pa. 1999).[3]

### ii.     Supreme Court precedent dispels specific jurisdiction here.

Even if the Plaintiff's assertion of specific jurisdiction could survive *Zippo*, the same could not be said of *Walden v. Fiore*, 571 U.S. 277 (2014). Two of the rules that *Walden* employed make it impossible for specific jurisdiction to be upheld in this case.

First, *Walden* makes specific jurisdiction impossible to sustain here by reaffirming a longstanding rule about whose contacts matter: Contacts count towards purposeful availment only if they are created by the "defendant *himself*"—not if they are created by "plaintiffs or third parties." *Walden*, 571 U.S. at 284. The Plaintiff's case for jurisdiction violates this rule because the only New Jersey connections that it can muster belong to the third parties who choose to access the website files on their accord (not to mention the act of *using* those files, which is done totally independently of the Defendants).

---

[3] Furthermore, even if New Jersey residents had downloaded the files at issue, Plaintiff would still need to show that the Defendants *acquiesced* to those downloads. *See Food Scis. Corp. v. Nagler*, No. 09-1798 (JBS), 2010 WL 1186203, at *1 (D.N.J. Mar. 22, 2010); *Toys "R" Us*, 318 F.3d at 454. But this record suggests the exact opposite by pleading that Defendants voluntarily decided to *block* New Jersey residents from downloading the CAD files at issue. Compl. ¶ 51.

25

Indeed, the contrary conclusion would contradict not just *Walden*, but also *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980). By relying on the keystone fact that "Defendants know or should know that the publication of the printable-gun computer files will bring illegal firearms into existence in New Jersey," Compl. ¶ 61, the Plaintiff's case depends upon nothing but "foreseeability." "Yet 'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *Word-Wide Volkswagen*, 444 U.S. at 295.

If New Jersey had offered the instant jurisdictional theory with respect to an actual chattel, courts would reject it without hesitation by citing the rule that personal jurisdiction does *not* "travel with the chattel." *Id.* This case is even weaker than that, for it is not about a chattel, but about the informational plans to make a chattel. *See id.* If jurisdiction does *not* "travel with the chattel" itself, jurisdiction cannot possibly travel with a mere conveyance of information about the chattel.

Second, *Walden* makes specific jurisdiction impossible to sustain here by holding that "'minimum contacts' analysis looks to the defendant's contacts with *the forum State itself*, not the defendant's contacts with *persons who reside there*." *Walden*, 571 U.S. at 285. Defense Distributed's website exemplifies this distinction by facilitating the delivery of the files at issue to interested persons *regardless of what state they reside in*. *See* Compl. ¶¶ 10, 37.

Under *Walden*, the critical jurisdictional question is about "whether the *defendant's* actions connect him to the *forum*." *Walden*, 571 U.S. at 285. For these Defendants, the answer is "no."

### iii.    Future contacts cannot support present jurisdiction.

There is also a third independent reason to reject specific jurisdiction here: The contacts that supposedly constitute purposeful availment have not occurred. The suit is *not* about a website that the Defendants maintain currently. The suit is about a website that the Plaintiff *predicts* the Defendants will maintain in the future. If specific jurisdiction could ever exist, it would only arise

26

if and when the Defendants engage in the course of conduct that the Plaintiff predicts that they will take part in. But because they have not done so *yet*, specific jurisdiction does not exist *yet*.

The need for *actual* acts of purposeful availment is not just an unspoken assumption. It lies at the heart of what the Supreme Court repeatedly holds. "Due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Walden* , 571 U.S. at 284. *Once* personal jurisdiction attaches, the use of flexible procedural devices like prospective injunctions about predicted future conduct can be sometimes proper. But at inception—when courts are determining whether jurisdiction exists in the first place—the Due Process Clause's stricter demands limit the inquiry to an examination of conduct that has actually occurred in fact. *See World-Wide Volkswagen Corp.*, 444 U.S. at 291–92 ("The concept of minimum contacts . . . acts to ensure that the States through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system.").

Accordingly, when precedent speaks of what constitutes true purposeful availment, it always does so in either the present or past tense. Never does is speak of future, hypothetical conduct as sufficing. This was true in *International Shoe* itself, *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) ("due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he *have* certain minimum contacts . . ." (emphasis added)), and has remained true ever since, *see, e.g.*, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) ("the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily *assumed*" (emphasis added)); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) ("due process is not offended by a State's subjecting the

27

corporation to its in personam jurisdiction when there *are* sufficient contacts between the State and the foreign corporation" (emphasis added)); *World-Wide Volkswagen Corp.*, 444 U.S. at 295 ("we find in the record before us a total absence of those affiliating *circumstances that are a necessary predicate* to any exercise of state-court jurisdiction" (emphasis added)); *Hanson v. Denckla*, 357 U.S. 235, 251 (1958) ("a defendant may not be called upon to do so unless he *has had* the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him" (emphasis added)).  Precedent from other courts consistently supports this rule as well.[4]

Hence, unless and until a person actually engages in conduct that constitutes "purposeful availment" of the forum, their liberty interest in being free from unwarranted adjudication remains. For non-residents that *have not in fact* availed themselves of a forum, plaintiffs cannot be allowed to feign their way into an exercise of jurisdiction by alleging that the non-resident is sure to do so *in the future*.  If that does not disable the case as a matter of "minimum contacts," then it must constitute the kind of suit that offends "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 319 (1945) ("[The Due Process Clause] does not contemplate that a state

---

[4] *See Estate of Martinez v. Yavorcik*, 455 F. Supp. 2d 115, 121 n.3 (D. Conn. 2006) ("[P]romises as to future conduct cannot establish personal jurisdiction."); *Home Gambling Network, Inc. v. Betinternet.com, PLC*, 2:05CV 00610 KJD LRL, 2006 WL 1795554, at *5 (D. Nev. June 26, 2006) ("Jurisdiction is not based on the likelihood of some future contact with the forum, but 'the defendant's conduct and connection with the forum state  . . .  such that he should reasonably anticipate being haled into court there.'" (omission in original) (quoting *World-Wide Volkswagen Corp.*, 444 U.S. 286)); *Eli Lilly & Co. v. Nang Kuang Pharm. Co., Ltd.*, No. 1:14-CV-01647-TWP, 2015 WL 3744557, at *1 (S.D. Ind. June 15, 2015) ("[P]ersonal jurisdiction cannot be based on future contacts, even if such contacts are allegedly 'inevitable.'" (quoting *Sys. Software Assocs., Inc. v. Trapp*, No. 95 C 3874, 1995 WL 506058, at *6 (N.D. Ill. Aug.18, 1995)); *Koninklijke Philips N.V. v. Digital Works, Inc.*, 2:13-CV-01341-JAD, 2014 WL 3816395, at *3 (D. Nev. Aug. 4, 2014) (no personal jurisdiction where plaintiffs did "not demonstrate[] that Diaz has had any contacts with Nevada; their jurisdictional basis is one of potential future contacts only").

28

may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations.").

For these reasons, the Plaintiffs cannot establish that the Defendants' relationship with New Jersey crosses the threshold necessary to warrant an exercise specific jurisdiction. If the Court does not decide to transfer this case to Texas, it should dismiss it for lack of personal jurisdiction.

## Conclusion

The Defendants' Motion to Dismiss or Change Venue should be granted.  Preferably, the Court should rule on venue, transfer this action to the United States District Court for the Western District of Texas, Austin Division, and leave the jurisdictional issues unresolved.  Alternatively, the Court should dismiss the action for want of personal jurisdiction and leave the venue issues unresolved.

Date:   September 4, 2018

Respectfully submitted,

HARTMAN & WINNICKI, P.C.

s/ Daniel L. Schmutter
Daniel L. Schmutter
dschmutter@hartmanwinnicki.com
74 Passaic Street
Ridgewood, New Jersey 07450
(201) 967-8040

BECK REDDEN LLP
Chad Flores*
cflores@beckredden.com
Mary Kate Raffetto*
mkraffetto@beckredden.com
Dan Hammond*
dhammond@beckredden.com
1221 McKinney St., Suite 4500
Houston, TX 77010
(713) 951-3700

FARHANG & MEDCOFF
Matthew A. Goldstein*
mgoldstein@fmlaw.com
4801 East Broadway Blvd., Suite 311
Tucson, AZ 85711
(520) 790-5433

*Admission *pro hac vice* pending

Attorneys for Defendants

30