# EXHIBIT B

## U.S. District Court [LIVE]
### Western District of Texas (Austin)
### CIVIL DOCKET FOR CASE #: 1:18-cv-00637-RP

Defense Distributed et al v. Grewal et al
Assigned to: Judge Robert Pitman
Cause: 28:1331 Federal Question: Other Civil Rights

Date Filed: 07/29/2018
Jury Demand: Plaintiff
Nature of Suit: 950 Constitutional - State Statute
Jurisdiction: Federal Question

**Plaintiff**

**Defense Distributed**                    represented by    **Jonathan F. Mitchell**
Mitchell Law PLLC
106 East Sixth Street, Suite 900
Austin, TX 78701
(512) 686-3940
Fax: (512) 686-3941
Email: jonathan@mitchell.law
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mary Kathryn Raffetto**
Beck Redden LLP
1221 McKinney St., Ste. 4500
Houston, TX 77010
713-951-6223
Email: mkraffetto@beckredden.com
*ATTORNEY TO BE NOTICED*

**Joshua Michael Blackman**
Josh Blackman LLC
1303 San Jacinto St.
Houston, TX 77002
202-294-9003
Fax: 713-646-1766
Email: joshblackman@gmail.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Second Amendment Foundation, Inc.**      represented by    **Jonathan F. Mitchell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mary Kathryn Raffetto**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua Michael Blackman**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Gurbir S. Grewal**
*Attorney General of New Jersey, in his official and individual capacities*

**Defendant**

**Michael Feuer**
*City Attorney for Los Angeles, California, in his official and individual capacities*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/29/2018 | 1 | COMPLAINT ( Filing fee $ 400 receipt number 0542-11059998). No Summons requested at this time, filed by Defense Distributed, Second Amendment Foundation, Inc.. (Attachments: # 1 Civil Cover Sheet, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I) (Blackman, Joshua) (Attachment 1 replaced on 7/30/2018 to flatten image) (afd). (Entered: 07/29/2018) |
| 07/29/2018 |  | Case assigned to Judge Robert Pitman. CM WILL NOW REFLECT THE JUDGE INITIALS AS PART OF THE CASE NUMBER. PLEASE APPEND THESE JUDGE INITIALS TO THE CASE NUMBER ON EACH DOCUMENT THAT YOU FILE IN THIS CASE. (afd) (Entered: 07/30/2018) |
| 07/29/2018 |  | DEMAND for Trial by Jury by Defense Distributed, Second Amendment Foundation, Inc.. (afd) (Entered: 07/30/2018) |
| 07/30/2018 | 2 | Letter to Alan Gura re: Non-Admitted Status.(afd) (Entered: 07/30/2018) |
| 07/30/2018 | 3 | NOTICE of Attorney Appearance by Jonathan F. Mitchell on behalf of Defense Distributed, Second Amendment Foundation, Inc.. Attorney Jonathan F. Mitchell added to party Defense Distributed(pty:pla), Attorney Jonathan F. Mitchell added to party Second Amendment Foundation, Inc.(pty:pla) (Mitchell, Jonathan) (Entered: 07/30/2018) |
| 07/31/2018 | 4 | DEFICIENCY NOTICE to Jonathan F. Mitchell: re 3 Notice of Appearance. (td) (Entered: 07/31/2018) |
| 08/16/2018 | 5 | REQUEST FOR ISSUANCE OF SUMMONS by Defense Distributed, Second Amendment Foundation, Inc.. (Mitchell, Jonathan) (Entered: 08/16/2018) |
| 08/17/2018 | 6 | DEFICIENCY NOTICE to Jonathan F. Mitchell: re 5 Request for Issuance of Summons. (td) (Entered: 08/17/2018) |
| 08/17/2018 | 7 | REQUEST FOR ISSUANCE OF SUMMONS by Defense Distributed, Second Amendment Foundation, Inc.. (Mitchell, Jonathan) (Entered: 08/17/2018) |
| 08/17/2018 | 8 | Summons Issued as to Michael Feuer, Gurbir S. Grewal. (td) (Entered: 08/17/2018) |
| 08/17/2018 | 9 | NOTICE of Attorney Appearance by Mary Kathryn Raffetto on behalf of Defense Distributed, Second Amendment Foundation, Inc.. Attorney Mary Kathryn Raffetto added to party Defense Distributed(pty:pla), Attorney Mary Kathryn Raffetto added to party Second Amendment Foundation, Inc.(pty:pla) (Raffetto, Mary) (Entered: 08/17/2018) |
| 08/17/2018 | 10 | MOTION to Appear Pro Hac Vice by Mary Kathryn Raffetto *for Daniel N. Hammond* ( Filing fee $ 100 receipt number 0542-11134307) by on behalf of Defense Distributed, |

| | | |
|---|---|---|
| | | Second Amendment Foundation, Inc.. (Attachments: # 1 Proposed Order Order to Motion for Admission Pro Hac Vice for Daniel N., Hammond)(Raffetto, Mary) (Entered: 08/17/2018) |
| 08/17/2018 | 11 | MOTION to Appear Pro Hac Vice by Mary Kathryn Raffetto *of Charles R. Flores* ( Filing fee $ 100 receipt number 0542-11134380) by on behalf of Defense Distributed, Second Amendment Foundation, Inc.. (Attachments: # 1 Proposed Order Order-Motion for Admission Pro Hac Vice of Charles R. Flores)(Raffetto, Mary) (Entered: 08/17/2018) |
| 08/17/2018 | 12 | MOTION to Appear Pro Hac Vice by Jonathan F. Mitchell *on behalf of Matthew Goldstein* ( Filing fee $ 100 receipt number 0542-11135901) by on behalf of Defense Distributed, Second Amendment Foundation, Inc.. (Mitchell, Jonathan) (Entered: 08/17/2018) |
| 08/22/2018 | 13 | REQUEST FOR ISSUANCE OF SUMMONS by Defense Distributed, Second Amendment Foundation, Inc.. (Mitchell, Jonathan) (Entered: 08/22/2018) |
| 08/23/2018 | 14 | Summons Issued as to Michael Feuer. (td) (Entered: 08/23/2018) |
| 08/23/2018 | 15 | REQUEST FOR ISSUANCE OF SUMMONS by Defense Distributed, Second Amendment Foundation, Inc.. (Mitchell, Jonathan) (Entered: 08/23/2018) |
| 08/24/2018 | 16 | Summons Issued as to Michael Feuer. (td) (Entered: 08/24/2018) |
| 08/29/2018 | 17 | CERTIFICATE OF SERVICE by Defense Distributed, Second Amendment Foundation, Inc. *Corrected Certificate of Service for* 3 Notice of Appearance, (Mitchell, Jonathan) (Entered: 08/29/2018) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/31/2018 16:34:20 | | | |
| **PACER Login:** | beckreddenfirm:2516856:0 | **Client Code:** | 2281.002 |
| **Description:** | Docket Report | **Search Criteria:** | 1:18-cv-00637-RP |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEFENSE DISTRIBUTED and SECOND AMENDMENT FOUNDATION,<br><br>Plaintiffs,<br><br>v.<br><br>GURBIR S. GREWAL, individually, and in his official capacity as Attorney General of New Jersey; MICHAEL FEUER, individually, and in his official capacity as Los Angeles City Attorney,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 1:18-CV-637<br><br>COMPLAINT |

COMPLAINT

Plaintiffs Defense Distributed and Second Amendment Foundation, Inc., by and through undersigned counsel, complain of Defendants as follows:

INTRODUCTION

Pursuant to a license and other authorization from the State Department, Defense Distributed has published and will continue to publish Computer-Aided Design (CAD) and Computer-Numeric Control (CNC) files on its Internet servers in furtherance of its mission to promote firearms knowledge and possession. The Second Amendment Foundation's members and supporters are among Defense Distributed's audience. New Jersey's Attorney General (Gurbir S. Grewal) and Los Angeles's City Attorney (Michael Feuer), have waged an ideologically-fueled program of intimidation and harassment against Defense Distributed. Grewal and Feuer have

1

threatened and intend to drag Defense Distributed before all manner of far-flung criminal and civil tribunals in an effort to silence the organization.

Alas these state and municipal officers from across the country cannot veto Defense Distributed's constitutionally-protected and federally-licensed speech. The Defendants' threatened legal actions violate the First Amendment speech rights of Defense Distributed and its audience, including SAF's members; run afoul of the Dormant Commerce Clause; infringe upon the Second Amendment rights of those who would make use of the knowledge disseminated by Defense Distributed; constitute a tortious interference with Defense Distributed's business; and are in any event, federally pre-empted by Congress's export control laws as well as Defense Distributed's export license, by which the State Department has explicitly authorized the speech that the Defendants are seeking to silence. Plaintiffs are entitled to declaratory and injunctive relief, damages, and attorney fees.

*The Parties*

1.      Plaintiff Defense Distributed is a Texas corporation organized under the laws of the State of Texas, whose headquarters are located in Austin, Texas, and whose principal place of business is located in Austin, Texas. Defense Distributed was organized and is operated for the purpose of defending the civil liberty of popular access to arms guaranteed by the United States Constitution through facilitating access to, and the collaborative production of, information and knowledge related to the production of arms; and to publish and distribute, at no cost to the public, such information and knowledge on the Internet in promotion of the public interest.

2.      Consistent with the President's role as Commander and Chief, and the delegation of Congress's powers under the Commerce and Necessary and Proper Clauses, Congress has

2

conferred the President with the exclusive authority to issue licenses and other forms of authorizations for the export of technical data on firearms controlled under the Arms Export Control Act ("AECA"), 22 U.S.C. § 2751 et seq. The President has delegated this authority to the State Department. Executive Order 13637 of March 8, 2013.

3. Pursuant to its exclusive authority under the AECA, the State Department issued a license expressly authorizing the Plaintiffs to publish certain firearms files for "unlimited distribution" pursuant to ITAR § 125.4(b)(13). *See* Exhibit A.

4. Further pursuant to its exclusive authority under the AECA, the State Department issued an authorization under ITAR § 126.2 to allow every U.S. person to access, discuss, use, reproduce or otherwise benefit from technical data for the development, production, and/or use of firearms. *See* Exhibit B.

5. Plaintiff Second Amendment Foundation, Inc., is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF has over 650,000 members and supporters nationwide, including members in Texas, New Jersey, and Los Angeles. The purposes of SAF include promoting the exercise of the right to keep and bear arms; and education, research, publishing and legal action focusing on the constitutional right to privately own and possess firearms, and the consequences of gun control. SAF brings this action on behalf of its members. Cody Wilson, Defense Distributed's principal, is a SAF member. SAF members seek to download the files shared by Defense Distributed, as well as use Defense Distributed's facilities to share their own files with others

6. Defendant Gurbir S. Grewal is the Attorney General of New Jersey. He is sued in his official and individual capacities.

3

7.      Defendant Michael Feuer is the City Attorney for Los Angeles, California. He is sued in his official and individual capacities.

JURISDICTION AND VENUE

8.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 1367, 2201, and 2202.

9.      Plaintiff Defense Distributed resides within the jurisdiction of the U.S. District Court.

10.     Venue lies in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred, and a substantial part of property that is the subject of the action, are situated within the Western District of Texas.

11.     This action involves actions taken by Defendants in New Jersey and Los Angeles with respect to the Plaintiffs' business, activities, and property in Austin. Therefore, venue lies in this Court pursuant to 28 U.S.C. § 1391(b)(3), because there is no district in which this action may otherwise be brought, and both Defendants are subject to this Court's personal jurisdiction.

*Defendants' Threats of Legal Actions Against Defense Distributed*

12.     On July 26, 2018, Defendant Grewal sent a letter to Defense Distributed's headquarters in Austin, Texas.

13.     The letter "directed [Plaintiff] to cease and desist from publishing printable-gun computer files for use by New Jersey residents." *See* Exhibit C.

14.     Grewal asserted that publishing these files would violate New Jersey's "public nuisance laws." *Id.*

15.     Grewal's letter closed with a clear and present threat: "Should you fail to comply

4

with this letter, my Office will initiate legal action barring you from publishing these files before August 1, 2018." *Id.*

16.     In a press release, Grewal explicitly reiterated that threat: "Attorney General Grewal threatened Defense Distributed with 'legal action' if it fails to comply with his demand." Grewal also expressed his belief that "[p]osting this material online is no different than driving to New Jersey and handing out hard-copy files on any street corner." *See* Exhibit D.

17.     On July 27, 2018, Defendant Feuer caused to be filed in this Court, in the case of *Defense Distributed v. U.S. Dep't of State*, No. 1:15-CV-372-RP, a letter addressed to the Hon. Robert Pitman, who was then presiding over that case. *See* Exhibit E.

18.     The letter, at Dkt. 109-1, expressed Feuer's belief that Defense Distributed's publication of files "would pose a direct and immediate threat to public safety in the City of Los Angeles, and cause numerous violations of California and City laws designed to protect the public from gun violence." *Id.*

19.     Feuer noted that "[as] the City's chief lawyer and prosecutor, it is [his] job to enforce the gun laws of the City and California." *Id.*

20.     Feuer added that "Defense Distributed's blueprints" may violate California civil and criminal laws. *Id.*

21.     Feuer threatened Defense Distributed with legal action: "his office is authorized to file lawsuits to 'enjoin' the manufacture, importation, or possession of an undetectable firearm." *Id.*

22.     Feuer expressed his intent to seek to intervene in that case, for the express purpose of silencing Defense Distributed. *Id.*

23.     To convey this message, at least two of Feuer's attorneys appeared telephonically

during an emergency hearing before Judge Pitman. (At that juncture, the City of Los Angeles was not yet a party to the case, nor had it even filed a motion to intervene.)

24.     On July 28, 2019, Feuer released the following tweet from the @CityAttorneyLA Account: "City Atty Mike Feuer & @ManhattanDA Cyrus Vance, Jr. to @StateDept: NO #DIY #guns! #gunviolence #GunControl #gunsense ▶▶https://goo.gl/L377y3 @ProsecutorsAGV." *See* Exhibit F.

25.     That tweet linked to a press release from the Prosecutors Against Gun Violence, which is chaired by the Los Angeles City Attorney and the Manhattan District Attorney. It stated that Defense Distributed's "blueprints should not be published under any circumstances." *See* Exhibit G.

26.     On information and belief, Plaintiffs anticipate further legal actions from the Manhattan District Attorney.

*Plaintiff Responds to Defendant Grewal*

27.     On July 27, 2018, Plaintiff responded to Grewal. *See* Exhibit H. Plaintiff explained that the "Letter takes only vague and general positions regarding nuisance and negligence law." Plaintiff also explained that "all actions contemplated by Defense Distributed are fully protected by the First Amendment, and [Grewal's] attempts to prevent such actions constitute an unconstitutional prior restraint and otherwise violate the United States Constitution and the New Jersey Constitution." Plaintiff added that "the Letter constitutes an unlawful threat, in violation of Defense Distributed's Constitutional rights," and "demand[ed] that [the Defendant] withdraw the Letter."

28.     Plaintiff conveyed to the Grewal that "at this time Defense Distribute will attempt to restrict files made available on the internet to prevent download within New Jersey." Plaintiff

6

stated that "this [modification] should not be construed as an acknowledgment of the validity of your position, and Defense Distributed reserves all of its rights in this regard."

*Great, Irreparable, and Continuing Harm*

29.     But for Defendant Grewal's letter, Defense Distributed would freely distribute the files in New Jersey. However, Defense Distributed has taken steps to prevent the distribution of files in New Jersey because Defense Distributed reasonably fears that Defendant Grewal would pursue civil enforcement proceedings against Plaintiff. *See* Exhibit H. Users with New Jersey-based IP Addresses are currently blocked from accessing the files. *See* Exhibit I. [1]

30.     But for Defendant Feuer's letter, Defense Distributed would freely distribute the files in Los Angeles. However, Defense Distributed has already taken steps to prevent the distribution of files in Los Angeles because Defense Distributed reasonably fears that Defendant Feuer would pursue civil and t enforcement proceedings against Plaintiff. Users with Los Angeles-based IP Addresses are currently blocked from accessing the files. *See* Exhibit I.

31.     Notwithstanding its efforts to placate the Defendants, a legitimate controversy exists between Defense Distributed, and Defendants Grewal and Feuer, as to the legality of Defense Distributed's conduct. Defense Distributed can reasonably expect a continuing campaign of harassment and intimidation aimed at silencing it and tortiously interfering with its business.

32.     Defense Distributed is entitled to appropriate declaratory and injunctive relief against all further acts of harassment and intimidation by Grewal, Feuer, and all others who may act in concert with them.

COUNT ONE

---

[1] Defense Distributed also blocked access to the files from IP addresses based in the following foreign countries: Islamic Republic of Iran, Belarus, Myanmar (Burma), Burundi, Cote d'Ivoire, Cuba, The Democratic Republic of the Congo, Iraq, Lebanon, Liberia, Libyan Arab Jamahiriya, Democratic People's Republic of Korea, Somalia, Sudan, Syrian Arab Republic, Yemen, and Zimbabwe.

42 U.S.C. § 1983

RIGHT OF FREE SPEECH—U.S. CONST. AMEND. I

33.     Defendants' threats of legal actions are invalid on their face, and as applied to Plaintiffs' public speech, are an unconstitutional prior restraint on protected expression. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963).

34.     Defendants' interruption and prevention of Plaintiffs from publishing the subject files, under color of law, violates Plaintiffs' rights under the First Amendment to the United States Constitution, by virtue of the Fourteenth Amendment, causing Plaintiffs, their customers, visitors and members significant damages, in violation of 42 U.S.C. § 1983.

35.     Plaintiffs are therefore entitled to declaratory and injunctive relief, and an award of damages and attorney fees, against Defendants.

COUNT TWO

42 U.S.C. § 1983

"DORMANT" COMMERCE CLAUSE, U.S. CONST. ART. I, § 8

36.     The threatened legal actions would not only require Plaintiffs to cease sharing files on its Texas-based servers within New Jersey and Los Angeles, respectively, but would also prohibit Plaintiffs from sharing the files within Texas, and other states.

37.     The Supreme Court has recognized that the "Commerce Clause . . . precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State." *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989).

38.     Through the threatened legal actions, New Jersey and Los Angeles "project[s] its

8

legislation" into other states, in violation of the "Dormant" Commerce Clause. *See* Brown-Forman Distillers Corp. v. New York State Liquor Auth., 476 U.S. 573, 583 (1986). *See also Am. Booksellers Found. v. Dean*, 342 F.3d 96, 103–04 (2nd Cir. 2003); *Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1025 (E.D. Cal. 2017); *Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 958–59 (N.D. Cal. 2006).

39.     Defendants' interruption and prevention of Plaintiffs from publishing the subject files on its Texas-based servers, under color of law, violates the Plaintiffs rights to freely participate in intrastate and interstate commerce under the "Dormant" Commerce Clause, U.S. Const. art. I, § 8.

40.     Defendants' actions have caused Plaintiffs, their customers, visitors and members significant damages, in violation of 42 U.S.C. § 1983. *See Dennis v. Higgins*, 498 U.S. 439 (1991).

41.     Plaintiffs are therefore entitled to declaratory and injunctive relief, and an award of damages and attorney fees, against Defendants.

COUNT THREE

42 U.S.C. § 1983

RIGHT TO KEEP AND BEAR ARMS—U.S. CONST. AMEND. II

42.     The fundamental Second Amendment right to keep and bear arms inherently embodies two complimentary guarantees: the right to acquire arms, and the right to make arms.

43.     If one cannot acquire or create arms, one cannot exercise Second Amendment rights. Infringing upon the creation and acquisition of arms of the kind in common use for traditional lawful purposes violates the Second Amendment, as applied to the states by virtue of the Fourteenth Amendment. *District of Columbia v. Heller*, 554 U.S. 570, 627 (2008); *McDonald*

9

*v. City of Chicago*, 561 U.S. 742 (2010).

44.     By forbidding Defense Distributed from distributing files that concern the lawful manufacture of firearms, Defendants are violating the Second Amendment rights of Plaintiffs, their customers, members, and visitors.

45.     Defendants' interruption and prevention of Plaintiffs from publishing the subject files, under color of law, violates Plaintiffs' rights under the Second Amendment to the United States Constitution, by virtue of the Fourteenth Amendment, causing Plaintiffs, their customers, visitors and members significant damages, in violation of 42 U.S.C. § 1983.

46.     Plaintiffs are therefore entitled to declaratory and injunctive relief, and an award of damages and attorney fees, against Defendants

COUNT FOUR

THE SUPREMACY CLAUSE, U.S. CONST. ART. VI, CL. 2

PRE-EMPTION BASED ON EXPORT LICENSE ISSUED BY THE STATE DEPARTMENT

47.     Consistent with the President's role as Commander and Chief, and the delegation of Congress's powers under the Commerce and Necessary and Proper Clauses, Congress has conferred the President with the exclusive authority to issue licenses and other forms of authorizations for the export of technical data on firearms controlled under the Arms Export Control Act ("AECA"), 22 U.S.C. § 2751 et seq. The President has delegated this authority to the State Department. Executive Order 13637 of March 8, 2013.

48.     Pursuant to its exclusive authority under the AECA,  the State Department issued a license expressly authorizing the Plaintiffs to publish certain firearms files for "unlimited distribution" pursuant to ITAR § 125.4(b)(13).  *See* Exhibit A.

10

49. Further pursuant to its exclusive authority under the AECA, the State Department issued an authorization under ITAR § 126.2 to allow every U.S. person to access, discuss, use, reproduce or otherwise benefit from technical data for the development, production, and/or use of firearms. *See* Exhibit B.

50. The Defendants' threatened legal actions conflict with the State Department's exclusive authority and seek to interfere with this federal licensing framework. *See* Exhibits C, D, and E.

51. In a press release, Defendant Grewal expressly stated that he seeks to override the federal government's licensing framework: "The federal government is no longer willing to stop Defense Distributed from publishing this dangerous code, and so New Jersey must step up." *See* Exhibit D.

52. New Jersey and Los Angeles can no more prohibit the operation of a federally licensed export framework than could Maryland prohibit the operation of a federally chartered bank. *See McCulloch v. Maryland*, 17 U.S. 316 (1819).

53. The threatened legal actions are preempted based on Defense Distributed's Export License that was issued by the State Department.

54. "[I]f an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted." *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015).

55. Plaintiffs are therefore entitled to injunctive relief against Defendants' threat of legal actions that are pre-empted.

COUNT FIVE

THE SUPREMACY CLAUSE, U.S. CONST. ART. VI, CL. 2

EXPRESS PREEMPTION

56. Through federal export control law, Congress has expressly preempted state law.

57. Therefore, the threatened legal actions are expressly preempted by federal export control law. *See English v. General Elec. Co.*, 496 U.S. 72, 78-79 (1990).

58. "[I]f an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted." *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015).

59. Plaintiffs are therefore entitled to injunctive relief against Defendants' threat of legal actions that are pre-empted.

COUNT SIX

THE SUPREMACY CLAUSE, U.S. CONST. ART. VI, CL. 2

FIELD PREEMPTION

60. Congress has occupied the entire field of export control law.

61. Therefore, the threatened legal actions are preempted by field preemption. *See English v. General Elec. Co.*, 496 U.S. 72, 79 (1990).

62. "[I]f an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted." *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015).

63. Plaintiffs are therefore entitled to injunctive relief against Defendants' threat of legal actions that are pre-empted by federal export control law.

COUNT SEVEN

12

THE SUPREMACY CLAUSE, U.S. CONST. ART. VI, CL. 2

CONFLICT PREEMPTION

64.   The threatened legal actions would stand as an obstacle and would frustrate the accomplishment of objectives authorized by federal export control law. *See Crosby v. Nat'l Foreign Trade Council,* 530 U.S. 363, 375 (2000); *Nat'l Foreign Trade Council, Inc. v. Giannoulias*, 523 F. Supp. 2d 731, 738-742 (N.D. Ill. 2007).

65.   Therefore, the threatened legal actions are preempted by conflict preemption.

66.   "[I]f an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted." *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015).

67.   Plaintiffs are therefore entitled to injunctive relief against Defendants' threat of legal actions that are pre-empted by federal export control law.

COUNT EIGHT

TORTIOUS INTERFERENCE WITH CONTRACTS

68.   Defensed Distributed receives advertising revenue from its file-sharing system through contracts with third-parties.  In the past, these revenues have exceeded $75,000 per annum.

69.   Defendants willfully and intentionally sought to interfere with those contracts.

70.   Defense Distributed has taken steps to prevent the distribution of files in New Jersey and Los Angeles because Defense Distributed reasonably fears that Defendants Grewal and Feuer would pursue civil and criminal enforcement proceedings against Plaintiff for doing so.

71.   The willful and intentional actions of Defendants Grewal and Feuer have proximately and directly caused damages to Defense Distributed's contracts.

13

72. The willful and intentional actions of Defendants Grewal and Feuer have resulted in actual damages.

73. Defendants' conduct, as described in this complaint, constitutes tortious interference with contracts. *See ACS Inv'rs, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex.1997).

74. Plaintiffs are therefore entitled to injunctive relief against Defendants' tortious interference with contracts.

COUNT NINE

TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTS

75. There was a reasonable probability that Defense Distributed was to enter into contract(s) to do business with other third parties in New Jersey and Los Angeles.

76. The threatened legal actions constitute a wrongful, deliberate, willful, intentional or otherwise tortious interference with prospective contracts in New Jersey and Los Angeles.

77. Plaintiffs are therefore entitled to injunctive relief against Defendants' tortious interference with prospective contracts.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against Defendant as follows:

1. A declaration, and injunctive relief, to prevent Defendants' threatened legal actions that violate the First Amendment to the United States Constitution;

2. A declaration, and injunctive relief, to prevent Defendants' threatened legal actions

14

that violate the Dormant Commerce Clause;

3.     A declaration, and injunctive relief, to prevent Defendants' threatened legal actions that violate the Second Amendment to the United States Constitution;

4.     A declaration, and injunctive relief, to prevent Defendants' threatened legal actions that are preempted based on Defense Distributed's Export License that was issued by the State Department;

5.     A declaration, and injunctive relief, to prevent Defendants' threatened legal actions that are expressly preempted by federal export control law;

6.     A declaration, and injunctive relief, to prevent Defendants' threatened legal actions that are preempted by field preemption by federal export control law;

7.     A declaration, and injunctive relief, to prevent Defendants' threatened legal actions that are preempted by conflict preemption by federal export control law;

8.     A declaration, and injunctive relief, to prevent Defendants' threatened legal actions that tortiously interfere with contracts, and damages to be determined for Defendants' tortious interference with contracts;

9.     A declaration, and injunctive relief, to prevent Defendants' threatened legal actions that tortiously interfere with prospective contracts, and damages to be determined for Defendants' tortious interference with prospective contracts;

10.     Actual damages in an amount according to proof at trial;

11.     Attorney fees and costs pursuant to 42 U.S.C. § 1988; and

12.     Any other further relief as the Court deems just and appropriate.

The Plaintiffs hereby demand a jury trial.

Case 2:18-cv-13248-SDW-LDW RPDocument 5-4   Filed 09/04/18   Page 20 of 47 PageID:
Case 4:18-cv-00637-RP   Document 1   Filed 07/29/18   Page 16 of 16
433

Dated: July 29,  2018     Respectfully submitted,

*Alan Gura*         */s/ Josh Blackman*
Virginia Bar No. 68842*     Virginia Bar No. 78292
Gura PLLC         1303 San Jacinto Street
916 Prince Street, Suite 107    Houston, Texas 77002
Alexandria, Virginia 22314    202.294.9003/Fax: 713.646.1766
703.835.9085 / Fax 703.997.7665  Josh@JoshBlackman.com
alan@gurapllc.com      Counsel of Record
*Admission pro hac vice pending

16

# **Exhibit A**

Case 2:18-cv-12248-SDW-LDW-RP Document 5-4-2 Filed 08/04/18 Page 22 of 47 PageID:
Case 1:18-cv-00637-RP Document 1-2 Filed 07/29/18 Page 2 of 3
435



**United States Department of State**

*Bureau of Political-Military Affairs*
*Directorate of Defense Trade Controls*
*Washington,* D.C. 20522-0112

July 27, 2018

Mr. Cody R. Wilson, Defense Distributed, and Second Amendment Foundation, Inc.
c/o Mr. Matthew A. Goldstein
Snell & Wilmer
One South Church Avenue
Suite 1500
Tucson, AZ 85701-1630

RE:  Directorate of Defense Trade Controls Approval of Certain Files for Public Release

Dear Mr. Wilson, Defense Distributed, and Second Amendment Foundation, Inc.:

This letter is provided in accordance with section 1(c) of the Settlement Agreement in the matter of *Defense Distributed, et al., v. U.S. Department of State, et al.,* No. 15-cv-372-RP (W.D. Tx.) (hereinafter referred to as "*Defense Distributed*"). As used in this letter,

- The phrase "Published Files" means the files described in paragraph 25 of Plaintiffs' Second Amended Complaint in *Defense Distributed*.
- The phrase "Ghost Gunner Files" means the files described in paragraph 36 of Plaintiffs' Second Amended Complaint in *Defense Distributed*.
- The phrase "CAD Files" means the files described in paragraph 40 of Plaintiffs' Second Amended Complaint in *Defense Distributed*.

The Department understands that Defense Distributed submitted the Published Files, Ghost Gunner Files, and CAD Files to the Department of Defense's Defense Office of Prepublication and Security Review (DOPSR) in 2014 to request review for approval for public release pursuant to International Traffic in Arms Regulations (ITAR) § 125.4(b)(13). It is our further understanding that DOPSR did not make a determination on the eligibility of these files for release, but instead referred you to the Directorate of Defense Trade Controls (DDTC) regarding public release of these files.

1

Case 2:18-cv-12248-SDW-LDW-RP Document 5-4-2 Filed 09/04/18 Page 23 of 47 PageID:
Case 1:18-cv-00637-RP Document 1-2 Filed 07/29/18 Page 3 of 3
436

I advise you that for the purposes of ITAR § 125.4(b)(13), the Department of State is a cognizant U.S. government department or agency, and DDTC has authority to issue the requisite approval for public release. To that end, I approve the Published Files, Ghost Gunner Files, and CAD Files for public release (i.e., unlimited distribution). As set forth in ITAR § 125.4(b)(13), technical data approved for public release by the cognizant U.S. government department or agency is not subject to the licensing requirements of the ITAR.

Sincerely,

Acting Deputy Assistant Secretary for the
Directorate of Defense Trade Controls

2

Case 1:18-cv-00657-RP Document 1-3 Filed 07/29/18 Page 1 of 5

# Exhibit B

Case 2:18-cv-13248-SDW-LDW   Document 5-4   Filed 09/04/18   Page 25 of 47 PageID:

Case 1:18-cv-00637-RP   Document 1-3   Filed 07/29/18   Page 2 of 5

438

 An official website of the United States government
Here's how you know

MENU

**U.S. DEPARTMENT OF STATE**

**Directorate of Defense Trade Controls**

# DDTC Mission:

Ensuring commercial exports of defense articles and defense services are consistent with U.S. national security and foreign policy objectives.

Provide Feedback

## Learn About Export Regulations

Read about the laws and regulations that govern Defense Trade, including the Arms Export Control Act (AECA), the ITAR, and the United States Munitions List (USML).

Find out if you need to Register

Review the ITAR

Request a Commodity Jurisdiction (CJ)

## Export Your Goods/Services

Access the ways you conduct Defense Trade activities, including Registration, Licenses, Agreements, and

their associated online systems.

Register your Business

Go to DTrade Portal

Apply for Licenses or Agreements

Access DTAS & DECCS Systems

## Get Help from DDTC

Learn all the ways we can help you or your organization to meet any of your specific needs with regards to conducting Defense Trade.

Contact Us

Review FAQs

DDTC Outreach Opportunities

Provide Feedback

# The Defense Trade Advisory Group (DTAG)

**Providing a formal channel for regular consultation and coordination with U.S. private sector defense exporters and defense trade specialists.**

**Learn about DTAG**

**See the latest from DTAG**

# Announcements

**Upcoming**

7/29/2018
Case 2:18-cv-13248-SDW-LDW Document 5-4 Filed 09/04/18 Page 27 of 47 PageID:
Case 1:18-cv-00637-RP Document 1-3 Filed 07/29/18 Page 4 of 5
DDTC Public Portal homepage
440

EVENT: **IN-HOUSE SEMINARS**

08/10/18 - 09/19/18

# DDTC In-House Seminar

Registration for The Directorate of Defense Trade Controls (DDTC) In-House Seminar for Wednesday, September 19th, 2018 opens August 10th and closes August 31st. Attendees will be identified on a first-come, first-serve basis. Preference will be given to new registrants and small-businesses. A completed registration form must be sent to the DDTC In-House Seminar email, as an attachment, DDTCInHouseSeminars@state.gov.

For more information, please visit the DDTC Outreach Programs page and click the "In-House Seminars" tab.

**Today**

NOTICE

05/31/18 - 08/31/18

# Temporary Extension on May 31, 2018 and June 30, 2018 Expirations

DDTC has determined that a system issue prevented registration reminder letters for Tier 1 registrants with expirations of May 31, 2018 and June 30, 2018 from being sent out at least 60 days prior to expiration. The issue has been resolved. To ensure registrants are not adversely affected, DDTC has temporarily extended May 31, 2018, expirations to July 31, 2018, and June 30, 2018, expirations to August 31, 2018. Please note that registration submissions still need to be made at least 30 days in advance of the expiration of the temporary extension to ensure a lapse in registration does not occur. Properly renewed registrations affected by this issue will reflect either a May or June 2019 expiration, unless a lapse occurs. Questions regarding registration status as a result of this issue should be directed to the DDTC Response Team.

**Previous**

NOTICE: GENERAL

7/29/2018

Case 2:18-cv-13248-SDW-LDW  Document 5-4  Filed 09/04/18  Page 28 of 47 PageID:
Case 1:18-cv-00637-RP  Document 1-3  Filed 07/29/18  Page 3 of 5
441

NOTICE: **GENERAL**

07/27/18

## Temporary Modification of Category I of the United States Munitions List

Consistent with the International Traffic in Arms Regulations (ITAR), 22 C.F.R. § 126.2, the Acting Deputy Assistant Secretary for Defense Trade Controls has determined that it is in the interest of the security and foreign policy of the United States to temporarily modify United States Munitions List (USML) Category I to exclude the following technical data identified in the Settlement Agreement for the matter of Defense Distributed, et al., v. U.S. Department of State, et al, Case No. 15-cv-372-RP (W.D. Tex.) (hereinafter "Defense Distributed"):

- "Published Files," i.e., the files described in paragraph 25 of the Second Amended Complaint in Defense Distributed.
- "Ghost Gunner Files," i.e., the files described in paragraph 36 of the Second Amended Complaint in Defense Distributed.
- "CAD Files," i.e., the files described in paragraph 40 of the Second Amended Complaint in Defense Distributed.
- "Other Files," i.e., the files described in paragraphs 44-45 of the Second Amended Complaint in Defense Distributed, insofar as those files regard items exclusively: (a) in Category I(a) of the USML, as well as barrels and receivers covered by Category I(g) of the USML that are components of such items; or (b) items covered by Category I(h) of the USML solely by reference to Category I(a), excluding Military Equipment.  Military Equipment means (1) Drum and other magazines for firearms to .50 caliber (12.7 mm) inclusive with a capacity greater than 50 rounds, regardless of jurisdiction of the firearm, and specially designed parts and components therefor; (2) Parts and components specially designed for conversion of a semi-automatic firearm to a fully automatic firearm; (3) Accessories or attachments specially designed to automatically stabilize aim (other than gun rests) or for automatic targeting, and specially designed parts and components therefor.

This temporary modification will remain in effect while the final rule referenced in paragraph 1(a) of the Settlement Agreement is in development.

Please see the Settlement Agreement and the Second Amended Compliant for additional information.

---

NOTICE: **GENERAL**

07/25/18

## Public Comments on USML Categories I–III

# Exhibit C



## State of New Jersey

PHILIP D. MURPHY
*Governor*

SHEILA Y. OLIVER
*Lt. Governor*

OFFICE OF THE ATTORNEY GENERAL
DEPARTMENT OF LAW AND PUBLIC SAFETY
DIVISION OF LAW
PO Box 080
TRENTON, NJ 08625-0080

GURBIR S. GREWAL
*Attorney General*

Defense Distributed
2320 Donley Dr., Suite C
Austin, TX 78758

July 26, 2018

To Whom It May Concern:

You are directed to cease and desist from publishing printable-gun computer files for use by New Jersey residents. The files you plan to publish offer individuals, including criminals, codes that they can use to create untraceable firearms—and even to make assault weapons that are illegal in my state. These computer codes are a threat to public safety, and posting them violates New Jersey's public nuisance and negligence laws. If you do not halt your efforts to proceed with publication, I will bring legal action against your company before August 1, 2018.

The computer files that you plan to publish will undermine the public safety of New Jersey residents. These files allow anyone with a 3-D printer to download your code and create a fully operational gun. More than that, the codes you plan to post will enable individuals to print assault weapons that are illegal in New Jersey. And because the printed guns would not have serial numbers, they would not be traceable by law enforcement. Worst of all, you are going to make the codes available to everyone—regardless of age, criminal status, or history of mental illness. That would undermine New Jersey's comprehensive scheme for keeping guns out of dangerous criminals' hands, and it would undermine the safety of our residents.

Not only are your codes dangerous, but posting them would also be illegal. New Jersey's law is clear: an individual who interferes with public health, safety, peace, and comfort violates our public nuisance law. *See James v. Arms Tech., Inc.*, 359 N.J. Super. 291, 329-33 (App. Div. 2003). As New Jersey courts have held, "[n]o one can seriously debate" that regulated guns are "dangerous instrumentalities" and thus implicate our public nuisance law. *Id.* at 320. So when a group of manufacturers "flood[ed] the gun market" through a high volume of sales, while failing to develop "reasonable safeguards over the distribution scheme" and "refus[ing] to oversee or supervise the control of handgun distribution in order to prevent the foreseeable channeling of guns to such an illegal market," New Jersey courts found they could be held responsible when their actions "facilitate[d] the illegal sale of weapons to criminals and other unlawful users." *Id.* at 312. That is what your actions will do as well—make do-it-yourself guns available to anyone, even if the individuals are prohibited from owning guns because of prior convictions, history of mental illness, or history of domestic violence, even if the weapons they print are illegal in my

July 26, 2018
Page 2

state, and even if they plan to use their weapons to further crimes and acts of violence. Because your actions will flood the illegal firearms market and pose a direct threat to the public safety of my state, they constitute a public nuisance.

Worse still, your comments make clear that you hope your actions will undermine all the efforts of states like New Jersey to keep guns out of criminals' hands. You have stated, "All this Parkland stuff, the students, all these dreams of 'common sense gun reforms'? No. The internet will serve guns, the gun is downloadable."[1] You have also stated, "I'm not worried about public safety."[2] And on July 10, 2018, you tweeted a photo of a gravestone engraved with the words "American Gun Reform."[3] These comments show that you have no intention of precluding your printable-gun computer files, including designs for assault weapons, from winding up in the hands of criminals, minors, and the mentally ill. Not only does that reveal a lack of regard for safety, but it also shows that your interference with the public's health and safety is intentional and per se unreasonable. *James*, 359 N.J. Super. at 330.

Finally, your widespread dissemination of printable-gun computer files is negligent because it encourages an illegal gun market, which will foreseeably lead to increased crime and violence in New Jersey, and which will lead to an increase in expenditures of public funds for combatting crime and protecting our resident's health. *See id.* at 308-24 (finding a legally valid negligence claim against same manufacturers of guns that flooded the illegal market). Your planned method of making codes available and your public comments show that you are ignoring and violating your duty. By broadly sharing an inherently dangerous product, you should reasonably foresee the resulting governmental and public costs and must bear them. *Id.* at 323-24.

As the chief law enforcement officer for New Jersey, I demand that you halt publication of the printable-gun computer files. Should you fail to comply with this letter, my Office will initiate legal action barring you from publishing these files before August 1, 2018.

Sincerely,

Gurbir S. Grewal
Attorney General

---

[1] Andy Greenberg, "A Landmark Legal Shift Opens Pandora's Box for DIY Guns," Wired (July 10, 2018), available at https://www.wired.com/story/a-landmark-legal-shift-opens-pandoras-box-for-diy-guns/.

[2] Tess Owen, "Get Ready for the New Era of 3D-Printed Guns Starting August 1," Vice News (July 18, 2018), available at https://news.vice.com/en_us/article/ev8xjn/get-ready-for-the-new-era-of-3d-printed-guns-starting-august-1.

[3] Cody R. Wilson (@Radomysisky), TWITTER (July 10, 2018, 12:25 P.M.), https://twitter.com/Radomysisky/status/1016765282017337344.

# Exhibit D

7/29/2018                    State of New Jersey

Case 2:18-cv-13248-SDW-LDW  Document 5-4   Filed 09/04/18   Page 33 of 47 PageID:
Case 1:18-cv-00637-RP   Document 5-5   Filed 07/29/18   Page 2 of 3
446

THE STATE OF NEW JERSEY
**DEPARTMENT OF LAW & PUBLIC SAFETY**
OFFICE OF THE ATTORNEY GENERAL

Search

NJHome I Services A to Z I Departments/Agencies I FAQs

▷ OAG Home    OAG Services from A - Z ⬍    Servicios en Español ⬍

▷ OAG Contact    News Release

◁ OAG Home

Gurbir S. Grewal
Attorney General

AG's Executive Leadership Team

| AG's Message | Ask the AG |
| Contact OAG | About OAG |
| OAG News | OAG FAQs |
| OAG Library | Employment |
| OAG Grants | Proposed Rules |
| OAG History | Services A-Z |

Statutes / Regulations / Rules

Agencies / Programs / Units

**Other News Pages**

Governor's Office

Otras Noticias en Español (OAG)

Civil Rights (Division on)

Consumer Affairs (Division of)

Criminal Justice (Division of)

Election Law Enforcement Comm.

Gaming Enforcement (Div. of)

Highway Traffic Safety (Division of)

Insurance Fraud Prosecutor (Office of)

Juvenile Justice Commission

State Police (Division of NJ)

Law (Division of)

**For Immediate Release:**
July 26 2018

**Office of The Attorney General**
- Gurbir S. Grewal, Attorney General

**For Further Information:**
**Media Inquiries**-
Lee Moore
609-292-4791

**Citizen Inquiries**-
609-984-5828

## AG Grewal Demands That Gun Developer Halt Plans to Publish Printable-Gun Computer Files; Threatens Imminent Legal Action
### Citing Threat to Public Safety, AG Warns of Lawsuit Before August 1

View Cease and Desist Letter

**TRENTON** – Acting to protect New Jersey residents from an emerging threat to public safety, Attorney General Gurbir S. Grewal today sent a "cease and desist" letter to a firearm developer that plans to publicly release computer files on August 1 that would enable individuals to create firearms using a 3-D printer.

"You are directed to cease and desist from publishing printable-gun computer files for use by New Jersey residents," Attorney General Grewal warned Texas-based Defense Distributed in today's letter. "The files you plan to publish offer individuals, including criminals, codes that they can use to create untraceable firearms—and even to make assault weapons that are illegal in my state."

Citing New Jersey's public nuisance law and prior court decisions that have upheld claims against gun manufacturers for similar reckless actions, Attorney General Grewal threatened Defense Distributed with "legal action" if it fails to comply with his demand to halt its planned publishing of printable-gun computer files starting next week.

"Defense Distributed's plans to allow anyone with a 3-D printer to download a code and create a fully operational gun directly threatens the public safety of New Jersey's residents, " Attorney General Grewal stated. "Posting this material online is no different than driving to New Jersey and handing out hard-copy files on any street corner. The federal government is no longer willing to stop Defense Distributed from publishing this dangerous code, and so New Jersey must step up."

Defense Distributed plans to "make do-it-yourself guns available to anyone, even if the individuals are prohibited from owning guns because of prior convictions, history of mental illness, or history of domestic violence, even if the weapons they print are illegal in my state, and even if they plan to use their weapons to further crimes and acts of violence," added Attorney General Grewal. "Not only are these plans to publish printable-gun files dangerous, they also violate New Jersey law."

Defense Distributed made national headlines by developing gun computer files that enable consumers to create fully operational firearms with a 3-D printer. The company's founder, Cody Wilson, developed a printable plastic pistol known as the "Liberator .380" in 2012 and put the plans online, but was blocked by the federal government. Wilson

sued, and under a settlement he reached with the U.S. State Department, his company is free to begin releasing computer files for printable guns beginning on August 1.

In his cease-and-desist letter, Attorney General Grewal warns Defense Distributed that its actions will "flood the illegal firearms market and pose a direct threat to the public safety of my state." He also takes the company to task for striving to make do-it-yourself guns readily available to people deemed unfit to have them. "By broadly sharing an inherently dangerous product," the letter adds, Defense Distributed "should reasonably foresee the resulting governmental and public costs and must bear them."

The letter also highlights that Cody Wilson has "no intention of precluding [these] printable-gun computer files, including designs for assault weapons, from winding up in the hands of criminals, minors, and the mentally ill." Wilson has publicly stated, ""All this Parkland stuff, the students, all these dreams of 'common sense gun reforms'? No. The internet will serve guns, the gun is downloadable." He has even announced, "I'm not worried about public safety." As a result, the letter notes, his "interference with the public's health and safety is intentional and per se unreasonable."

"As the chief law enforcement officer for New Jersey, I demand that you halt publication of the printable gun computer files," Attorney General Grewal concludes. "Should you fail to comply with this letter, my Office will initiate legal action barring you from publishing these files before August 1, 2018."

Follow the New Jersey Attorney General's Office online at Twitter, Facebook, Instagram, Flicker & YouTube. The social media links provided are for reference only. The New Jersey Attorney General's Office does not endorse any non-governmental websites, companies or applications.

####

News Index Page | top

**Contact Us | Privacy Notice | Legal Statement | Accessibility Statement**

Departmental: OAG Home | Contact OAG | About OAG | OAG News | OAG FAQs
Statewide: NJ Home | Services A to Z | Departments/Agencies | FAQs
Copyright © State of New Jersey
This page is maintained by OAG Communications. Comments/Questions: email or call 609-292-4925

Case 2:18-cv-12248-SDW-LDW Document 5-4 Filed 09/04/18 Page 35 of 47 PageID:
Case 1:18-cv-00637-RP Document 1-6 Filed 07/29/18 Page 1 of 5
448

# Exhibit E

# Exhibit D



**MICHAEL N. FEUER**
City Attorney

July 27, 2018

The Hon. Robert Pitman
United States District Court for the
Western District of Texas
501 West 5th St., Suite 5300
Austin, TX 78701

      Re: *Defense Distributed et al. v. United States Department of State et al.,*
      (Case No. 15-CV-00372-RP).

Dear Judge Pitman:

      The purpose of this letter is to apprise the Court that the City of Los Angeles intends to move to intervene in *Defense Distributed, et al. v. Dep't of State, et al.*, Case No. 15-cv-372-RP (W.D. Tex.) (the "Litigation") to seek to enjoin Defense Distributed from publishing its blueprints of firearms and firearm components on the internet. The City has a concrete, particularized, and legally protectable interest in the Litigation: the potential public distribution of Defense Distributed's blueprints on the internet would pose a direct and immediate threat to public safety in the City of Los Angeles, and cause numerous violations of California and City laws designed to protect the public from gun violence.

      I am the City Attorney for the City of Los Angeles (the "City"). As the City's chief lawyer and prosecutor, it is my job to enforce the gun laws of the City and California to ensure the safety of the City's nearly four million residents as well as its millions of visitors.[1]

      I have reviewed a settlement agreement (the "Agreement") purporting to resolve the Litigation. Under the Agreement, the plaintiff, Defense Distributed, is allowed to publicly upload blueprints of firearms and firearm components to the Internet so that any terrorist, violent felon, domestic abuser, mentally ill individual, or minor with access to the Internet and a 3D printer may create completely untraceable and undetectable guns and gun components, including

---

[1] In 2016, Los Angeles County had over 47 million visitors. https://www.discoverlosangeles.com/press-releases/facts-about-los-angeles.

The Honorable Robert Pitman
Page 2

"do-it-yourself" semi-automatic weapons. This is not hyperbole. Indeed, in paragraph 1(d) of the Agreement, the State Department acknowledges and agrees that temporary modification of the Category 1 munitions list permits "any United States person" to "access, discuss, use, reproduce, or otherwise benefit" from Defense Distributed's automated blueprints. This will undoubtedly facilitate the manufacture of 3D guns in California, as well as the importation of such guns into California, in violation of numerous California and City laws. The threat to public safety in our jurisdiction is clear.

For example, California law has labeled "undetectable firearms"—like those that Defense Distributed's blueprints may enable people to make—as a nuisance. (Cal. Pen. Code § 24690.)[2] As such, my office is authorized to file lawsuits to "enjoin" the manufacture, importation, or possession of an undetectable firearm. (*Id.* § 18010.) Furthermore, under California law, it is also a crime to "manufacture[] or cause[] to be manufactured, import[] into the state, … or possess[] any undetectable firearm," subjecting a violator to imprisonment for up to a year. (*Id.* § 24610.) Defense Distributed's blueprints may allow individuals to print undetectable 3D firearms in direct violation of these laws.

The threat to public safety in Los Angeles posed by undetectable firearms is obvious and immeasurable. For example, it is illegal under the Los Angeles Municipal Code ("LAMC") to possess the "frame, receiver or barrel of a firearm" at an airport. (LAMC § 55.17(a)(1).) This is for good reason; the Los Angeles International Airport is the fifth busiest airport in the world, and served over 84 million passengers in 2017. https://www.businessinsider.com/busiest-airports-in-the-world-2018-2018-4#6-chicago-ohare-international-airport-ord-79828183-passengers-in-2017-15.[3] One way we enforce this law is through the use of X-ray machines. But undetectable gun and gun components may render metal detectors and X-ray machines useless. Thus, the online distribution of Defense Distributed's blueprints will allow criminals and terrorists to evade our law. How will we keep airports and airplanes safe?

It is also unlawful under California law to sell or transfer a manufactured or assembled firearm (Cal. Pen. Code § 29180(d)),[4] and to aid or abet certain high-risk individuals (e.g., felons, sex offenders, etc.) in the manufacture or assembly of a firearm. (*Id.* § 29180(e).) Defense Distributed's blueprints will allow individuals to circumvent these laws with ease.

In addition, numerous other California and City laws will be directly undermined by the publishing of Defense Distributed's blueprints. For example, it is a felony in California to manufacture, import, or sell an assault weapon, punishable by up to eight years in prison. (Cal.

---

[2] An undetectable firearm is generally defined as a weapon that is not detectable by a walk-through metal detector or "the types of X-ray machines commonly used at airports." (Cal. Pen. Code § 17280.)

[3] In addition to the significant traffic through Los Angeles's airport, the Port of Los Angeles is the largest container port in North America. https://www.portoflosangeles.org/about/facts.asp. This is another potential access point for 3D guns to slip into Los Angeles undetected.

[4] "For purposes of this chapter, 'manufacturing' or 'assembling' a firearm means to fabricate or construct a firearm, or to fit together the component parts of a firearm to construct a firearm." (Cal. Pen. Code § 29180(a).)

The Honorable Robert Pitman
Page 3

Pen. Code § 30600(a).) Defense Distributed's blueprints may allow individuals to print 3D assault weapons in direct violation of this law.

California also has a comprehensive scheme to ensure that firearms do not fall into the hands of felons and other individuals deemed by the court system to pose a danger to others as a result of mental disorder or illness through a robust background check process. (Cal. Pen. Code §§ 26815, 28210, 28220, 29800; Cal. Wel. & Inst. Code §§ 8103-04.) And the City has similar laws designed to prevent gun violence and assist law enforcement in the apprehension of those who misuse firearms. (*See*, *e.g.*, LAMC § 55.14 (prohibiting the purchase and sale of more than one handgun to the same person in a thirty day period); *id.* § 55.15 (requiring fingerprinting of firearms purchasers).) All of these laws are directly undermined if felons can simply print their own 3D firearms with the assistance of Defense Distributed's blueprints.

In sum, the potential public distribution of Defense Distributed's blueprints would pose a direct and immediate threat to public safety in the City and would directly cause numerous violations of California and City law. We were recently made aware of the hearing this Court will hold this afternoon on the Motion to Intervene by The Brady Campaign to Prevent Gun Violence, Everytown for Gun Safety Action Fund, Inc. and Giffords ("the Proposed Intervenors"). We urge the Court to grant the Proposed Intervenors' Motion, and respectfully apprise the Court of our intent to move to intervene ourselves at our earliest opportunity.

Very truly yours,

By:
MICHAEL N. FEUER
Los Angeles City Attorney

# Exhibit F

Case 2:18-cv-13248-SDW-LDW Document 5-4 Filed 09/04/18 Page 41 of 47 PageID: 454

**LA City Attorney**
@CityAttorneyLA

Follow

City Atty Mike Feuer & @ManhattanDA Cyrus Vance, Jr. to @StateDept:  NO #DIY #guns! #gunviolence #GunControl #gunsense ▶▶ goo.gl/L377y3 @ProsecutorsAGV



"Invisible to metal detectors, these plastic guns could easily be smuggled onto airplanes, and into concerts, festivals and government buildings. No one is safer if criminals can print untraceable guns on demand."

Mike Feuer, LA City Attorney and
Cyrus Vance, Jr., Manhattan District Attorney
Co-Chairs - Prosecutors Against Gun Violence

9:37 AM - 28 Jul 2018

**6** Retweets  **14** Likes

💬 1      ↻ 6        14

© 2018 Twitter   About   Help Center   Terms   Privacy policy   Cookies   Ads info

Case 2:18-cv-12248-SDW-LDW   Document 5-4-8   Filed 09/04/18   Page 42 of 47 PageID:
Case 1:18-cv-00637-RP   Document 1-8   Filed 07/29/18   Page 1 of 2
455

# Exhibit G

7/29/2018    PAGV Co-Chairs to State Department: Block Release of Downloadable Blueprints for Do-It-Yourself, 3D Printed Guns | Office of Los Angeles City Att...

Case 2:18-cv-13248-SDW-LDW   Document 5-4   Filed 09/04/18   Page 43 of 47 PageID:
Case 1:18-cv-00637-RP   Document 1-8   Filed 07/29/18   Page 2 of 2
456



# MIKE FEUER
## Los Angeles City Attorney

     UPDATES FROM MIKE

MEET MIKE          GUN VIOLENCE    SCHOOL SAFETY PANEL    UNITS A - Z    VICTIM ASSISTANCE    CLAIMS

**HOME    OFFICE    GET HELP    CONSUMER PROTECTION    NEIGHBORHOOD PROSECUTORS    COMMUNITY JUST**

## PAGV Co-Chairs to State Department: Block Release of Downloadable Blueprints for Do-It-Yourself, 3D Printed Guns

July 25, 2018



New York, NY and Los Angeles, CA: Manhattan District Attorney Cyrus Vance, Jr., and Los Angeles City Attorney Mike Feuer, co-chairs of Prosecutors Against Gun Violence, today released the following joint statement urging the U.S. State Department to block the online release of blueprints for do-it-yourself, 3D-printed guns:

**"In a matter of days, the State Department is preparing to allow unlimited online access to schematic designs that enable 3D printing of untraceable guns. In a complete reversal of longstanding regulatory oversight, the State Department has decided to provide a special exemption to a private company, Defense Distributed, to post its gun blueprints online."**

**"No one is safer if criminals can print untraceable guns on demand. Allowing this exemption from federal rules would be an unconscionable mistake, making it all-too-easy for anyone with a dangerous history – including terrorists and domestic abusers who cannot pass a background check – to download files and print a functional gun with 3D printers available to any consumer. This decision undermines the critical public safety laws that prosecutors enforce day in and day out."**

**"Invisible to metal detectors, these plastic guns could easily be smuggled onto airplanes, and into concerts, festivals, and government buildings. Untraceable, they would undermine the work of law enforcement by crippling criminal investigations before they even began. The State Department must not allow this company to have a special exemption to these rules. These blueprints should not be published under any circumstances."**

Tags:    Prosecutors Against Gun Violence    PAGV    Cy Vance    Los Angeles City Attorney Mike Feuer    guns



### Recent

**PAGV Co Department Downloa Do-It-You**
July 25, 201

-----

**L.A. City Seeks Pr Against U Condition Safety Gr**
July 19, 201

-----

**City Atto Launches Enforcen Grieving**
July 17, 201

-----

**LA City A Statemen**
July 5, 2018

-----

**Los Ange York and Amicus E Sessions Children**
July 3, 2018

-----

**LA City A and Distri Lacey Se Silver La Over Alle**
July 2, 2018

-----

**LA City A Secures from Nur Allegatio Patient D**
June 28, 20

Mike Feuer
Los Angeles City Attorney
James K. Hahn City Hall East, Suite 800
Los Angeles, CA 90012
213-978-8100   mike.n.feuer@lacity.org
213-978-8340   frank.mateljan@lacity.org Media

**UPDATES**



Case 2:18-cv-12248-SDW-LDW Document 5-4-9 Filed 08/04/18 Page 44 of 47 PageID:
Case 1:18-cv-00637-RP Document 1-9 Filed 07/29/18 Page 1 of 2
457

# Exhibit H

LAW OFFICES

# HARTMAN & WINNICKI, P.C.

<table>
<tr><td>Dariusz M. Winnicki *°</td><td align="center">74 PASSAIC STREET</td><td>Phone: (201) 967-8040</td></tr>
<tr><td>Brian T. Keane ◊°</td><td align="center">RIDGEWOOD, NEW JERSEY 07450</td><td>Fax: (201) 967-0590</td></tr>
<tr><td>Richard L. Ravin *°□</td><td></td><td></td></tr>
<tr><td>Daniel L. Schmutter*</td><td align="center">* * *</td><td>_____</td></tr>
<tr><td>Andrew T. Wolfe ◊</td><td></td><td></td></tr>
<tr><td>Samantha N. Polizzi◊</td><td align="center">WEBSITE</td><td>Porter E. Hartman (1920-2009)</td></tr>
<tr><td>Steven B. Gladis◊×</td><td align="center">www.hartmanwinnicki.com</td><td>Charles R. Buhrman (1938-1994)<br>William T. Marsden (1943-1993)<br>Cyrus D. Samuelson (1911-1998)</td></tr>
</table>

\* New York and New Jersey Bars
° Florida Bar
□ Washington, D.C. Bar
◊ New Jersey Bar
× Pennsylvania Bar

July 27, 2018

**Via FAX 609-292-3508**
Gurbir S. Grewal
Attorney General of New Jersey
Office of the Attorney General
P.O. Box 080
Trenton, NJ 08625

**Re:    Defense Distributed**

Dear Attorney General Grewal:

We represent Defense Distributed in connection with your letter dated July 26, 2018, in which you make various demands regarding making certain computer files available to the public on the internet (the "Letter").

First, please be advised that Defense Distributed rejects your contention that any action contemplated by Defense Distributed violates or will violate New Jersey law. The Letter takes only vague and general positions regarding nuisance and negligence law. Nothing in the Letter supports your position.

Second, please be advised that all actions contemplated by Defense Distributed are fully protected by the First Amendment, and your attempts to prevent such action constitute an unconstitutional prior restraint and otherwise violate the United States Constitution and New Jersey Constitution.

Third, the Letter constitutes an unlawful threat, in violation of Defense Distributed's Constitutional rights, and Defense Distributed reserves its rights under 18 U.S.C. §1983, 18 U.S.C. §242, and N.J.S. 10:6-2, and demands that you withdraw the Letter.

Notwithstanding the foregoing, at this time Defense Distributed will attempt to restrict files made available on the internet to prevent download within New Jersey. This should not be construed as an acknowledgment of the validity of your position, and Defense Distributed reserves all of its rights in this regard.

Very truly yours,

DANIEL L. SCHMUTTER

DLS/srs
cc:    Evan Nappen, Esq, (via email)
       Defense Distributed (via email)

Case 1:18-cv-00637-RP Document 1-10 Filed 07/29/18 Page 1 of 2

# Exhibit I

Case 1:18-cv-00637-RP   Document 1-10   Filed 07/29/18   Page 2 of 2

